LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
528 Grand Avenue
Oakland, CA 94610
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

DENNIS CUNNINGHAM, SBN 112910
115A Bartlett St.
San Francisco, CA 94110
Telephone: 415-285-8091
Facsimile: 415-285-8092
Email: denniscunninghamlaw@gmail.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| **ALAMEDA COUNTY MALE PRISONERS** And Former Prisoners, DANIEL GONZALEZ, ROCCI GARRETT, LAWRENCE GERRANS and MICHAEL LUCAS, MARTIN GALLARDO, SERGIO MORALES-SERVIN, DWIGHT ADAMS, SAUL ESPINOSA, CEDRIC HENRY, OCIE LEE JOHNSON, TYRONNE ALEXANDER JONES, MATTHEW PIERCE, DIONTAY SHACKLEFORD, ERIC WAYNE And JOHN DOEs Nos. 1-- X, on behalf of themselves and others similarly situated, <u>as a Class, and Subclass</u><br>    **PLAINTIFFS,**<br>vs.<br>**ALAMEDA COUNTY SHERIFF'S OFFICE**, GREGORY J. AHEARN, THOMAS F. MADIGAN, CAPTAIN DERRICK C. HESSELEIN, DEPUTY IGNONT (sp), DEPUTY JOE (sp), ALAMEDA COUNTY and John & Jane ROEs, Nos. 1 – 25;<br>**WELL-PATH MANAGEMENT, INC.,** a Delaware Corporation, (formerly known as California Forensic Medical Group) a | No. 3:19-cv-0724 JSC<br><br><br>**FIRST AMENDED COMPLAINT** for INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES FOR VIOLATION OF CIVIL RIGHTS and OTHER WRONGS<br><br><br>**JURY TRIAL DEMANDED** |

1

corporation; its Employees and Sub-Contractors, and Rick & Ruth ROEs Nos. 26-50,
**and,**
**ARAMARK CORRECTIONAL SERVICES, LLC**, a Delaware Limited Liability Company; its Employees and Sub-Contractors, and Rick and Ruth ROES Nos. 51-75.
**DEFENDANTS.**

1.     Plaintiffs, ALAMEDA COUNTY JAIL MALE PRISONERS, DANIEL GONZALEZ, ROCCI GARRETT, LAWRENCE GERRANS and MICHAEL LUCAS, MARTIN GALLARDO, SERGIO MORALES-SERVIN, DWIGHT ADAMS, SAUL ESPINOSA, CEDRIC HENRY, OCIE LEE JOHNSON, TYRONNE ALEXANDER JONES, MATTHEW PIERCE, DIONTAY SHACKLEFORD, ERIC WAYNE on behalf of themselves and those they speak for and seek to represent herein, for themselves and others make this complaint, based on the knowledge of the Plaintiffs as to themselves and as to conditions and acts which they have personally observed, and on information and belief, including the investigation of counsel, as to all other matters.

## PRELIMINARY STATEMENT

2.     This is a civil rights action in which the Plaintiffs, on behalf of themselves and a class of similarly situated individuals, seek relief for Defendants' violations of Plaintiffs' rights and privileges secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

3.     This civil rights lawsuit arises out of the unlawful, unconstitutional and inhumane manner in which defendant ALAMEDA COUNTY SHERIFF'S OFFICE (hereinafter Defendant "SHERIFF"), its staff and employees and multiple for-profit contractors, operate the largest county jail in the San Francisco Bay Area. Eighty-five percent or more of prisoners at Santa Rita Jail are pretrial detainees, both state and federal,

4.     Defendant GREGORY AHEARN has promulgated policies and practices for Santa Rita Jail's handling of prisoners under its custody and control. There are two basic policies toward its prisoners. The first is a fiscal tightfisted penny pinching attitude toward prisoner

services. And the second policy, as publicly articulated by Sheriff Gregory AHEARN, is that Santa Rita Jail's prisoners, including all pretrial prisoners, are violent criminals, who have lied their entire lives and make things up, and so, despite the constitutional presumption of innocence, all prisoners, including pretrial detainees in its custody, are deserving of punishment and deprivations.

5.      Defendants operate this county jail as a penal institution which has as its primary purpose, the lock down of prisoners. Prisoners are treated as the inventory in defendants' business of incarceration, and not as sentient human beings with feelings. Defendant Sheriff has developed policies and deputy trainings to minimize benefits to prisoners, and to excuse and approve of actions which are at best, petty cruelties and generally degrading.

6.      Unable to tolerate these unsanitary and inhumane conditions, plaintiffs and other prisoners after failing to obtain a response through defendants' purported grievance process, then engaged in a multi-prong strike, including a hunger strike, a work strike, and a strike against participating in jail activities such as going to court.

7.      The conditions plaintiffs and class members seek to address are:

1.      Excessive lock down, and inadequate time out of cell;

2.      Inadequate outdoor recreation;

3.      Unsanitary conditions of confinement;

4.      Food that is infested with rodents, insects and bird droppings;

5.      Food that is inedible due to excessive cooking and overheating;

6.      Food that is inedible due to age, poor storage and spoilage,

7.      Food that lacks nutritional value and consists primarily of soy powder, white flour and sugar;

8.      Lack of medical care for newly booked detainees who are detoxing from drugs;

9.      Requiring prisoners to provide the medical care for newly booked, detoxing detainees;

3

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

10.     Profit motivated policy which creates deliberate delay and denial of prisoners' medical care to save on costs;

11.     Cost based medical care for less effective and cutting corners on medical treatment;

12.     Denial of comfort care in medical treatment;

13.     Cost cutting, requiring prisoners to share medications including asthma inhalers;

14.     Group punishment: punishing entire units for the perceived infraction of individuals;

15.     Retaliation and discipline against prisoners for speaking out against problems;

16.     Deliberate conduct by defendants to prevent plaintiffs and class members from filing grievances or raising complaints over conditions of confinement;

17.     Intimidation and retaliation by defendants when plaintiffs and class members attempt to file grievances or articulate complaints over conditions of confinement;

18.     Defendants wrongful denials of attorney visits, family visits, phone calls and mail.

19.     Defendants' price gouging and profiteering from charges for commissary; phone calls and video visits.

20.     Defendants' profit motive driving the reduction of all prisoner services to the bare bones minimum.

8.      Many if not most of these are long standing conditions, many of which were first raised by the women prisoners at Santa Rita Jail in *Mohrbacher et al v. Alameda County Sheriff's Office*, et al. 3:18-cv-00050-JD.

9.      Defendants actions deprive plaintiffs and class members of their constitutional rights to free speech and free association; to the right as pretrial detainees with the presumption of innocence, to be free from punishment; to the right, to be free from cruel and unusual punishment; to the right of equal protection and due process under the law; all of which are guaranteed by the United States constitution.

4

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

## JURISDICTION

10.     This action is brought pursuant to the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United State Constitution, by way of the Civil Rights Acts, 42 U.S.C. §§1981, 1983 et seq. and 1988.

11.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 (claims arising under the United States Constitution) and §1343 (claims brought to address deprivations, under color of state authority, of rights privileges, and immunities secured by the United States Constitution).

## VENUE AND INTRADISTRICT ASSIGNMENT

12.     The claims alleged herein arose in the County of Alameda, State of California. Therefore, venue and assignment, under 28 U.S.C. § 1391(b), lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

## JURY DEMAND

13.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

**A.     Plaintiffs**

14.     Plaintiffs are all former or current prisoners incarcerated at the Santa Rita Jail. All Plaintiffs seek to represent a class of male imprisoned at the Santa Rita Jail at any time since November 12, 2017, two years prior to the date of filing of the Original Complaint in this action. JOHN DOES 1-100. Due to the somewhat transient nature of county jail, prisoners come and go. Added to this the current Copvid-19 crisis and the release and transfer of some 500 additional prisoners, the original named plaintiffs are all no longer in custody. Of the current, newly added named plaintiffs,  DWIGHT ADAMS, SAUL ESPINOSA, CEDRIC HENRY, OCIE LEE JOHNSON, TYRONNE ALEXANDER JONES, MATTHEW PIERCE, DIONTAY SHACKLEFORD, ERIC WAYNE, who are currently in custody, DWIGHT ADAMS, SAUL ESPINOSA, CEDRIC HENRY, OCIE LEE JOHNSON, TYRONNE ALEXANDER JONES, MATTHEW PIERCE, DIONTAY SHACKLEFORD, form a sub-class as well, of prisoners who

have tested positive for covid-19, and contracted covid-19 while in the custody and under the control of Santa Rita jail.

**B.    Alameda County Defendants**

15.    Defendant ALAMEDA COUNTY SHERIFF'S OFFICE (hereinafter referred to as "SHERIFF") is a "public entity" within the definition of Cal. Govt. Code § 811.2.

16.    Defendant ALAMEDA COUNTY is a county in the State of California.

17.    Defendant GREGORY J. AHEARN (hereinafter referred to as "AHEARN")  is, and at all times relevant to this Complaint was, the Sheriff of Alameda County.  As Sheriff of Alameda County, Defendant AHEARN has at times relevant to this Complaint held a command and policy making position with regard to County Jails, including Santa Rita Jail.  Defendant Sheriff AHEARN has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below.  Sherriff AHEARN has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Defendant Sheriff AHEARN is sued in his official capacity.

18.    Defendant TOM MADIGAN (hereinafter referred to as "MADIGAN") is, and at all times relevant to this Complaint was, the Commander in Charge of Detention and Corrections (hereinafter "DCU"), which includes the Santa Rita Jail. As the Commander in Charge of DCU, Defendant MADIGAN has at times relevant to this Complaint held a command and policy making position with regard to County Jails, including Santa Rita Jail.  Defendant MADIGAN has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below.  Defendant MADIGAN directly supervises defendant HESSELEIN and has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, will continue in the future to

6

proximately cause, the injuries and violations of rights set forth fully below. Defendant MADIGAN is sued in his official capacity.

19.     Defendant D. HESSELEIN is, and at all times relevant to this Complaint was, the Detention and Corrections Captain in charge of Santa Rita Jail.  As the Captain in charge of Santa Rita Jail Defendant HESSELEIN has at times relevant to this Complaint held a command and policy making position with regard to Santa Rita Jail.  Defendant HESSELEIN has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below.  Defendant HESSELEIN has direct supervision and control over the staff of Santa Rita Jail.  Defendant HESSELEIN is the responsible individual for enforcing defendant SHERIFF's policies and procedures, for setting standards, for holding all other employees, including all sheriff deputies and technicians accountable for the proper enforcement of SHERIFF's policies and procedures and insuring that conditions of confinement are lawful and constitutional.   Defendant HESSELEIN is responsible for investigating and being personally knowledgeable about the goings on inside the jail.  Defendant HESSELEIN, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Defendant HESSELEIN is sued in his official capacity.

20.     Defendants DEPUTY IGNONT (sp), DEPUTY JOE (sp), DEPUTY 'John Roe', and DEPUTY "Jane Roe were and are guards and deputies on duty at Santa Rita Jail with direct control over plaintiffs and class members.  Defendants DEPUTY IGNONT (sp), DEPUTY JOE (sp), DEPUTY 'John Roe', and DEPUTY "Jane Roe", are sued in their individual capacities.

21.     Each and every individual Defendant named herein was at all times relevant to this Complaint an officer or employee of the Alameda County Sheriff's Office, acting under the color of law within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of ASCO and within the scope of their employment with ASCO.

7

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

C.      **The Private For Profit Contractor Defendants**

22.      Defendant **WELL-PATH MANAGEMENT, INC**  (hereinafter referred to as "WELL-PATH") is an active, for-profit corporation incorporated in the State of Delaware with its principal place of business in California, located at San Diego, California.   Defendant WELL-PATH contracts with ASCO to provide general medical, dental, prenatal and opioid treatment services at Santa Rita Jail.  Defendants RICK and RUTH ROEs 1-50 are WELL-PATH employees who work at Santa Rita Jail.  At all times relevant to this Complaint, Defendants WELL-PATH and RICK and RUTH ROEs 1-25 were agents of the Alameda County Sheriff's Office, acting under the color of law within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of ASCO and within the scope of their agency with ASCO.

23.      Defendant ARAMARK CORRECTIONAL SERVICES LLC ("ARAMARK") is an active, foreign, for-profit Limited Liability Company registered in the State of Delaware and licensed to do business in the State of California.  Defendant ARAMARK contracts with ASCO to operate the kitchens at Santa Rita Jail for the purpose of feeding Santa Rita prisoners, and for the purpose of preparing food to feed prisoners at least six other Bay Area county jails.  Defendants RICK and RUTH ROEs 51-100 are ARAMARK employees who work at Santa Rita Jail.  At all times relevant to this Complaint, Defendants ARAMARK and RICK and RUTH ROEs 26-50 were agents of the Alameda County Sheriff's Office, acting under the color of law within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of ASCO and within the scope of their agency with ASCO.

## CLASS ALLEGATIONS

24.      Pursuant to Rules 23(a), (b2) and (b)(3) of the Federal Rules of Civil Procedure, the named Plaintiffs seek to represent a Plaintiff class consisting of all men incarcerated at Santa Rita Jail ("SRJ") from November 12, 2017 through to the present, and the subclass of men incarcerated at Santa Rita Jail ("SRJ")from in March and April, 2020 through to the present who contracted the corona virus while under the custody of defendants. All such prisoners were denied access to food that is adequate to maintain health in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, denied conditions of confinement that met the minimal

requirements of the Eighth and Fourteenth Amendments to the U.S. Constitution, and all faced denial of due process in defendants' retaliatory actions and the manner in which grievances were handled.  All plaintiffs and class members had their First Amendment and Due Process rights, under the United States Constitution violated.

25.     The members of the class are so numerous as to render joinder impracticable.  In the Fourth Quarter of 2018, Santa Rita Jail had an average daily population of 2,573 prisoners, of which 85% or 2,175 were pretrial.   Approximately 2,239  or 87% of all prisoners are male.

26.     On May 5, 2020, due to the covid-19 pandemic, the population of Santa Rita Jail has been reduced to 1,773.  On information and belief, Plaintiffs assert that over 1,500 of the current prisoners are men.

27.     In addition, joinder is impracticable because, upon information and belief, many members of the class are not aware of the fact that their constitutional rights were violated and that they have the right to seek redress in court.  Many members of the class are without the means to retain an attorney to represent them in a civil rights lawsuit.  There is no appropriate avenue for the protection of the class members' constitutional rights other than a class action.

28.     The class members share a number of questions of law and fact in common, including, but not limited to:

1.     whether the lack of sanitation in prisoner housing, in holding cells, and in jail food preparation facilities is inadequate and violations of prisoners eight and 14th amendment rights;

2.     whether SHERIFF and WELL-PATH established and implemented policies specifically designed and intended to place the reduction of costs as the primary objective in the provision of medical care for Plaintiffs and class members which resulted in the detriment and injury of Plaintiffs and class members;

3.     whether this denial of medical care violated Plaintiffs and Class members rights under the 8th and 14th Amendment;

4.     whether the members of the class were denied access to food that is adequate to maintain health;

FIRST AMENDED COMPLAINT

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

5.      whether SHERIFF and ARAMARK jointly established and implemented policies specifically designed and intended to deny access to clean, unspoiled and sanitary food adequate to maintain health, and reduce necessary expenditures on food purchase, food preparation, food storage and the proper food handling and service, in order to reduce SHERIFF's costs to increase the profits of SHERIFF and ARAMARK;

6.      whether SHERIFF, in concert with its goals to increase profits to SHERIFF, established and implemented policies specifically designed and intended to increase profits to SHERIFF by providing the lowest quality food provided to prisoners, and the poor quality of the food forces prisoners to purchase food from the commissary.  This has the double benefit to defendant SHERIFF of maintaining lower costs output for food and simultaneously increasing profits from sale of commissary items.  On information and belief, plaintiffs assert that the Sheriff has sole approval authority over recent significant prices increases where simple, common food stuffs such as ramen return profit margins of 400% and the Sheriff's contract with the commissary concessionaire provides that the Sheriff receives 40% of all profits earned.   Commissary prices were significantly raised in Fall, 2019.

7.      whether SHERIFF, in concert with its goals to impede and create barriers to plaintiffs and class members' abilities to communicate with family and friends, and increase profits to SHERIFF, established and implemented policies specifically designed maintain high prices for prisoner phone and family video contacts;

8.      whether SHERIFF established and implemented policies in violation of the First,  Eighth and Fourteenth Amendment, by wrongfully limiting the ability of prisoners to phone and visit with family and community, unreasonable denial and limits of in person and video visits, with these unreasonable denials and limits partially imposed through high and excessive costs of telephone calls and video visits, imposed through making phones inaccessible and unavailable, and lockdowns so that prisoners are prevented from participating in in-person and video visits;

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

9.      whether SHERIFF established and implemented policies in violation of the Fourteenth Amendment which inflicted unconstitutional punishment against the male pretrial population of SRJ by long periods of enforced idleness, excessively locking them into cells and denying them necessary out of cell time, and outdoor recreation time;

10.      whether SHERIFF established and implemented policies in violation of the First, Eighth and Fourteenth Amendment, by wrongfully delaying mail or not delivering mail;

11.      whether SHERIFF established and implemented policies in violation of the Fourth, Eighth and Fourteenth Amendment by subjecting all prisoner workers to daily, naked, full body searches which are dehumanizing and degrading;

12.      whether SHERIFF established and implemented policies in violation of the Eighth and Fourteenth Amendment by subjecting laundry prisoner workers to exposure to linens and materials contaminated with human biohazardous materials from the coroners' office, including failing to provide adequate training; failing to provide any protective clothing or gear.

13.      whether the manner in which jail laundry was performed is inadequate and violates plaintiffs and class members' Eight and 14th amendment rights;

14.      whether SHERIFF, as part of its objective to maximize profits from the prisoners to the jail, in concert with WELL-PATH policies and practices creating barriers to medical care including excessive co-pay charges;

15.      whether SHERIFF established and implemented policies in violation of the First, Eighth and Fourteenth Amendments, to intimidate and prevent plaintiffs and class members from filing grievances against wrongful and unlawful practices at SRJ;

16.      whether the members of the class were prevented by fear of retaliation from engaging in the right to file grievances against unlawful practices at SRJ.

17.      whether at all times relevant to this Complaint Defendants SHERIFF, WELL-PATH and ARAMARK acted under color of State law;

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

29.     The Plaintiffs' claims are typical of those of the class.  Like the other members of the class, the Plaintiffs were victims of the Defendants' policy, practice, and/or custom of preventing access to: appropriate and necessary health sustaining food; communications with family and community, necessary sanitation including sufficient supplies provided with sufficient frequency for maintaining personal sanitation; access to medical care; sufficient clean laundry; and the right to be free of infliction of frequent and repeated strip and body cavity searches that are conducted outside prisoners' cells, for no valid penological reason, and as a form of deliberate dehumanizing degradation.

30.     The legal theories under which the Plaintiffs seek relief are the same or similar to those on which all members of the class will rely, and the harms suffered by the Plaintiffs are typical of the harms suffered by the class members.

31.     The Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interests with members of the class, and will fairly and adequately protect the interests of the class.  The Plaintiffs have all been subject to conditions of confinement that violate the First, Fourth, Eighth and Fourteenth Amendments of the U.S. Constitution.

32.     The Plaintiffs are represented by experienced civil rights and class action counsel. Plaintiffs' Counsel have the resources, expertise, and experience to prosecute this action. Plaintiffs' Counsel know of no conflicts among members of the class or between the attorneys and members of the class.

33.     The Plaintiff class should be certified pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure because the Defendants have acted on grounds generally applicable to class members, the interests of the Plaintiffs and potential class members are aligned, and a class action is superior to other available methods for fairly and efficiently adjudicating the case.

### STATEMENT OF FACTS

On October 30, 2019, for the first time ever, prisoners at Santa Rita Jail, unable to tolerate the conditions of confinement, commenced a hunger strike, and a strike against the jail.  The

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

strike against the jail included refusal to go to Court, refusal to eat the Jail's food, and refusal to perform work.

### A. General Conditions For MALE Prisoners At SRJ

34.     Santa Rita Jail was completed in 1989, and designed with the concept of locking up prisoners.  Santa Rita Jail was not designed to provide prisoners with classes or programs, but primarily to keep prisoners, even those who are pretrial, locked in cells.

35.     Defendant SHERIFF, despite California State policy that the "dramatic spending in corrections" have resulted in worse or unchanged recidivism rates, and mandated that "California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices that will achieve improved public safety returns on this state's substantial investment in its criminal justice system,"  Penal Code §17.5, and despite Defendant Alameda County Sheriff's Office's receipt of a significant portion of Alameda County's funding from the state for evidence based practices, through realignment funding, defendant SHERIFF has not changed its emphasis on locking up prisoners locked in cells, defacto punishment and its policy of enforced idleness.  Santa Rita Jail, severely limits out of cell time, outdoor exercise time, and has maintained its administrative rigidity.

36.     All male prisoners are given nutritionally deficient food with an emphasis on calories composed of white starch and sugar, few fresh fruits and vegetables, and protein primarily created with soy powder.

37.     With the general policy of penny pinching and defacto punishment,  medical care consists of delay and deferral, and treatment with a priority of the inexpensive rather than the curative.

### B. Lack Of Sanitation

38.     Prisoners complain that it is impossible for the plaintiffs and class members to actually clean the bathrooms, or their cells, and must live in squalor and filth.  Santa Rita Jail's men minimum security housing consists of large cells with 28 to 30 men in each cell. Men are housed in bunk beds, and there are 6 cells in each housing unit.  In the minimum-security housing units, each cell has 2 toilets, one urinal and one shower, which all 30 prisoners share.  The jail

does not provide soap in the bathrooms. Prisoners are required to clean their own housing and bathrooms. But the jail only permits access to cleaning supplies at most, once a week for 15 minutes. Many times, cleaning supplies are denied for weeks. In addition, the cleaning supplies is limited to one broom and one mop, and one bottle of cleanser. The broom and mops are the same set, used in all areas of the prisoners' cells, the bathrooms, the common areas, the sleeping areas, and the brooms and mops are never cleaned, the bacteria and filth from the bathrooms are actually just spread around, making everything coated with dangerous bacteria and dirt, rather than actually improving the cleanliness and the sanitation of prisoners' cells. One of plaintiffs' complaints is that the prisoner bathrooms have become infested with swarms of small flies or biting gnats who are attracted by the filth. The men have requested better and more frequent access to cleaning supplies.

39.     Furthermore, the jail has a policy of housing people who are detoxing from drugs with the general population in a housing unit rather than in a medical unit where these people receive care from medical staff. People who are detoxing from drugs are very ill, vomiting or with severe loss of bowel control. These people end up vomiting or losing bowel control on their beds, on the floors, all over the bathrooms. Because getting a lower bunk often requires a medical slip, these prisoners who are detoxing are placed in the upper bunk and the vomit and feces gets on the person below. In addition, these individuals are disoriented, weak, and when they have to vomit or have loose bowels, they have difficulty getting down in a hurry from the top bunk, leading to frequent falls and injuries. Sometimes, these severely weakened and impaired individuals are unable to reach the bathroom and the resulting human bio waste is over the floors and in the general cell living area.

40.     Because everyone is required to live together, the smell, biohazards, and filth negatively affects everyone. Because prisoners have no access to cleaning supplies, this frequent situation contributes to the squalor, filth and unsanitary conditions prisoners are forced to live in. Almost all of the minimum-security cells have someone at least once a week, who is detoxing, so this is a constant, chronic condition. This results in the spread of contagious bugs such as lice and

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

scabies, staph infections, e-coli, pseudomonas, hepatitis, C-difficile, and even possibility the Aids virus.

41.     Due to the policy of arresting indigent and homeless people, defendant SHERIFF regularly places these people into the cells with other prisoners, without affording these people an opportunity to shower and wash.  Theoretically, there is a shower available at booking/intake. However, the holding cells and the booking/intake facilities are routinely filthy, rendering the showers unavailable, and unusable, and certainly not suitable for assisting in cleaning people to avoid the spread of contagion.

42.     These problems are exacerbated by the jail's policy of not providing soap for prisoners in the bathrooms.   Although there is a "free" toiletry kit given out to all newly booked prisoners and for indigent prisoners, the products are of limited quantity so that it is inadequate for maintaining personal hygiene beyond one or two uses.  Therefore, while the soap in the "free" kit is supposed to last a whole week, those who are reliant  on the indigent kit do not provide enough supplies to maintain personal cleanliness for  an entire week.  In addition, although the "free" kit for indigent prisoners is supposed to be provided once a week, often is provided less frequently. The inability of prisoners to maintain personal hygiene negatively impacts all of the prisoners who share the same cell with indigent prisoners.

43.     The problems extend beyond the housing unit cells and booking/intake.  Whenever people are booked, or go to and from the jail to court, they are held in the multi-purpose rooms, and various holding cells.   A recurring problem is unsanitary conditions in the bathrooms and the holding cells.  Due to the large number of people who transit through these rooms, these cells quickly become dirty, and filled with trash.  The multi-purpose room, holding cells and dress out rooms are rarely cleaned.  The bathrooms available are filthy with feces and biohazards all around.

44.     Even prisoners do not have access to soap outside the housing unit cells because they are not permitted to carry this soap on their person.  Because the jail does not provide soap in any of the bathrooms available to prisoners, when prisoners are required to go to court or other parts of the jail, they have no means to wash their hands after using the bathroom.   While there is

a policy on the books for Defendant SHERIFF's books permitting prisoners to bring a sanitary kit to court, whether an prisoner actually gets to bring a "sanitary kit" depends on the arbitrary whim of the deputies in charge at the various stations along the way. Most prisoners do not chance bringing their soap with them because meeting up with the wrong deputy results in having that soap confiscated and therefore in having no soap at all. As a result, prisoners going to court are not afforded the ability to wash their hands.

### C.    Laundry

45.    Every male prisoner, by regulation is limited to only one set of clean clothes per week. Having extra clean clothing is subject to disciplinary punishment. Laundry exchange requires that each prisoner strip down to underwear, or wrap in a sheet or towel, because laundry is a one to one exchange. Being permitted only one change of clothes per week is another means whereby, the jail makes it difficult, if not impossible to maintain personal cleanliness. Furthermore, laundry exchange is on Thursday or Friday, but bathroom cleaning is done in Saturdays. Given the filth of the bathroom, any of the prisoners who "volunteers" to clean the bathrooms are then placed in the situation that their clothes become soiled due to cleaning human feces and urine in the bathroom, and then, as a reward for their volunteer efforts, they have to live in these soiled clothes for 5-6 days. Prisoners have requested that if they either be provided two sets of clean clothing or if they are to be limited to one set of clean clothes, it would make more sense for clean laundry to be provided, after cell cleaning, so that prisoners can clean the bathroom, and then have clean laundry to wear for the rest of the week.

46.    Even with "clean" laundry, the "clean" clothing is frequently not very clean, having been improperly laundered. This is due to the insufficient washing machines at the jail. Jail laundry workers, in order to meet their work loads, have to overstuff the washing machines, which results in laundry which is not properly laundered. Furthermore, jail laundry workers are required to do the sheets and towels and other linens from the coroners' office, which are often soaked in human bodily fluids. At times these linens even have body parts wrapped within. While these linens are transported in bags clearly marked as "biohazard", these linens are given to jail laundry

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

workers, who have no protective clothing, no training in handling biohazardous human wastes, and are washed in the same jail washing machines.

**D.    Defendant SHERIFF's Substantial Salary Increases**

47.    Since 2013,  Defendant AHEARN  has overseen an unprecedented increase in the salaries of defendant SHERIFF personnel at Santa Rita Jail.  Salaries and benefits at SRJ have increased by $12.44 million dollars since 2013.  As a result, being a jail guard at SRJ is one of – if not the most – remunerative jobs in the entire county that a high school graduate with no college education can get.  A starting jail guards make approximately $100,000 per year in salary and benefits.  This is not counting overtime payments available.

48.    That $12.4 million-dollar salary increase, and the $1.7 million increase in overtime between 2013 and 2018 amounted to almost 50% of the Sheriff's office SRJ budget increases over that period.  It is reported that in 2017, Defendant AHEARN received $632,332 in total compensation, then Detentions and Corrections Commander Houghtelling received $449,144.96 in total compensation and Defendant Captain Hesselein received $394,437.[1]

49.    Over the same period, while remuneration for Sheriff's office deputies and personnel at SRJ increased substantially, the SRJ jail population for whom the Sheriff is responsible, *declined* by almost 30%.

50.    According to Defendant SHERIFF, the average daily population at SRJ was 3,431 prisoners in June 2013 and had fallen to 2,825 by June 2015.  On March 1, 2020, the Jail population was 2,597.  On May 6, 2020, the population had declined to 1,746.   Thus, the population at SRJ has declined by about 30% at the same time that remuneration for Sheriff's office deputies and personnel at SRJ increased by over 18%.

51.    On March 20, 2020 defendant SHERIFF submitted a budget increase request to the Alameda  County Board of Supervisors, of an additional $106 million to hire 456 new staff for the jail.

52.    During this period, SHERIFF also entered into contracts with private, for-profit companies to provide basic and crucial services to SRJ prisoners.

---

[1]  https://transparentcalifornia.com/salaries/2017/alameda-county/

FIRST AMENDED COMPLAINT

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

### E.    SHERIFF's Contract with For Profit Defendant WELL-PATH

53.    SHERIFF contracts with Defendant WELL-PATH to provide all health care services of any type needed by any prisoner at SRJ.  WELL-PATH's contract specifies a set price based on average daily prisoner population ("ADP").

54.    Crucially, the WELL-PATH contract specifies that WELL-PATH itself is solely responsible for all costs incurred in connection with any health care services provided to prisoners outside the jail and that WELL-PATH is not entitled to and will not receive any reimbursement from SHERIFF for the cost of services provided to prisoners by hospitals or by any non-WELL-PATH personnel. The cost for all such services is borne solely by WELL-PATH.

55.    SHERIFF's contract with WELL-PATH explicitly states that WELL-PATH will pay for any and all "inpatient hospitalization costs, emergency room visits, ambulance transportation expenses, outpatient surgeries, outpatient physician consultations, outside specialist fees, off-site diagnostic procedures."  If an prisoner receives such medical services, WELL-PATH must pay the total cost of the medical care provided, "regardless of the level of cost incurred."

56.    The contract specifies that WELL-PATH alone will determine "the necessity and appropriateness of inpatient hospital care and other outside medical services."

57.    Incredibly, the contract also specifies that in the event a third-party payor such as an insurer pays for part or all of any medical service provided to a prisoner outside the walls of SRJ, WELL-PATH must turn over half of that third-party payment to the Sheriff's office.  In other words, even if WELL-PATH is reimbursed for its costs for outside medical care provided to prisoners, the Sheriff's office takes half of the reimbursement even though it paid nothing for the outside medical care.

58.    By requiring WELL-PATH to pay for any and all medical care provided outside of SRJ to any SRJ prisoner, and by limiting WELL-PATH's ability to recover any amount WELL-PATH pays for such care, SHERIFF's contract with WELL-PATH creates a financial incentive and imperative for WELL-PATH to refuse and withhold needed and appropriate outside medical services to all prisoners, including pregnant prisoners, when the needed and appropriate medical

services consist of "inpatient hospitalization costs . . . outpatient physician consultations, outside specialist[s, or] off-site diagnostic procedures," among other services.

59.     By specifying that WELL-PATH alone will determine "the necessity and appropriateness of inpatient hospital care and other outside medical services," SHERIFF's contract with WELL-PATH enables WELL-PATH to refuse and withhold needed and appropriate outside medical services to SRJ prisoners, including pregnant prisoners, when the needed and appropriate medical services consist of "inpatient hospitalization costs . . . outpatient physician consultations, outside specialist[s, or] off-site diagnostic procedures," among other services.

60.     "[O]utpatient physician consultations, outside specialist[s and] off-site diagnostic procedures" within the meaning of the WELL-PATH contract include any outside or off-site OBGYN services, including prenatal care, provided to pregnant SRJ prisoners.

61.     The medical provider in the San Francisco County jail is not a for-profit correctional healthcare company such as WELL-PATH. It is the County Department of Public Health, which has no financial incentive to deny care.

62.     The medical provider in the Contra Costa County jail is not a for-profit correctional healthcare company such as WELL-PATH. It is the County Department of Public Health, which has no financial incentive to deny care.

63.     The price provisions of the WELL-PATH contract which create a financial incentive to deny care have had a devastating impact on the provision of medical services to prisoners at SRJ. That impact is detailed below at Paragraphs 92-99 and 117-129.

**F.     SHERIFF's Contract with For-Profit Defendant ARAMARK**

64.     SHERIFF contracts with ARAMARK to prepare food for prisoners at SRJ and to prepare food which is used to feed prisoners at other adult jail facilities in Colusa, Solano, San Benito, San Joaquin, Amador and Lake counties, and a juvenile facility in San Joaquin County. ARAMARK prepares 16,000 meals a day, with the labor of prisoner workers who are not paid but receive food treats.

65.     ARAMARK implemented the reduction in the prisoner food budget at SRJ in the amount of $1.65 million, which was an almost 25% reduction.

19

66.     The cost reductions which SHERIFF instituted in the ARAMARK contract and implemented by ARAMARK have had a devastating impact on the quantity and quality of food provided to prisoners at SRJ.  That impact is detailed below.

**G.     Vermin and Animal Invested Food/Poor Sanitation in the Jail Kitchen**

67.     The kitchen at SRJ is staffed by prisoner workers under the supervision of Defendant ARAMARK.  Prisoners are not consistently tested for communicable diseases before being assigned to work in the kitchen.

68.     Santa Rita's kitchen prepares food not just for prisoners in the Santa Rita Jail, but also for at least six (6) other county jails within the region.  Both Aramark and the Alameda County Sheriff's Office receive financial benefit from this food service to other county jails.

69.     According to prisoner kitchen workers at SRJ, the kitchen at SRJ is filthy.  Birds roost at night in the kitchen.  Kitchen workers report seeing rats and mice daily in the kitchen.  Night time workers report that cockroaches are in the kitchen every night.   Animal droppings fall all on counter surfaces, including food preparation surfaces.  Rats run across the kitchen floor and there are frequently rat droppings in the food.  Santa Rita Jail has attracted a variety of animals and bugs by providing abundant food and suitable habitat.

70.     Prisoners have complained that the food they receive is infested by rat and mice feces, bird droppings, and on occasion, the dead mouse in the beans.

71.     The cake and bread trays, loaded with baked goods, are left out over-night, uncovered, and the birds feast.  Food in the kitchen is kept in such a manner that rats can access it.  Bread is kept in plastic bags in open plastic crates, providing for easy access for rats.  Rats climb over the bread and chew open packages.  When bread bags are chewed by rats, a few pieces are thrown away but the rest of the bread is served to prisoners.

72.     Used food trays are collected and delivered to the kitchen, where they are stacked against one wall, and left in the open, available and accessible to mice and rats, again providing an easily accessible, bounty of food and therefore, continually attracts mice and rats.

73.     Sandwich meat, primarily bologna, often is spoiled, with raised white spots of unknown origin and type on it.  That spoiled meat is given to prisoners to eat.

74.     Cooked beans are not properly stored, and not labeled, so that old, leftover beans are frequently reheated and served, or combined with newer cooked beans.  As a result, the beans decompose, and frequently become slimy and start to bubble as part of its bacterial decomposition.  Decomposing spoilt beans are regularly served to prisoners.

75.     The kitchen bathroom is not adequately maintained and frequently by the middle of the first day shift, the bathroom has run out of soap and paper towels, so that prisoner workers, required by health code to wash their hands after using the bathroom, are unable to do so.

76.     Commercial kitchens normally have a daily clean-up crew which comes in and cleans all ovens, stoves, vent hoods, floors, and other surfaces and equipment in the kitchen. Commercial clean-up crews normally come in the early morning, before a commercial kitchen opens.

77.     In 2017, the women prisoners at Santa Rita Jail filed a class action lawsuit against the jail for similar issues.  For a period of time, women prisoners, who work the graveyard shift at the kitchen, were organized into cleaning crews, and crews were assigned to clean the various parts of the jail.  For the past two months, this situation has reverted.  The cleaning crews have been disbanded.  The new Aramark staff person no longer has access to the cleaning supplies. There is only one woman prisoner assigned to cleaning, and she given only dishwashing liquid and a squeegee to clean the kitchen floor.

**Dirty Food Trays And InAdequate Kitchen Sanitation**

78.     The Santa Rita Jail has a tray washing system that does not consistently remove old food and clean the food trays.  Used food trays are collected and sent back to the kitchen, and stacked along the walls in open stacks overnight.  These trays are not rinsed.  By the time the next day's kitchen shift starts, this food has dried and hardened, particularly into the corners of the tray's indented pockets.   The Aramark cleaning procedure is for these trays to be dumped into a large, wash basin, approximately 100 to 150 gallons in size, which is filled with soapy water. There is a circulating pump which moves the soapy water, and these trays swish around.  The prisoner worker has a paddle to move these trays After a few minutes the prisoner worker takes a milk crate style plastic crate and scoops up these trays out of the wash basin and dumps these

FIRST AMENDED COMPLAINT

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

trays onto a counter.  A second worker then stacks these trays into a conveyor belt, where these trays are processed through a machine that  to sanitize the trays.  The sanitization process takes less than 5 minutes.  After this sanitization, the trays are then provided to other kitchen workers to refill with new food for future meals.  Often the trays have left over food encrusted, and remaining on the bottom of the tray's pockets.

79.     Prisoners regularly discover that under the new food in their trays, there is dried, hardened, old food, and have regularly notified sheriff deputies of this problem.  Prisoners have also notified sheriff deputies of rodent and vermin droppings and of bird excrement in their food.  And on occasion, boiled mice are found in the beans.  Prisoners have filed grievances on these issues.  These grievances are denied and these notifications have not caused either defendant SHERIFF nor Aramark to change its procedures, or improve their sanitization.

**Inedible Food**

80.     The quality of the food provided to prisoners is of the lowest quality, high in starch and sugar, with most of the protein from soy powder and plain, flavorless beans.  The food is repetitive, overcooked, and tasteless.  Defendant SHERIFF and Aramark's metrics is to produce this food at the minimum cost with the only goal,  a minimum calorie count.  The food is prepared using a cook chill method, whereby the food, such as oatmeal and beans are cooked in large 100-gallon containers, this food is then packed in large plastic bags, refrigerated and held for up to 30 days.  All texture is rendered  obsolete.

81.     Then the contents of these plastic bags are portioned out into plastic trays.  These trays are then plastic wrapped and refrigerated.  These trays are placed onto carts, which deliver food to the housing units.  Once at the housing unit, these trays are placed into warming ovens, sometimes for many hours.  Due to the systems with which SHERIFF operates its jails, meals, including dinner, are served at irregular times.   By the time food is served, this over cooked food has often been held in warming ovens for over long.  This tasteless material is what defendant SHERIFF and ARAMARK give prisoners as food.

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

82.     As a result of the irregular deliveries, one of the few fresh foods prisoners receive, milk, is often soured and spoilt, rendering it inedible.  There are seldom fresh fruits and vegetables, and what there is the same, bagged mini carrots, oranges and apples.

83.     In addition, service of food is timed erratically.  Sometimes lunch is not served until after 4 pm, and then dinner is served right after that.  For plaintiffs suffering from diabetes, this creates dangers due to unregulated blood sugar swings.

**Lockdowns & Insufficient Out Of Cell Time And Outdoor Recreation Time**

84.     Despite the fact that there are 30 men living in each cell of minimum housing, in filthy and unsanitary conditions, despite the fact that most of the men are pretrial and the jail is not permitted to punish these prisoners, the housing unit deputies frequently lock down the cells, not allowing the men out into the common area, and not providing outdoor recreation.  These lockdowns reinforce defendant SHERIFF's policy and practice of enforced isolation.  During periods of enforced isolation, deputies and technicians will increase the isolation by turning off all phones, and turning off the television.

85.     Furthermore, the jail provides very little in the way of activities for prisoners, and so lockdown and cell time is enforced idleness.  At best, 25% or less of the prisoner have access to classes.  *2015 Santa Rita Grant Application to BSCC, Narrative*, p. 2 of 35.  Classes and programs are at best *90* minutes once or twice week.  The out of cell time for classes do not offset the lockdowns.

86.     By having prisoners, particularly low security level, minimum security prisoners in frequent lockdown, these prisoners are incentivized to "volunteer" for work, just to be able to get out of the cell. For prisoner workers, the coercion to work results in defacto denial of pod time and outdoor recreation time.

87.     Defendant SHERIFF routinely asserts that it has insufficient staffing to carry out the normal functions of the jail.  It is unclear whether there is actual insufficient staffing, or whether there are issues of poor jail management, or some other reason, including housing deputy whim.  In early 2019, defendant SHERIFF and defendant AHEARN announced the closure of the downtown Oakland jail, Glen Dyer.  Simultaneously, these defendants announced

that there would be no layoffs and that all personnel from Glen Dyer would be transferred to Santa Rita, significantly increasing the staffing at Santa Rita Jail.

88.     Despite what would appear to be a significant increase in staffing at Santa Rita Jail, prisoners are constantly placed on lockdown and denied out of cell time.  The reasons frequently given is insufficient staffing.   There is often no rhyme or reason for why plaintiffs and class members are placed on lockdown.

89.     In addition, these lockdowns also result in denial of outdoor recreation time.

90.     For prisoner workers, they are denied POD time and outdoor recreation time because they are at work when POD time and outdoor recreation time opportunities are available. Prisoners perform a significant amount of the work in Santa Rita Jail, from kitchen work and food preparation, to all the laundry, to all the significant cleaning in and around the jails. Prisoner workers distribute the food and laundry, and all supplies to prisoners.  None of this work is compensated.  Defendant SHERIFF states that these workers "volunteer", and in exchange for their volunteer work they are afforded time out of the cell and some food treats.

**Food Treats**

91.     Defendant SHERIFF also assert that the compensation prisoner workers men receive are "food treats".  However, these men are only provided 5 minutes or less to eat these "food treats", they are not permitted to carry these treats back to their cells, so they can eat them at a leisurely pace.  For those with medical issues, such as ulcers, so that wolfing food creates health issues, these prisoners are then denied "food treats".

**Medical Care Is Grossly Inadequate At Santa Rita Jail**

92.     As a result of the cost provisions of SHERIFF's contract with WELL-PATH, medical care provided to SRJ prisoners at SRJ is grossly inadequate.   In addition, SRJ prisoners are regularly denied necessary and appropriate outside medical care by WELL-PATH because the provision of such care comes directly out of WELL-PATH's bottom line profits. The following example of grossly inadequate and entirely withheld medical care are given by way of illustration only and not by way of limitation.

i.     <u>Lawrence Gerrans</u>

93.     Plaintiff LAWRENCE GERRANS arrived at Santa Rita Jail, with a number of medical conditions, including hypertension, for which he was under the care of a physician and prescribed <u>daily</u> medication.  This information was transmitted multiple times to both defendant SHERIFF, and WellPoint.  Defendant SHERIFF refused to accept or permit prisoner LAWRENCE GERRANS to bring into jail, his own prescription medication.  For over 2 weeks, defendants failed to provide plaintiff with any of his needed, daily prescription medication.  Plaintiff started suffering from dangerous symptoms of hypertension.  Then defendant WELL-PATH provided plaintiff with some other medication, which had not been prescribed, and for three days afterwards, Plaintiff LAWRENCE GERRANS reported excruciating headaches, difficulty seeing, pressure in his cranium and eye.  Not until after this incident, did defendant WELL-PATH finally provide Plaintiff LAWRENCE GERRANS with the medication for which he had been prescribed.

94.     Defendant WELL-PATH on a regular, and constant basis clears newly booked individuals with addiction issues and withdrawal issues, to be placed into general housing with other prisoner, and refuse to provide these newly booked individuals with medical treatment for their withdrawal.  When these prisoners become violently ill, vomiting, seizing, uncontrollable diarrhea, defendant deputies Doe 1-25, refuse to summon medical assistance, refuse to remove these prisoners, telling the other prisoners in the housing unit, "This is your problem.  If you don't like it, don't come to jail."

95.     These detoxing prisoners introduce biohazards in the housing cells.  As a result, there are chronic issues of staph infections hepatitis, pseudomonas, E.coli, C-difficile infections, , which defendants do nothing to prevent, and are slow and sluggish to address when these infections and communicable diseases are present.  As a result of the ongoing presence of biohazardous human waste in the cell Plaintiff GERRANS developed a severe staph infection on his foot from the spread of biohazardous human waste in the bathroom and cell floor.

ii.     <u>Kyle Murphy</u>

96.     Class member Kyle Murphy was incarcerated at Santa Rita Jail.  At the time of the incident, he was pretrial and in minimum security.  One day Kyle started having seizures.  Men in

his cell pushed the emergency button. Defendant Technician Kaiser was on duty, and said, "Don't hit the button" and then apparently turned the button off. Men in Kyle's cell started yelling "man down", and soon all of the six cells started yelling "man down". It took 30-40 minutes for a Sheriff deputy to appear. After visually examining Kyle, the Sheriff Deputy left, and it took another 15 -20 minutes before a male nurse arrived. The nurse came, assessed the situation and gave Kyle a dose of Narcan. That had no effect, so the nurse then left to get oxygen. The nurse returned with an oxygen mask and can, and proceeded to try and apply oxygen to Kyle. The male nurse was not well trained and did not know how to use the oxygen tank and mask. The mask apparently was cutting off all outside oxygen to Kyle, but oxygen was not flowing from the tank. Kyle started to turn blue. Men in the cell started getting upset, and many of them were screaming "he's dying". After some time with Kyle turning blue, a female nurse appeared. She took the oxygen tube and plugged it into the tank and then oxygen started to flow. They had to carry Kyle out. He was gone to the hospital for a week, and upon his return, neurological damage was obvious. His eyes could no longer track in tandem, and one of his eyes wanders.

### iii. Darryl Geyer

97.     Class member Darryl Geyer was walking down the stairs of his housing unit, when he lost his footing and fell on his knee, cutting and injuring his knee. Later, when he asked to be assigned a lower bunk, the housing unit deputy refused, and forced Darryl to climb onto a slipper metal table to get onto his upper bunk. In doing so, Darryl Geyer fell again, and this time, split his knee completely open. The wound did not heal properly. It became infected, and defendant Well-Point merely gave him some Neosporin, a topical ointment to apply. Over the next four months, the infection spread and grew, and was visible as a red line following his veins, moving toward his groin. At that point, Darryl Geyer requested that his defense attorney file a Penal Code 4011 petition, requesting a court order that he be provided outside medical care for this increasingly serious condition.

98.     It turned out that his knee became infected with fecal bacteria, most like spread from the bathrooms into the housing unit, the stairs, and Darryl Geyer's bunk, by the unsanitized mops used for cleaning.

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

99.     Over the next 8 months, defendant Well-Point tried various anti-biotics, and placed Darryl Geyer in the Out Patient Housing Unit, and even suggested to Darryl Geyer that he consent to having his knee removed.  Finally, after forcing Darryl Geyer to endure more than 8 months of daily pain, defendant Well-Point finally transported Darryl to Highland Hospital where he had repeated surgeries on his knee, where the surgeons would clean and disinfect his knee.  It took multiple surgeries because the infection became so extensive due to defendant Well-Points delay and refusal to take the necessary, but more expensive medical steps early on

   iii. <u>Upper Bunks</u>

100.     The upper bunk of the bunk beds has no ladder, and the only way to access it is to clamber on the horizontal railings of the lower bunk and to hoist one-self up.  To get a lower bunk, requires a medical slip, called a "chrono".  For people who are detoxing, getting off the upper bunk quickly is important, otherwise they end up vomiting or defecating on themselves in bed, or the floor, rather than making it to the bathroom.  While detoxing, these people are in a severely weakened and disoriented state, and getting off that top bunk is difficult.  Yet, these people are medically cleared to be in housing units, and never given a chrono for a lower bunk.

101.     On the weekend before the strike, a young man, who was not well, was in 31 West, and was assigned to an upper bunk.  A few days prior to his serious injury, he was having seizures.  On or about October 26, 2019, this young man, had a seizure and fell off and fell on his head.  Deputies were slow in responding, and medical staff took almost half an hour before coming to the cell.  Prisoners in the cell observed that it appeared that this young man stopped breathing.  Paramedics were called and all the prisoners of that housing unit was required to leave and stay in the little yard while he was removed.  Prisoners believe that this young man died.

**Phone/Visiting/Video Visits**

102.     Recognizing that maintaining family contact and contact with friends and community is an important ingredient to the mental health and well-being of prisoners, and that prisoners with stronger ties to family and community have a lower recidivism rate, 15 CFR 1062 states that "as many visits and visitors as facility schedules, space, and number of personnel will allow." Cal. Code Regs., tit. 15, § 1062

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

103.    Santa Rita Jail and defendant SHERIFF do not follow this state regulation.  Instead, on a frequent basis, visitors many who have traveled long distances, are denied visits, often with little notice.

104.    Santa Rita Jail and defendant SHERIFF have implemented a video visit procedure. However, the equipment frequently malfunctions, and more important, defendant SHERIFF and sheriff deputies frequently take actions to deny and prevent prisoners from participating video visits because prior to the video visits, they will force prisoners into lockdown.  Then at the time of the video visit, the deputy is conveniently unavailable to escort the prisoner to the video kiosk in order to participate in the visit.  All of these video visits require money, and when the deputies fail and or refuse to allow a plaintiff out of the cell to access the video call, the prisoner is still charged for these calls.   The minimum charge is $6.00.   The net result is to deny prisoners video visits, and still charge for the video call the prisoner was prevented by defendants from having.

105.    Other times, plaintiffs have family members schedule visits, and travel from great distances for these visits, only to be told that the jail is unable to move the plaintiff from the cell to the visiting room and so the visit is canceled, often just before the visit is scheduled.

**Profiteering and Excessive Charges**

106.    Commissary prices charged by defendant SHERIFF have mark-ups in excess of 400%.  For example, Maruchan Ramen retails for 20 cents, yet defendant SHERIFF sells single Maruchan ramen packets for $1.13.  Assuming these are purchased wholesale, the profit margin is even higher.  Commissary prices at Santa Rita Jail, which are higher than prices at other jails, just had a price increase.  Forty percent of the profit goes to defendant SHERIFF.

107.    Phone charges at Santa Rita Jail are also higher when compared to prices in surrounding county jails, such as San Mateo and San Francisco.  Defendant SHERIFF charges prisoners 23 cents per minute for collect calls.  San Francisco charges 8 cents.

**Strike**

108.    On or about October 17, 2019, Santa Rita Jail's Watch Commander, late in the afternoon, defendant Hesselein, entered the common area of Housing Unit 31.  Defendant

28

Hesselein was dressed, not in uniform, but a suit with a red tie.  He was in the company of other older, white, men and women, likewise dressed in business attire.

109.    At that time, the men in HU 31 had been on lockdown all day, and there had been no lunch, so the men had not had any food for almost 12 hours.  Sua sponte, the men started to yell, " Stop feeding us rat shit."  "Jail clothes stink"  "The food sucks"  "There's shit all over the place."

110.    Defendant Hesselein walked over and verbally confronted the prisoners, demanding respect and yelled, "I'll shut this place down."  "I'll make you guys' life hell."  The prisoners did not stop yelling out and defendant Hesselein walked out.

111.    Shortly thereafter, despite the fact that during this past week, the men had been on lockdown, with the excuse that there were not enough deputies to allow the men out of their cell for POD time;  a squad of about a dozen sheriff deputies dressed in tactical outfits and armed with rifles and weapons stormed the housing unit.  One deputy stood on a table with a rifle pointing it at the prisoners and someone barked out an order, "Get down on the ground" and the prisoners were instructed to lay down, face down on the floor of their cell.

112.    Someone yelled out, "I'm not getting down on the ground, the ground is filthy", and as a result, no one in the cell laid down.   The sheriff deputies threatened to shoot the prisoners, and a tense standoff resulted.  Finally, the prisoners were instructed to put their hands over their heads, and then all prisoners were all walked out of their cells into the multi-purpose room.

113.    Once the prisoners were removed, the deputies, conducted a "raid" where everything in the cell was turned inside out and searched.  All the personal belongings, food and other items of the prisoners were all tossed helter skelter into a pile in the center of the room.

114.    By the time, the deputies were finished "raiding" all of the three lower tier cells, it was close to 11 p.m., and so the deputies yelled out at the upper tier that the prisoners were required to throw outside the bars into the landing, anything extra, meaning extra food, extra towels, extra bedding and extra food.  The guards yelled out that if the upper tier prisoners complied, they would not be "raided" in the morning.  Otherwise, the upper tier prisoners threw out some stuff, and the deputies left.  There was no raid in the morning.

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

115.    The next day, October 18, 2019, the men were again placed on lock down, and the meal schedule was again chaotic.  When the afternoon meal finally arrived, late in the afternoon, the men of Housing Unit 31, spontaneously refused to leave their cells, and refused the meal, thereby engaging in a hunger strike.  The deputies, alarmed, called in officers, first a sergeant and then a lieutenant, who offered to discuss with the prisoners, their grievances, and asked the men to select a spokesperson.  They selected Lawrence Gerrans.

116.    The men of HU 31 then spent the next two hours writing down their grievances and giving them to Plaintiff Lawrence Gerrans.  These grievances were copied, a statement was written, and these were given to the lieutenant, who promised to review these documents and respond.  These grievances, later called the Strike Demands are attached as Exhibit A, and the documented later called the Strike Statement is attached as Exhibit B.

117.    That evening, around 10 p.m., the deputy Charondo placed into HU31, upper D, a young, white, emaciated man, who was in drug withdrawal.  He was place on an upper bunk.  Within an hour, this young man lost control of his bowels and defecated all over himself.  The prisoners pressed the emergency buzzer and said there was a man who was ill and needed to leave.  As he was walking, everyone could see the diarrhea on the back of his pants, having gone through his pants and was now pooling in the cuffs of his sweats.

118.    Deputy Ignont (sp?) walked in and stated that the infirmary had cleared him to be in the housing unit.  Deputy Ignont (sp?) said, "He's your problem." "You guys take care of him".

119.    By this time, the diarrhea had dripped into this young man's shoes and he was now tracking this all over the floor.  This young man appeared to be in extremely poor health, and could easily have been ill with a number of infectious diseases including pseudomonas, hepatitis, aids, C-dip.

120.    But there was nothing the prisoners could do, so the young man and the prisoner helping him, slowly walked him back to his mattress.

121.    By six a.m., when everyone woke up, the stink in the cell from this young man's diarrhea was like a green, disgusting fog coating the entire room.  The diarrhea had smeared all over the bed and all over his clothes.  The prisoners again rang the buzzer yelling "Sick man

FIRST AMENDED COMPLAINT

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

coming out". Eddie took a sheet and wrapped it like a diaper around this young man and walked him out of the cell. The technician buzzed open the cell door, and one prisoner rolled up this young man's mattress, and with an arm around this young man's shoulders, proceeded to walk him down the landing and down the stairs. As they reached the bottom Deputy Joe walked in, and he signaled to Eddie to drop the mattress, and he proceeded to handcuff Eddie and take him away. Deputy Joe tells the young many to walk back to the cell. The young man was barely able to walk and when he reached the cell door, he collapsed, prone on the floor.

122.    Deputy Joe brings Eddie back into the room and announces that "This is your fucking problem. I don't care how many times he shit himself." Then Deputy Joe orders the kid to stand up and move. The kid doesn't move. Deputy Joe walked over, and grabbed this kid by the hair and pulled him up by the hair onto a sitting position and yells into his face, "don't make me do this." At this time, Lawrence Gerrans, afraid that this kid would not be able to tolerate any physical violence, and intervened. "Whoa, whoa, it doesn't need to be like this." Then Deputy Joe released the kid, whose head drops like a ball back onto the floor. Lawrence Gerrans said, "I'll take care of him", and requested a hazmat bag, and clean clothing, clean sheets and towel. Lawrence Gerrans said to Deputy Joe, "You seem like a nice guy, but doing this to this kid is indefensible." Deputy Joe responded, "Don't come to jail" and walked off.

123.    The prisoners then took the kid back into the cell, showered him, and while he was showering had another episode of diarrhea. Prisoners cleaned his mattress, put the mattress on the floor, and put the kid on the floor.

124.    By noon, the kid had another episode of diarrhea. Plaintiff Gerrans pushed the emergency button and said that at the very minimum, this kid was now severely dehydrated and this was a medical emergency.

125.    Only after the 4th or 5th incident of diarrhea, and over 15 hours of all the men in the cell enduring this unsanitary, exposure to human feces, were the prisoners finally able to get defendant SHERIFF to remove this kid from the cell and place him under appropriate medical supervision.

126.     That afternoon, another prisoner in HU 31, fell off the top bunk, landing on his head.  Soon thereafter, this prisoner went into seizure, flapping like a fish.  Men in the cell heard the crack, as his head hit the ground.  They immediately hit the emergency button and requested medical response.  The medical response was also slow in coming.  The deputies were slow in responding.

127.     This cell was a kitchen workers cell, and they were not permitted to return after their shift for over two hours.  During this time, some of these plaintiffs and class members could see a paramedic van drive up into the parking lot.  However, when the paramedics arrived, the paramedics were in no hurry.  This led these plaintiffs and class members to conclude that the young man in HU 31 had died, and so there was no longer a medical emergency.  They concluded that if the kid was alive, they would have been hustling to get him to the hospital.

128.     After being held for two hours extra in the kitchen, these men were moved into small yard.  By the time they got back to the cell, the kid was gone.

129.     That evening, after prisoners returned to their cells, the mood was "Enough is enough", and there was a call for a vote.  The majority and all the races and majority voted for a strike that would be a hunger strike, a work strike and a strike against participating in jail activities such as going to class or court.

**Excessive Searches**

130.     Not only are plaintiffs and members of the plaintiff class required to work for no compensation, to lose out free time in the form of POD time, to miss out on outdoor recreation, because they are at work when outdoor recreation is available, and then face threats and discipline of additional days on their sentence without a hearing, these class members are subjected to a full body search, each and every day after their work shift.  These workers have to strip naked, stand before a deputy, and be searched.  They often have to open their mouths, and let the deputy view their anus.  It is a dehumanizing and degrading procedure, all for the ability to work for free.

**Grievances And Retaliation**

131.     Multiple members of the class have filed grievances in this case, and exhausted the grievance process.  In addition, plaintiffs may seek consolidation with *Mohrbacher, et al. v.*

FIRST AMENDED COMPLAINT

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

*Alameda County Sheriffs Office, et al.* 3:18-cv-00050-JD on related and intersecting issues.
Many of the plaintiffs of the present case and class members in Mohrbacher, et al, have also tried
to file grievances but defendants refuse to accept those grievances, refuse to assign numbers to the
grievances, and have failed and refused to respond to these grievances. In addition, plaintiffs
submitted the strike demands to SHERIFF on October 18, 2019, at the request of a jail Lieutenant,
who asked for their grievances. EXHIBIT A.

132.    While defendant SHERIFF purports to have a grievance process, defendant and its
employees actively dissuade and prevent plaintiffs and members of the class from filing
grievances.   The system on paper appears reasonable.   The housing unit deputy is supposed to try
and resolve the grievance.   However, the result is that housing unit deputies refuse to accept
grievances because clearly, receiving grievances reflect negatively on the housing unit deputies,
so the goal is to reduce the number of grievances prisoners submit.   To keep the number of
grievances low, housing unit deputies often refuse or fail to provide blank grievances; refuse to
accept completed grievances from plaintiffs and members of the class, stating that the complaint
is "not grievable"; or refuse to accept completed grievances from plaintiffs and members of the
class, stating that the grievance, for example, the complaints on the food or the lack of tray
sanitation, is directed at defendant Aramark, which is a separate business and not subject to a
grievance.   The first level of SHERIFF grievance procedure is for the housing unit deputy to
exercise discretion to resolve the grievance, and housing unit deputies often respond by stating
"This is jail.   If you don't like it, don't come to jail."

133.    Even when a grievance is submitted, the responses are formulaic and do not address
the prisoner's concerns.   Lavert Branner filed a grievance complaining of an invasion of gnats,
and that the gnats were getting into his food.   Defendant SHERIFF's denied the grievance, stating
"If you have any discrepancy with any of your meals, you need to contact a housing unit deputy
immediately.   Not only is a deputy a great resource to verify your claim, the deputy will be able to
contact the Kitchen and possibly issue a remedy."

134.    In one situation, an prisoner brought to deputy Wong's attention of a meal that had
been contaminated.   Deputy Wong took a grievance and brought it down to the kitchen.

Apparently, the grievance was not well received. The next time, a problem with a meal was brought to Deputy Wong's attention, he refused the grievance although he did bring in another food tray.

135.   Defendant SHERIFF gives reports to the Alameda County Board of Supervisors on grievances, touting how few grievances are filed, as proof of the quality of the conditions of confinement at Santa Rita Jail. This is an added reason why deputies are instructed to refuse and deflect grievances in order to reduce the total number of grievances. Some prisoners have asked deputies, "Don't you want to improve this place?" And the response has been "Not my job." This strategy does not change the root cause of the problem, which is why problems escalate and the prisoners were forced to hold a strike.

136.   LAWRENCE GERRANS was the individual who the other prisoners requested to be their spokesperson. LAWRENCE GERRANS collected everyone's comments and requests and wrote up what became, both the Strike Demands and the Strike Statement. Plaintiff LAWRENCE GERRANS has taken this action at the suggestion of a defendant SHERIFF lieutenant who came into the Housing Unit when plaintiffs and class members were refusing food in protest on October 18, 2019. On Thursday, October 31, 2019, defendant SHERIFF had him removed from Santa Rita Jail, and transferred to Marin County jail. In Marin County Jail, LAWRENCE GERRANS has been placed into administrative segregation.

137.   As the strike progressed, Defendant SHERIFF began issuing disciplinary citations only to sentenced prisoners who had been workers. None of the workers had been informed that they lacked the right to not work. They all believed that working was a "voluntary" activity, especially since the only compensation they received was "food treats". 15 CCR 1080 requires that the disciplinary process be posted or handed out to prisoners. There is nothing posted nor is there anything in the SHERIFF handbook that workers are prohibited from refusing work, and that if an prisoner worker refuses to work, that they would be subject to discipline.

138.   Due to fears and concerns that sentenced kitchen workers who participated in the strike would be summarily punished with extra time tacked onto their sentence, Plaintiffs rushed and file the initial complaint. After the complaint was filed, defendant SHERIFF did not execute

the threatened discipline and on information and belief, Plaintiffs allege that all prisoners were released on their original release dates.

**Broad Jailwide Frustration With Intolerable Conditions**

139.    Housing Unit 31, where the strike initiated is on the minimum security section of the jail which are, on the east side of the jail.  Word of the strike traveled to the maximum security housing units, which are on the west side of the jail.  Various prisoners in maximum security housing units, discussed and reviewed the conditions of Santa Rita Jail, and wrote up a list of grievances.  These lists were essentially identical in content to what the prisoners in Housing Unit 31 wrote.  These lists were combined with the demands of Housing Unit 31 and circulated amongst the various housing units for review, comment and approval.  The prisoners collected signatures indicating approval and support for these as a joint group grievance.  This group grievance, signed by hundreds of prisoners, was submitted to the Alameda County Board of Supervisors and defendant SHERIFF on March 17, 2020.  A true and correct copy is attached as Exhibit C.

## PRIOR KNOWLEDGE OF JAIL CONDITIONS: CONSCIOUS DISREGARD OF HARM TO PRISONERS

140.    None of these complaints are new, or a surprise.  Many of these exact same issues, as listed in the Strike Demands have been made by women prisoners in the Mohrbacher case, filed in January, 2018, now pending in this court.  3:18-cv-00050-JD.  The fact that prisoners on the East Side of the jail, and prisoners on the West Side of the Jail, independently derived essentially the same complaints, describing the same problems, indicates these are jail-wide, system wide practices.

141.    Defendants were well aware of the issues and have chosen to not address or fix the problem.  Defendants AHEARN, MADIGAN, and HESSELEIN, encouraged, authorized, ratified, and condoned the unconstitutional and wrongful conducts complained of herein.

142.    Said customs, policies and practices include the maintenance of inhumane and unsanitary conditions of confinement, the interference, disruption of plaintiffs' First Amendment protective activities, and the right to family visits and communications with family and attorneys;

the failure to maintain adequate policies and failure to adequately train, supervise and control jail employees including jail deputies and technicians; failure to insure that for profit contractors provide adequate services including medical care, and health, nutritious and edible food.

## APPLICABLE COMMUNITY STANDARDS

143.    SRJ's treatment of prisoners falls far short of acceptable conditions under the United States Constitution. The Eighth Amendment to the U.S. Constitution requires that correctional facilities "must ensure that prisoners receive adequate food, clothing, shelter, and medical care." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)

144.    California Regulations provide a ready benchmark for what constitutes "adequate food, clothing, . . . and medical care."  All references will be to Title 15.

145.    Santa Rita Jail is primarily a Type II facility, defined as "a local detention facility used for the detention of persons pending arraignment, during trial, and upon a sentence of commitment."

146.    California Code of Regulations (hereinafter "CCR") 15, § 1006.

147.    CCR §1051 requires appropriate segregation of prisoners until a medical evaluation is completed.

148.    CCR §1061 requires an "voluntary academic and/or vocational education of housed prisoners."

149.    CCR §1062 requires that SHERIFF "provide for as many visits and visitors" for prisoners as the facility allows.

150.    CCR § 1073 requires a grievance procedure where prisoners "may appeal and have resolved grievances relating to any conditions of confinement.

151.    CCR§ 1080 requires that rules and disciplinary penalties be posted or issued to each prisoner.

152.    CCR §1200 requires "emergency and basic health care".

153.    CCR § 1206 requires health screening, and a "written plan to provide care" for any prisoner at the time of booking who requests or needs medical, mental health care.

36

154.     CCR §1210(b) specifies that "[f]or each prisoner treated for health conditions for which additional treatment, special accommodations and/or a schedule of follow-up care is/are needed during the period of incarceration, responsible health care staff shall develop a written treatment plan."

155.     CCR § 1248 specifies that, "The medical diets utilized by a facility shall be planned, prepared and served with consultation from a registered dietitian. The facility manager shall comply with any medical diet prescribed for an prisoner.

156.     CCR § 1248 further specifies that, "[t]he facility manager and responsible physician shall ensure that the medical diet manual, which includes sample menus of medical diets, shall be available in both the medical unit and the food service office for reference and information. A registered dietitian shall review, and the responsible physician shall approve, the diet manual on an annual basis.

157.     CCR § 1240 specifies that, "[p]rovisions shall be made for prisoners who may miss a regularly scheduled facility meal. They shall be provided with a substitute meal and beverage, and prisoners on medical diets shall be provided with their prescribed meal."

158.     CCR § 1242 specifies that "Menus shall be planned to provide a variety of foods, thus preventing repetitive meals."

159.     CCR § 1241 specifies that "A wide variety of food should be served."

160.     CCR § 1241(c) specifies that "The daily requirement of fruits and vegetables shall be five servings. At least one serving shall be from each of the following three categories:

161.     CCR § 1241(c)(1) specifies that "One serving of a fresh fruit or vegetable per day, or seven (7) servings per week."

162.     CCR § 1241(c)(2) specifies that "One serving of a Vitamin C source containing 30 mg. or more per day or seven (7) servings per week."

163.     CCR § 1241(c)(3) specifies that "One serving of a Vitamin A source, fruit or vegetable, containing 200 micrograms Retional Equivalents (RE) or more per day, or seven servings per week."

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

164.    CCR § 1241 further specifies that "Providing only the minimum servings outlined in this regulation is not sufficient to meet the prisoners' caloric requirements. Additional servings from the dairy, vegetable-fruit, and bread-cereal groups must be provided in amounts to meet caloric requirements."

165.    CCR § 1230 specifies that, "[t]he responsible physician, in cooperation with the food services manager and the facility administrator, shall develop written procedures for medical screening of prisoner food service workers prior to working in the facility kitchen"

166.    In addition, CCR § 1243 specifies that, "Facilities shall have a written food service plan that shall comply with the applicable California Retail Food Code."

167.    Among other things, the California Retail Food Code § 113980 requires that "All food shall be manufactured, produced, prepared . . . stored . . . and served so as to be pure and free from . . . spoilage; . . . shall be protected from dirt, vermin, . . . droplet contamination, overhead leakage, or other environmental sources of contamination; shall otherwise be fully fit for human consumption."

168.    As alleged above in Paragraphs 67-83, SHERIFF and ARAMARK comply with none of the standards cited above which clearly define what constitutes the provision of adequate foods to prisoners.

169.    CCR § 1260 specifies that, "The standard issue of climatically suitable clothing to prisoners held after arraignment . . . shall include (c) clean undergarments . . . (2) for females - bra and two pairs of panties." Further, CCR § 1262 specifies that, "Undergarments and socks shall be exchanged twice each week."

170.    CCR § 1248 also provides that "The prisoners' personal undergarments and footwear may be substituted for the institutional undergarments and footwear specified in this regulation. This option notwithstanding, the facility has the primary responsibility to provide the personal undergarments and footwear."

171.    CCR § 1263 specifies that "Written policy and procedures shall specify handling of laundry that is known or suspected to be contaminated with infectious material."

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

172.    As alleged above in Paragraphs 67-83, SHERIFF and Aramark complies with none of the standards cited above which clearly define what constitutes the provision of adequate foods to prisoners.

## FIRST CLAIM FOR RELIEF

## DEPRIVATION OF FEDERAL CIVIL RIGHTS
## UNDER 42 U.S.C. § 1983

173.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

174.    This first claim is asserted against Defendants Alameda County Sheriff's Office, Alameda County, Defendants Gregory AHEARN, Thomas Madigan, Captain Derrick C. Hesselein, Deputy Ignont, Deputy Joe and Technician Kaiser, and Does 1 through 25.

175.    At all relevant times herein, defendant SHERIFF has been responsible for operating the Santa Rita Jail.

176.    At all relevant times herein, Defendants MADIGAN was the individual directly in charge of Santa Rita Jail, with direct supervisory powers, and the duty to properly supervise, train and insure that there are appropriate and necessary policies, procedures, customs, and or practices, and that those policies, procedures, customs and/or practices were followed and properly applied. Instead, while Santa Rita Jail has a plethora of written policies, many of these policies were routinely either not applied, or applied in a manner that corrupted or perverted the intent and purpose of those policies, and then caused violations of the Plaintiffs' and the class members' constitutional rights granted pursuant to 42 U.S.C. § 1983, including those under the First, Fourth, Eighth and Fourteenth Amendments.

177.    As a direct and proximate result of the conduct of defendants described herein the named individual plaintiffs have been denied their constitutional and legal rights as stated, and have suffered physical injuries and bodily harm, mental and emotional distress, and other damages in an amount according to proof.

178.    Defendants' policies, practices , customs, conduct and acts all alleged herein have resulted and will continue to result in irreparable injury to plaintiffs, including but not limited to

violations of their constitutional and statutory rights. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein. Plaintiffs and members of the class remain in the custody and under the control of Defendants. Plaintiffs therefore see injunctive relief from this court, to ensure that plaintiffs and persons similarly situated will not suffer violations of their rights from defendants' illegal and unconstitutional policies, customs and practices as described herein.

179.    An actual controversy exists between plaintiffs and defendants in that Plaintiffs contend that the policies, practices and conduct of defendants alleged herein are  unlawful and unconstitutional, whereas plaintiffs are informed and believe that defendants contend that said policies, practices and conduct are lawful and constitutional.   Plaintiffs seek a declaration of rights with respect to this controversy

180.    185.  Defendants' above-described conduct violated plaintiffs and all class members rights under the First, Fourth, Fifth, Eighth and Fourteen Amendment.

## SECOND CLAIM FOR RELIEF

## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AGAINST SHERIFF AND DEFENDANT WELL-PATH

181.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

182.    At all relevant times herein, Defendant WELL-PATH acted under color of State law.

183.    At all relevant times herein, Defendant WELL-PATH established and/or followed policies, procedures, customs, and or practices, and those policies were the cause of violation of the Plaintiffs' and the class members' constitutional rights granted pursuant to 42 U.S.C. § 1983, including those under the Eighth and Fourteenth Amendments.  All of the aforementioned acts of the Defendant WELL-PATH, their agents, servants and employees, were carried out jointly with SHERIFF under the color of state law.

184.    At all relevant times herein, Defendant SHERIFF delegated to Defendant WELL-PATH the traditional public function of determining and controlling the provision of medical

40

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

services to prisoners, including prisoners, in such a way as deliberately calculated to deny such prisoners access to adequate medical care. The denial of necessary and appropriate medical services was imposed in order to reduce WELL-PATH's costs under its contract with Defendant SHERIFF, specifically pursuant to the pricing provisions of that contract which penalized WELL-PATH for allowing the provision of any outside medical care, regardless of the medical necessity of such care.

185. At all relevant times herein, Defendant WELL-PATH acted jointly and intentionally with Defendant SHERIFF, pursuant to a customary plan to restrict Plaintiffs and class members from obtaining medically necessary and appropriate medical care.

186. At all relevant times herein, Defendant WELL-PATH intentionally participated with the Defendant SHERIFF in a customary plan to restrict Plaintiffs and class members from obtaining medically necessary and appropriate medical care.

187. At all relevant times herein, an prisoner's right to necessary and appropriate medical services was clearly established. The contours of the right to necessary and appropriate medical services was made sufficiently clear by, among other things, the California Regulations cited herein.

188. At all relevant times herein, Defendants WELL-PATH and SHERIFF acted with deliberate indifference to the violation of Plaintiff's class members' rights. As shown above, Defendants WELL-PATH and SHERIFF were aware of the substantial risk of serious harm to an prisoner's health and safety created by the denial of necessary and appropriate medical services and Defendants WELL-PATH and SHERIFF deliberately disregarded that risk. At all relevant times, the California Regulations cited herein put Defendants WELL-PATH and SHERIFF on actual notice that such substantial risk of serious harm is not one that today's society chooses to tolerate.

189. At all relevant times herein, there existed a pervasive entwinement between Defendants Defendant WELL-PATH and Defendant SHERIFF, in that Defendant SHERIFF delegated to Defendant WELL-PATH the traditional public function of determining and providing medical care to prisoners.

190.     The deprivation of Plaintiffs' and class members' constitutional rights was caused by the close nexus between Defendant WELL-PATH and Defendant SHERIFF that was created by the direct role of Defendant SHERIFF in enforcing WELL-PATH's determination to deny and withhold necessary and appropriate medical care to SRJ prisoners.

191.     The close nexus between Defendants WELL-PATH and SHERIFF is the legal cause of injuries to Plaintiffs and the class as alleged herein and, as a result, Plaintiffs and the class have sustained general and special damages, as well as incurring attorneys' fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

192.     Wherefore, plaintiffs and the prisoner class they represent request relief as outlined below.

## THIRD CLAIM FOR RELIEF

### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AGAINST SHERIFF AND ARAMARK CORRECTIONAL SERVICES LLC

193.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

194.     At all relevant times herein, Defendant ARAMARK CORRECTIONAL SERVICES LLC acted under color of State law.

195.     At all relevant times herein, Defendant ARAMARK established and/or followed policies, procedures, customs, and or practices, and those policies were the cause of violation of the Plaintiffs' and the class members' constitutional rights granted pursuant to 42 U.S.C. § 1983, including those under the Eighth and Fourteenth Amendments.  All of the aforementioned acts of the Defendant ARAMARK, their agents, servants and employees, were carried out under the color of state law.

196.     At all relevant times herein, Defendant ALAMDEA COUNTY SHERIFF'S OFFICE delegated to Defendant ARAMARK the traditional public function of feeding municipal prisoners and allowed and enabled Defendant ARAMARK to cause constitutionally inadequate food to be provided to SRJ prisoners and to deny SRJ food that is adequate to sustain health.  The

42

denial of food that is adequate to sustain health was imposed in order to reduce ARAMARK's costs under its contract with ASCO.

197.    At all relevant times herein, Defendant ARAMARK acted jointly and intentionally with Defendant SHERIFF, pursuant to a customary plan to prevent Plaintiffs and class members from having access to food that is adequate to maintain health.

198.    At all relevant times herein, Defendant ARAMARK intentionally participated with the Defendant SHERIFF in a customary plan to prevent Plaintiffs and class members from having access to food that is adequate to maintain health.

199.    On information and belief, plaintiffs allege that deplorable, inedible jail food benefited said defendants by lowering the cost of providing this food, and at the same time encouraging prisoners at Santa Rita Jail to purchase the over-priced commissary food, from which defendant SHERIFF also benefited.

200.    At all relevant times herein, an prisoner's right to food that is adequate to maintain health was clearly established. The contours of the right to food that is adequate to maintain health was made sufficiently clear by, among other things, the California Regulations cited herein.

201.    At all relevant times herein, Defendants ARAMARK and SHERIFF acted with deliberate indifference to the violation of Plaintiff's class members' rights. As shown above, ARAMARK and SHERIFF were aware of the substantial risk of serious harm to an prisoner's health created by the denial of food that is adequate to maintain health and ARAMARK and SHERIFF deliberately disregarded that risk. At all relevant times, the California Regulations cited herein put ARAMARK and SHERIFF on actual notice that such substantial risk of serious harm is not one that today's society chooses to tolerate.

202.    At all relevant times herein, there existed a pervasive entwinement between Defendant WELL-PATH and Defendant SHERIFF, in that ARAMARK was at all relevant times delegated by SHERIFF the traditional State function of feeding prisoners.

203.    The deprivation of Plaintiffs' and class members' constitutional rights was caused by the close nexus between Defendant WELL-PATH and Defendant SHERIFF that was created

FIRST AMENDED COMPLAINT

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

1   by the direct role of Defendant SHERIFF in enforcing ARAMARK's determination to prevent

2   Plaintiffs and class members from having access to food that is adequate to sustain health.

3       204.    The close nexus between Defendants ARAMARK and SHERIFF is the legal cause

4   of injuries to Plaintiffs and the class as alleged herein and, as a result, Plaintiffs and the class have

5   sustained general and special damages, as well as incurring attorneys' fees, costs, and expenses,

6   including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof

7   at trial.

8       WHEREFORE, Plaintiffs and the Prisoner Class they represent request relief as

9   outlined below.

10                                    PRAYER FOR RELIEF

11      Plaintiffs and the class and subclass they represent have no adequate remedy at law to redress

12  the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer

13  irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the

14  Defendants as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and

15  Defendants have an actual controversy and opposing legal positions as to Defendants' violations of

16  the constitutions and laws of the United States and the State of California. The need for relief is

17  critical because the rights at issue are paramount under the constitutions and laws of the United

18  States and the State of California.

19      WHEREFORE, Plaintiffs, on behalf of themselves, the proposed class and all others

20  similarly situated, pray for judgment and the following specific relief against Defendants as

21  follows:

22      1.       An order certifying that this action may be maintained as a class action pursuant to

23  Federal Rule of Civil Procedure 23(a) and 23(b)(2);

24      2.       A finding that the conditions, acts, omissions, policies, and practices described

25  above are in violation of the rights of Plaintiffs and the class and subclass they represent under the

26  Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 7 and 17

27  of the California

28      **WHEREFORE**, Plaintiffs respectfully request the Court to:

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

1.      Certify the Class of male prisoners at Santa Rita under Rule 23, F.R. Civ P., and also the Subclass of male prisoners who have been sentenced.

2.      Make findings of fact reflecting the general and specific failings and inadequacies of both groups of defendants' approaches to and practice in the care of male prisoners, the pattern and practice of defendants' non-feasance and maltreatment of male prisoners, and defendants' violations of statutory, regulatory and constitutional requirements in dealing with male prisoners.

3.      Initiate a serious effort, perhaps with a Order to Show Cause, to require defendants to provide medical care for all  prisoners who are in withdrawal from addiction to drugs, particularly opiates and fentanyl.

4.      Make findings of fact that lockdown and continued denial of out of cell time and denial of outdoor recreation constitutes punishment of pretrial detainees;

A.      **<u>Prohibit</u> defendants from**:

1.      punishing or threatening to punish prisoners for exercising their right to free speech, particularly regarding problems in Santa Rita Jail;

2.      coercing or pressuring prisoners to not file a grievance or to withdraw a grievance;

3.      requiring prisoner workers to do coroners' laundry;

4.      24-hour lockdowns without a justifiable exigent circumstance, not merely staff scheduling and ease;

5.      Profiteering off of prisoners;

6.      interfering with, preventing or cancel duly scheduled visits, whether video or in person.

**And**,

B. **Affirmatively <u>Order and direct</u> defendants to**:

7.      Provide medical treatment which addresses the medical need, consistent with the standard of good medical practice in the Bay Area

8.      Fully comply with all applicable state statutes and regulations, and develop a legitimate individual treatment plan for each detoxing prisoner, *and carry it out completely*!

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

9.    Fully comply with all applicable state statutes and regulations for a sufficient, healthy, balanced, nutritious diet which includes daily fresh fruits and vegetables, approved by a doctor;

10.    Develop, implement and maintain a systematic program for sanitation throughout the jail, including housing units, holding cells, kitchen and all bathrooms.

11.    Immediately provide no less 12 to 16 hours out of cell time daily for all pretrial detainees with weekly outdoor exercise prescribed by state regulations;

12.    Stop the profiteering from phone calls, video calls and the commissary;

13.    Full compliance with state laws and regulations which promote prisoner welfare and well being;

14.    Enter a preliminary and permanent injunction on behalf of the broad Class of male prisoners which will counter and remedy the County defendants' broader unconstitutional practice(s) as complained of and to be shown further;

15.    Award costs and fees for this action, including attorneys' fees;

16.    Grant such other and further relief as this Court deems appropriate.

DATED: May 5, 2020          **LAW OFFICE OF YOLANDA HUANG**


          __*/s/ Yolanda Huang*_____
          Yolanda Huang

          **DENNIS CUNNINGHAM**


          _*/s/ Dennis Cunningham*_____
          *Counsel for Plaintiffs*

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs.

DATED: May 5, 2020

**LAW OFFICE OF YOLANDA HUANG**

__/s/ Yolanda Huang_____
Yolanda Huang

**DENNIS CUNNINGHAM**

_/s/ Dennis Cunningham_____
Dennis Cunningham

*Counsel for Plaintiffs*

EXHIBIT A

**FIRST AMENDED COMPLAINT**

*Gonzalez v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 3:19-cv-0724 JSC

<u>Requests</u>

* A copy of this Document Sent Rita Administration after the Hunger Strike on october 18, 2019
* Lawrence Gerrans provided 1 Hour Video Testimony as well.

1.) <u>Food</u> - Improve Palatably. More Diversity. See List.
   (See List of Food requests)

2.) <u>Costs of commissary</u> Too High - Meet federal (rates)
   • Aramark Needs To Lower Costs or Find New Supplier.

3.) <u>cost of Telephone</u> Too ~~are~~ High - availability +
   Access is Too Low. We want our own Personal
   electronics with access to email, Texting + Phone
   as well as Internet for Net Flix, etc.
   • Cost of communication + Access is Punitive + Usury.

4.) <u>Clothing</u> - 2 Sets of Blues
                4 Sets of Shirts, Underwear, Socks
                2 Pair Work out Shorts
                * exchange Availability Twice a week.

5.) <u>Law Library</u> - We Need Access (Federal Law)
                - Internet Access could be Solution.
                * This is federal requirement for fed inmates

6.) <u>Cell Cleaning</u> - Twice a week.
   • Clean mops + Clean mop water
   • Clean Brushes + Clean Towels
   • More Disinfects
   • Better Floor + Shower Cleaning Agents
   • Insecticides To Kill Blood Sucking gnats
   • Honor requests for Additional Supplies day Today

7.) <u>Mail</u> - More reliable + on-Time delivery
                (especially Newspapers)
                - Faster Sending of ~~e~~ mail out

8.) Bedding - Exchange Blankets monthly

- Improve Mattresses - Too Thin, too old, too Dirty

- Provide Pillows for goodness sake !

9.) Personal Disinfectants - Triple Antibiotics, Bandaids

* Add To Commissary - Athlete's Foot Spray

* Make more easily - Hydrogen Peroxide / Disinfectants

available from Nurse - Personal Sanitation Supplies

- Barbicide for Clippers

10.) Family + Attorney Visits

- Not subject to Lockdown within 6 Hours of Visit.

- Notification System for Video Visits

- Allow Video Visits to commence in Lockdown

- Tower Should be able to easily monitor.

11.) Upgrade T.V.'s + Speakers - Hard To See

- Hard To Hear

12.) Stop Turning Phones off - Costing Attorney Fee's

13.) Mandatory POD Times - morning / Afternoon / Evening

9 To 11    2 To 4    7 To 10

14.) Mandatory Yard Access - 4 Times a week

irregular

15.) Adhere To Title 15 minimum Standards

16.) Stop recording Personal + Legal Phone calls for
Pre-Trial detainees, Civil rights Violation.

• Can't mount defense. Perform investigations.

17.) <u>Mandatory Meal Times</u>
  - Breakfest  5:30 Am To 7:30 Am
  - Lunch      11:00 Am To 1:00 pm
  - Dinner     5:00 pm To 7:00 pm

18.) Policy For Inmate Intake Sanitation
  • Inmates must shower and they must clean
    Their Finger nails + Toe Nails before receiving
    issuance of clothing and Assignment to
    Housing. We must control Bed Bugs, STAPH,
    infectous diseases due to creek dwellers +
    Homeless indigents being co-mingled with
    General population

19.) Clean The Holding Tanks with Hot mops,
    Bleaching and disinfecting agents at least
    once a day! They are Filthy + Health Hazard

20.) Clean The multi-purpose rooms daily with
    Hot mops + disinfectents.

21.) Coordinating Clothing + Bedding exchange
    immediately after Pod cleanings.

22.) Get Body Scanners + Stop The Strip Searches
  • They are Not yielding Seizures
  • They are uncomfortable + Demoralizing

23. Stop Shackling minimum security prisoners during Federal Transport. Unnecessary + Demoralizing.

24. Provide Signage + Intake paper relating mutual Terms + conditions of respect, Conduct + Privileges between detainees + deputies

25. Assign Key Holders by ethnicity/Affiliation to maintain order + rules. Self police to reduce manpower burden on Deputies in minimum security environments.

26. Santa Rita Needs to evolve its Systems + methods away from This Punitive Justice System and demoralizing, inhumane Treatment of citizens and Drug addicts To a modernized System + method of Restorative Justice! Right Now we Have Garbage In + even worse Garbage going out! This does Not make our Communities any Safer! To The Contrary, it makes Them Less Safe! we Need To Build people up, mAke Them Productive and restore Their HealTh and ViTality!

# EXHIBIT B

Cell Sanitation is at a crisis point. Detainees are only provided cleaning supplies once a week. The supplies provided are insufficient as is the time allotted to effectively clean their cells, sinks, showers, toilets and floors. Blood sucking gnats swarm the showers and cells. Detainees are contracting Lice, Bed Bugs, and flesh eating staph infections from the MRSA virus.

The protocols for sanitation are illogical. Detainees are only given one set of clothes for the week, to include one shower towel. This policy is in stark contrast to most other jails that provide four (4) sets or more of clothes per week.

New clothes are exchanged every Friday. Cell cleaning is scheduled every Saturday. Forcing citizen detainees to clean their cells, floors, bathrooms and showers in clean clothes and then sit in their now dirty clothes for the remaining six (6) days of the week. This is indignant and punitive treatment.

Homeless detainees are exchanged out of their filthy clothes and into clean jail issued clothes without being showered or sanitized. They are then sent to filthy holding cells to sit and lay down in vomit, urine, feces, semen, food and dirt stained

Floors until They are Transported To Their New Housing unit. They are Then introduced To a Dormitory cell Shared by as many as 30 other detainees, Comprised of regular citizens Serving Terms for Drunk Driving, Drug possession, Domestic Violence or aweiting Their court detes, etc. Upon arrival To The Dorm unit, Known as a 'POD', They are mandeted to Shower in The singuler Shower Stall Shared by all Dorm mates. This Spreads Lice, Bed Bugs, and infectious diseases like MRSA; Creating an obvious Health Hazard and Public Safety problem.

In The worst case detainees are exposed To Heroin addicts introduced To The Dorm without any medication. The Heroin addicts involuntarily defecate on Themselves, The Floors, Toilets and Shower creating an enormous Bio Hazard. RATHer Then caring For The Heroin addict in The Infirmary, The Detainees are made To Tend To The addict, clean up The addict and His messes, and suffer The indignity, Smell and infectious disease risks associated with These intravenous drug users. The risk of exposure To Hepatitis, c-Difficil, Pseudomonis, E-coli and other infectious disease introduced To Their Shower and Living environment is an illogical risk to The detainees and public Health, in general.

The Jail is suffering continuous lockdowns due to insufficient resources, manpower, and apparent funding. Consequently, citizen detainees are being 'locked down' in their cells in excess of 22 Hours a day. Family and Attorney visits are being cancelled due to lack of manpower to walk detainees to their visits. In many cases, families and attorneys who are traveling in excess of two (2) hours and/or flying in are being denied their visits upon arriving to the Jail. They are given no notice and are having to return home. This is creating frustrations and costs that are unnecessary.

Detainees are being gouged by commissary prices, for personal food and supplies, that exceed 800% mark up over retail store prices. for example, a single pack of Top Ramen Noodle Soup costs thirteen cents ($.13) at Safeway. It's commissary price is one dollar and thirteen cents ($1.13).

Detainees are being gouged by excessive calling costs. The cost to place a call is twenty three cents ($.23) per minute with a 15 minute limit, and phones are limited. This is costly and punitive to detainees, their families, and lawyers. All calls are also recorded and monitored, precluding detainees from mounting their defense with counsel or speaking candidly or intimately to their

Loved ones.

For Federal Detainees The Jail is required To Have a Law Library. IT does Not! This precludes Federal Detainees From being able To mount Their Defense, creating a Liability For The Government, in That it gives Those convicted an immediate appeal.

Detainees are being deprived of access to Personal electronics commonly available at other Jails. They are suffering The ability To remain connected and engaged To Their Families, Jobs and The world, in general. For an, otherwise, innocent Detainee This exacerbates Their Personel and professional Hardship. Costing many Their relationships, Jobs and income and precludes Them From accessing The Legal resources and intelligence To defend Themselves. Detainees are requesting reinstatement of Their ability To call, Text, email and use The internet. To carry on Their Lives.

For more information on The Hunger Strike and/or if you suffered under The conditions at Santa Rita and wish To Bear witness please call The Law Offices of _____.

# EXHIBIT C

# GRIEVANCES

**TO:** **Alameda County Board of Supervisors**

        **District 1 – Scott Haggerty**
        **District 2 -  Richard Valle, President**
        **District 3 – Wilma Chan**
        **District 4 – Nate Miley**
        **District 5 – Keith Carson, Vice-President**

    **Alameda County Sheriff's Office**

        **Sheriff Gregory Ahern**
        **Assistant Sheriff D. Houghtelling**
        **Commander Tom Madigan**
        **Captain D. Hesselein**

**From: Inmates at Santa Rita Jail**

**Date:  March 17, 2020**

**Re:  Unbearable Conditions at Santa Rita Jail**

    We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail.  Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject.  We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure.  We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

    The Alameda County Sheriff's Office provides no information or guidance on the grievance process.  There is an inmate handbook, but most inmates do not receive an inmate handbook.  And the information in the handbook is very limited.  There is no posted information on grievances or the grievance process, and what information inmates have is through transmission from another inmate, or experience at another facility.  Blank grievances are difficult to obtain.  Sheriff deputies discourage and pressure inmates not to file grievances.  Even when grievances are submitted, the process is such that the jail itself often does not follow its own process, and a carbon copy of the grievance with a tracking number is not returned to the filing inmates.  Even when the filing inmate receives the pink carbon with a tracking number, the jail sometimes does not respond, or responds very belatedly.  We prisoners have difficulty learning what the Santa Rita grievance process is and even more difficulty correctly following the grievance process.

These practices make filing grievances so difficult, in order to raise our voices  and bring attention to the awful, difficult to endure conditions at Santa Rita Jail, we have no choice but to file a group grievance about the daily, long standing, unconstitutional and inhumane conditions of confinement we are subjected to.

Santa Rita needs to evolve its systems and methods away from this punitive and demoralizing jail system with inhumane treatment of citizens and drug addicts to a modernized system and methods of restorative justice! The jail needs to end its culture of cruelty.  The current system does not make our communities any safer! To the contrary, it makes them less secure! Inmates leaving the jail are not better for having been in jail.  We need to build people up, make them productive and restore their health and vitality.

**1. FOOD.** The food here is awful and unhealthy. The food served consists of small repetitive, flavorless portions, day in and day out. The food is high in starch and sugar, low in nutritional value, and fresh fruits are primarily oranges and vegetables are primarily carrot nibs. The carrots are often dry and old. Protein is processed soy powder. The "juice" is colored and flavored powder. The food is cooked until there is no texture and no flavor. Then the food is either served frozen, or served after having been in the oven for hours and hours and is dry and hard. Frequently the food served is spoiled and decaying. Milk is sour. We have found vermin in our food (rat and mice feces, and whole boiled mice in the beans). Since the kitchen workers strike, portions have been so small that many of us are left hungry afterwards. The times for meals is arbitrary and random. Some of us have gotten dinner after 10 pm at night. Some of us have had to wait 12 hours between meals. The trays the food is put into are frequently dirty with the left-over caked-on food from a prior meal stuck to the bottom and that day's meal just slopped on top.

**WE DEMAND**:
a. regular meal times;
b. standardized meal preparation - stop placing meals in the oven for hours so that the food becomes dried to a crisp, or meals are served half frozen;
c. clean trays and better kitchen sanitation;
d. better quality control – no vermin in our food, no rodent shit, mold or spoilt foods;
e. greater variety of food;
f. variations of cold cereals such as Honey Nut Cheerios, Frosted Flakes, Raisin Bran, Fruit Loops, Frosted Mini Wheats, Cinnamon Toast Crunch, etc. ;
g. hard boiled eggs, waffles/pancakes with syrup, yogurt;
h. fresh fruits like bananas, blueberries, pears, plums, peaches, melons, grapes, and not just apples and oranges;
i. fresh salads like Cobb, Caesar, Chef, Asian, Garden, Seafood, BBQ, Santa Fe, and dark leafy greens;
j. real juice not powdered flavoring to mix with water;
k. real desserts like Jell-O, pudding, cheesecake, ice cream, pies, cakes,
l. real meat (and not just soy protein twisted into the shape of a sausage) like chicken on a bone and a more extensive dinner entrée menu and lunch menu; and,
m. Give us choice in what we eat and grant us the ability to prepare the meals.

**2. SAFE AND SANITARY FOOD.** We have found razors in our food. Inmate workers have to be reliable and trustworthy. Folks from the Protective Custody population have ample reason to tamper with the food of the mainliners or a way to seek revenge, Thus, we of the mainline population deem it to be unwise to eat food that could be spit in and/or poisoned or adulterated by the PC population.

**WE DEMAND**: The PC population be only allowed to prepare food for the peers of the PC population and mainliners only prepare food for the mainliners. Under no circumstances should the PC population have access to the food served to mainliners.

**3. GROUP PUNISHMENT.** On a daily and regular basis, the deputies threaten group punishment, meaning the entire inmate group is punished for the actions of a specific individual or a small group of individuals. The actions of a single individual will result in everyone losing privileges including pod time. A guard's anger and irritation at one individual will result in

everyone suffering. A guard's irritation and anger is easily triggered by asking a question, making a request, or any form of exercise of free speech. Any effort to stand up for oneself, or to stand up for another, even if it is a Constitutional right, or rights which exist under current jail policies and procedures, leads to a guard's anger and irrigation. Too many deputies treat all interactions with inmates as confrontations. So, to stifle inmates, guards punish the entire group with the goal that the group will then retaliate against the individual who tried to assert his rights. We inmates live under the constant fear and threat of retaliation, group punishment, assault, verbal and psychological abuse, neglect and more.

For example, due to HU 7's protest after Halloween about the PC population preparing the food, everyone is being punished by being forbidden to work out in boxers. We are told the new rule is that we have to exercise fully dressed. Since we are only given one set of clothing per week, that means everyone, including those new arrestees who were not even here during the protest is now forced to sweat in our clothes and then wear them for the rest of the week. There is no reason to insist that we exercise fully dressed. This is group punishment, and it is wrong.

**WE DEMAND** that group punishment end. More checks and balances need to be put in place. No deputy should punish someone just due to irritation and impatience. Deputies should stop threatening group punishment. Deputies should stop telling the group to attack or retaliate against individuals. The entire group should not suffer punishment for the action of an individual. Deputies found guilty of group punishment should be subject to discipline. Deputies need to be trained and to practice alternative dispute resolution.

**4. GRIEVANCE SYSTEM.** Blank grievances are hard to get. Even when we do get a blank grievance, the housing unit deputies pressure us to not file a grievance. Too often we are told that the issue is "not grievable". Complaints about the food are refused because Aramark is a separate company. We do not have adequate writing instruments to write a grievance, only stubby pencils and often broken pencil sharpeners. If we finally submit a written grievance, many times we do not get the return of the pink carbon copy with a tracking number. And if we do, the jail takes whatever time it chooses to respond, if there is a response at all. And generally, all grievances are denied.

The jail does not provide information on the grievance process, including the appeals process. Most of us have never been provided with an inmate handbook. There are no informational posters on the wall.

Moreover, the whole grievance process is completely bias, for its administered, investigated and reviewed by the very same agency and/or deputies an inmate likely has a grievance against. It's nearly impossible to receive a favorable or fair disposition.

The grievance process is broken. If the grievance process is for no purpose, and that there is no possibility of any real change, then say so, and everyone can stop pretending.

**WE DEMAND** genuine checks and balances. Either an outside agency be appointed to handle the grievances and inmates have an advocate, who inmates can ask for the welfare of inmates.

**5. SANITATION.** The parts of Santa Rita Jail that the inmates use are filthy. The jail makes inmates responsible for cleaning our cells but refuses to provide enough cleaning supplies,

cleaning tools and only on an irregular and infrequent basis. When supplies are provided, they are provided for too short a period of time. Some of us do not receive cleaning supplies for weeks on end. With 30 people in a cell, or a pod, that leads to inmates living in filth and squalor. Too often, homeless people off the street are simply placed into the housing units without having first had the opportunity to wash. New arrestees detoxing from drugs are simply placed into the cells and are often sick with diarrhea or vomiting, causing the cells to be filthy. As a result, disease, skin infections, and similar issues are common.

The holding cells, the multi-purpose rooms, the cells in ITR are also filthy. Holding cells and often the multi-purpose have feces, old moldy food, garbage, and they stink. Inmates are held in the multi-purpose room for long periods of time and there is no bathroom in the multi-purpose room. Inmates end up having to relieve themselves in garbage cans or in the corner. This is awful and wrong. These rooms need to be cleaned several times a day.

The "shower" in ITR is so filthy, that no one ever uses it, and no one can use it.

**WE DEMAND:** Inmates should have the ability to clean each and every cell which inmates live in and use, every day, including the multi-purpose room, dress-out cell, all holding cells, cells in ITR, PODS and housing units. Daily: Hot mop, pressure wash, bleach, pick up the garbage. Sufficient and good quality cleaning supplies and tools such as: mops, brooms, dust pans, toilet brushes, sponges, Clorox bleach, Lysol wipes, air fresheners, soap dispensers, paper towels, puncture-proof gloves, should be available at all times. Other jails including San Francisco and San Mateo have cleaning supplies always available so that inmates can clean their cells, their bathrooms and the common areas, every single day, whenever. All incoming inmates must shower and clean hands, fingernails and toe nails before receiving clothing and housing unit assignments. Jail needs to control bed bugs, lice, staph, and other infectious diseases. Stop arresting the homeless! And if they are arrested they must be clean before being placed in housing units.

**6. CLOTHING.** Santa Rita Jail is very cold and we are provided with inadequate clothing. We are cold! The only foot wear we are given are flimsy, used foam rubber flip flops, which are very slippery. You cannot run in them, you cannot exercise in them, you cannot play sports, and with the water on the bathroom floor, and most floors in the jail being slick, hard concrete floors, inmates regularly slip and fall with flip flops.

**WE DEMAND** We need adequate clothing, especially in the winter time. two (2) full sets of clothing weekly and a coat, sweater, thermals and a beanie to deal with the cold. We demand that the Sheriff's Office return rubber sole shoes to inmate population. (San Francisco allows inmates to have shoes with laces that tie.) The shoes need to be slip on or Velcro strap, or have shoelaces. They would reduce injury on the yard during recreational activities like basketball and keep one from slipping and falling on the majority of the smooth surfaces which we are forced to walk on. It would also assist with our physical exercise, for working out in flip flops is not an option. Moreover, because the cells and housing unit floors are so filthy, it is not an option to workout barefooted.

**7. PERSONAL HYGIENE.** Living in such close quarters with so many people, it is difficult to maintain personal hygiene, because the jail does not provide the means to maintain personal hygiene. All inmates have to purchase soap from the commissary, which is expensive, small in

quantity and of poor quality.  The commissary also does not provide the necessary products for Black hair.  Sanitation of the  hair clippers is not provided

**WE DEMAND:**  We demand daily access to personal disinfectants, quality hygiene products and equipment such as Whal/Andis/Oyster Brand Hair Clippers, trimmers, T-liners.

- Bar soap.  Other county jails provide – free – small bars of soap, which work better and are cheaper to use than the poor-quality liquid soaps Santa Rita force inmates to buy.
- Topical antibiotics, bandaids, athlete's foot spray
- Hydrogen peroxide/disinfectant
- Personal sanitation supplies
- Barbicide for hair clippers; Disinfectant sprays and sanitizer solutions for barber equipment
- Maintenance oils and cleaning brushes for the hair clippers;
- Hand sanitizer dispensers
- Gaskets/wet wipes/2-ply toilet paper
-

**8. MATTRESSES AND BEDDING.**  We sleep on  metal or concrete.  The mattresses are..too thin..too old..too dirty.  Many of us have developed back pain.  Back pain prevents us from being able to sleep, when we are able to sleep.  The poor-quality mattresses also leads to regular and constant conflict with inmates requesting and needing two mattresses.  A better-quality mattress would eliminate that issue.

**WE DEMAND:**  The same mattress as the ones in Fremont City jail whose mattress are more than 6 inches thick.  This is to reduce the need of inmates requiring double mattress and reduce inmates developing back problems. Exchange Blankets monthly.

**9. EXCESSIVE CHARGES AND POOR QUALITY CANTEEN.**  The jail gouges inmates, most of whom are very low income, many of whom are homeless.  Telephone costs and canteen costs at Santa Rita are higher than at San Francisco or San Mateo.  The sheriff just raised prices of the already high costs of the canteen.  And because the food served at Santa Rita Jail is so lousy, many inmates are forced to use their family's money to buy canteen in order to stay alive.  A package of ramen in the store that costs $0.20 costs $1.13 in the Santa Rita canteen.  Not only is the canteen outrageously high pricing and over-charging for dollar store items, the quality and selection is very poor.  The food selection is unhealthy.  It's vital for people to maintain family contact and the costs of the phone calls is a prohibitive barrier.

**WE DEMAND:**  Lower prices, and greater quality and selection of goods and products in the canteen, and lower costs for telephone calls.  Stop profiting off of poor inmates.  Prices at commissary should match the federal rates.  Telephone rates should be no more than the lower of San Mateo or San Francisco.

**9. EXCESSIVE LOCKUPS.**  Santa Rita Jail locks all inmates up, every day, some in overcrowded cells, others in tiny cells, for too many hours.  Some days, we are locked up all day, 24 hours.  Santa Rita Jail treats all inmates as objects to be warehoused and every inmate, including all pretrial inmates who are constitutionally presumed innocent, are punished by being excessively locked up in our cells, deprived of real exercise opportunities, deprived of outdoor exercise.  We all suffer from enforced idleness, lack of programs and services.  We're not

animals. Our movement is already very limited as is. Having a scheduled and regular out of cell time and access to the yard would give us a small a measure of normalcy and a way to plan and/or schedule a full functional day, and a small measure of humanity.

**WE DEMAND** full daily access to the day room and outdoor big yard for all inmates including maximum classification inmates. Inmates should be allowed access to the day room 10 hours a day. Inmates need access to sunlight, every day.

**10. ENFORCED IDLENESS.** Santa Rita Jail punishes all inmates, including all pretrial inmates not only by excessively locking us up in our cells, but by the lack of activities, lack of exercise opportunities, lack of outdoor exercise, lack of programs and services. This enforced idleness and warehousing of people creates mental stress, depression, and tension, which feeds conflict between inmates and between inmates and deputies. Furthermore, instead of being to use our time in jail productively to work on problems and make us more able and ready to be responsible citizens, we leave the jail homeless, impoverished, and mentally and physically debilitated.

The jail will say, that every housing unit has a television set. However, while that is true, Santa Rita operates in all ways to make it harsh and as difficult as possible for inmates. The television sets are mounted so that it is hard to see, and almost impossible to hear.

**WE DEMAND:** comprehensive "inmate services" department.

a. More educational programs, including career and skills classes not just barbering and baking;

b. Enough educational classes so that everyone who wants to take a class can do so, right now there are so few classes most inmates are excluded;

c. Legal Information & Access which respects our right to confidentiality:

i. Free legal clinics with actual attorneys, paralegals and law school students, so we can understand our judicial system, ask questions and become more knowledgeable;

ii. Law Library - Where we can do our own research and gain access to legal materials.

iii. Free legal assistance. For example, in San Francisco, the county provides Prison Legal Services that will perform legal research, make copies, and assist inmates. In addition, each inmate has the opportunity once every two weeks to directly engage in legal research and to personally make copies with the assistance of Prison Legal Services;

iv. Assistance so we can try to resolve and solve issues with our families, including divorce, child custody, and notary services;

d. Incentive program so that inmates who take classes and engage in productive activities and develop good score ratings are housed with greater privileges and freedoms. There are no incentive programs currently in Santa Rita Jail;

e. Recreational services hosted such as: music, board games, chess tournaments, physical fitness, competitions, sports events, trivia challenges, yoga, meditation, Tai Chi, Insanity,

Basketball teams, baseball teams, flag football teams, soccer teams, fencing, pool, table tennis, frisbee. More books and magazines. Movies, nature programs. Upgrade Television sets so you can see and hear.

f. Increased inmate services for indigent inmates including free weekly postage, five (5) free phone calls a month; writing and drawing materials including paper, pens, and coloring material. Assist inmates in expanding the inmate welfare fund by aiding inmates to seek out aid and sponsorship via charities, organizations and government funding. Indigent inmates should not be denied any liberties afforded inmates with money due to financial status. Nor should those liberties be subpar and/or mediocre. Teach inmates the basics of entrepreneurship including the development of a business plan, filing requirements, funding requirements and all things needed to establish a business.

**11. LACK OF JOB TRAINING.**   Santa Rita Jail's lock-ups and enforced idleness makes people crazy. This is the source of tensions, conflicts, fights, arguments, depression, anxiety and suicidal ideation. The jail uses enforced idleness to intimidate, harass and threaten all inmates. This leads to a routine hostility between guards and inmates. Over time, Santa Rita Jail has progressively removed programs and potential productive activities so that inmates leaving Santa Rita Jail are worse off than when they arrived. The job training teaches out of date skills, and are sexist. Women receive parenting and baking. Men can take barbering. These existing job classes are inadequate for the current job market.

**WE DEMAND:**  job training and job programs for inmates to participate in regardless of classification status; programs and services that give inmates real world skills and trade accreditation, accolades, certifications, experience and even jobs upon release. These programs and services should be based on hours and do not require lengthy wait periods for an inmate to be admitted. Inmates should be able to pick up where they left off if released from custody or recidivisms occurs. All work and study should be made transferable to apprenticeships and colleges. Examples of programs and services:

> Plumbing, HVAC, Landscaping, Computer Science, Carpentry, Automotive
> Mechanic, Gardening & Botany, Software Programming, Roofing, Masonry,
> Welding, Culinary Arts, Architecture, Accounting, Diesel Mechanic, Renewable
> Energy, etc.

**12. PUNISHMENT, PUNISHMENT, PUNISHMENT.**  Santa Rita Jail is wholly focused on punishment and deprivation. There are no incentives for good conduct, no incentives for self-improvement, no means for improving the human relations between guards and inmates. This leads to increased hostility, tension, and fights.

**WE DEMAND** incentive programs so we can be rehabilitated. This can include good time credits, or some form of a "forgiveness initiative" for the participation and completion of these programs which allow offenders to withdraw their pleas to certain offenses and obtain certifications of rehabilitation and pardon/leniency. We're demanding to be given options to salvage our lives and utilize our time in custody constructively to reduce recidivisms and become productive members of society.

**13. DEHUMANIZING PRACTICES.**  No other county jail strip searches inmates after each legal visit, each and every court hearing and after every work shift. This regular and frequent strip searching is dehumanizing.

**WE DEMAND** Adopt best practices. – Get Body Scanners (i.e. San Mateo)

**13. SLAVE LABOR.** Santa Rita Jail creates division and hierarchy with the way it structures work. Some inmates are POD workers, giving them power and control, and also the ability to profit from their work. Inmate workers are treated like dogs, and given "food treats" for working. Kitchen workers, over Halloween, went on strike. This is an example where people feel taken advantage of, and abused. It also leads to a situation where the jail is always trying to pressure inmates to "volunteer" and the quality and caliber of the work is poor, and the jail then is poorly run. This is demonstrated by the marked decline in the quality of the food since the strike. Portion size is now irregular. Time when meals arrive is irregular. The quality of food is much worse.

　　　　**WE DEMAND** that work also be incentivized, either by providing all workers with payment and/or good time credits/and or discounts on the canteen, this would include all inmates who contribute to the jail, including cleaning inside the housing units. Give inmates valuable work experience and a sense of pride and responsibility that comes with honest work. Ultimately, this gives back to the community by encouraging inmates to actively engage in the daily activities of the jail and getting inmates prepared to return to the community and workforce as productive members in society. All inmates should have access to work!

**14. MAIL, VISITATION AND FAMILY CONTACT.** The jail treats family visits as a burden which it wished could be eliminated and has set up the visiting program to be limited, cramped, difficult and expensive. Many of us have had loved ones travel to the jail only to be told that visitation is "canceled". Or that the inmate "refused" the visit, when in truth the technician or the deputy did not want to bother with bringing that inmate to the visit, and falsely declare that the inmate "refused" a visit. Family love and family connection are really important for inmates to keep our humanity. Cards and letters and photos are really important. Yet, when the deputies "shake down" a cell, they routinely destroy or confiscate cards, letters and photos. Instead, the jail should be encouraging our family contacts and encouraging our connection to our community. Family connections and community connections assist in preventing recidivism.

We are not animals and even if we were…animals need to be loved too. We demand an end to being devoid, desensitized and dehumanized by the lack of human contact. It's not right that we, cannot embrace our family and loved ones especially since we are not convicted. For example, Kyle Puckett was a pretrial detainee and his case was eventually dismissed. The five years he was in custody in Santa Rita Jail, he never got to hug or hold his son. We demand that we're treated as it is deemed: "Innocent until proven guilty."

　　　　**WE DEMAND a** more compassionate and intimate visitation service. Such a service would be sensitive to the needs and hardships of the inmate's family and inmate themselves. Services would include, but not be limited to: "Family Days" that would allow all participating inmates full contact with visitation with their family and loved ones regardless of classification, save for inmates in ad seg for disciplinary purposes. We seek conjugal visit privileges, transportation services for family and loved ones with hardships and/or disabilities, meaningful visits not just 15 minutes over the phone and outside food services for visiting families and inmates.

　　　　Inmates should not be forced to "miss" video visits or in person visits due to technician and deputy failures:

- Stop placing prisoners in lockdown within 6 hours of visit
- notify prisoners they have upcoming video visits
- allow video visits to begin in lockdown
- Technicians should be set up so they are alerted to when video visits begin
- Technicians and deputies should be disciplined for declaring that inmates have "refused" visits when this is not true.

For blues – stop turning off the phones, promote family communication.

Allow prisoners easy access to call attorneys. Top recording legal phone calls. Implement the federal system to allow inmates email access.

Stop using mail as a means to manipulate inmates. Mail needs reliable and on-time delivery especially for newspapers and an expedited method of sending mail.

**15.   DEPUTIES AND TECHNICIANS ABUSE OF POWER.** While the inmate guidelines say that disrespect for deputies can and often does result in discipline, there is no comparable requirement that deputies act with respect for inmates. A technician who yells "suck my dick", is not disciplined, and the inmates who complained are threatened. We inmates are often subject to being cursed at, ignored completely, answered with "smart" demoralizing remarks, etc. by technicians. They often disregard inmate requests, fail to open calls for inmate video visits, persuade stand-in deputies on how to run programs to punish and/or get even with inmates (i.e., split tier/one pod), limit inmate free time, cutting off phones or TV unnecessarily and all other manner of psychological warfare. When inmates push the medical emergency button, the technicians often, and regularly disregard us, until the entire housing unit has to scream "Man Down!" Technicians and deputies ignore medical emergencies, and take their time, walking to the cell when someone has a medical emergency. Technicians and deputies falsely claim that inmates "refuse" family visits or legal visits to avoid having to do the work.
       **WE DEMAND** that abuse of power, dereliction of duties, the display arrogance and verbal abuse, by technicians and deputies not be tolerated; that deputies and technicians also be held accountable. Respect must be given in order to be reciprocated. Inmates should have relief from this type of abuse. Provide signage and intake paper stating mutual terms and conditions of respect, standards of conduct and privileges and rights between detainees and deputies.

**16. COMMUNICATIONS WITH DEPUTIES AND JAIL STAFF.** Deputies and jail staff treat every question or request from an inmate at best as an imposition and annoyance, and at worst as an affront and challenge. There is no positive or healthy means for inmates to communicate or interact with jail staff.
       **WE DEMAND** an Inmate Council, which every California prison has, and which Santa Clara County has instituted, to promote self-regulation, better communication and conflict resolution between inmates and staff.

**17. JEWS & MUSLIMS** need equal ability to practice their religions including: prayer rugs, Rabbis and Imams to lead services and religious counseling.

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Milt Martini | | 854-1415 |
| Mark Lew | | LMD 054 |
| Robert Chandler | | ARS-353 |
| RANDAL CAIRES | Randal Caire | ALK 814 |
| Jason Bruce | | NMC575 |
| Robert Laubach | | BBX 788 |
| Jorge Martinez | | UMD 126 |
| Angel Fuentes | angel Fuentes | BKF02-G |
| Benjamin Nuno | Benjamin Nuno | UMC 229 |
| KYLE WATKINS | K Watk | BFL030 |
| Jaime Avina Barajas | Jaime Avina Barajas | BMK552 |
| David Haines | David Haines | BJL536 |
| Simon Robles | Simon Robles | BZU935 |
| | | BBN062 |
| Hrrance Rose | | UMC372 |
| Dejon Disburke | | AWC-786 |
| JASON W. Wells | Jason Wells | AUE-356 |
| Anton O'poole | Anton O'poole | BFA980 |
| Caussy Brewer | | 5u761 |
| Derrick Simmons | | BIQ698 |
| HENRY | Squilla | UMC 388 |
| Freddy Walters | | BFW507 |
| Douglas Gladden | | BhfG95 |
| Oscar Madrigal | an | UMD042 |
| TRAMAYNE BAKER | | BAV746 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Christopher Kemp | C. Kemp | WRC428 |
| Michael Kelly | M Kelly | BKD710 |
| Jewn Toura | | UMN 134 |
| Raymond Carter | | BM1026 |
| Cameron Garrett | AVR 225 | |
| Jeremiah Walker | | BBNU52 |
| Conway Brewer | | BLU761 |
| Deion Disbrele | | AWC-750 |
| Brian Johnson | | BJJ732 |
| Fontana Hill | | ALVN874 |
| Edwin Lee | Edwin Lee | AUR 950 |
| Chris Andalis | | BED609 |
| Josue Cardenas | J.C. | BL5238 |
| Diondre Stewart | D S | BJL460 |
| Richard Reynoso | | RBX207 |
| Simon Robles | | BIU-935 |
| Darrell Hargrove | Darrell Hargrove | UGK-900 |
| Carl Brentwood | Carl Brentwood | CLRA812 |
| Raven Gonzales | | BLW488 |
| Hernandez Luis | | BCH314 |
| Jimmie Jones | Jimmie Jones | ULY525 |
| Kyle Watkins | K Watkins | BFL030 |
| De'Shyna Allen | | Bm3633 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Burt'E Gucci Rhodes | B.R | UMB960 |
| Ishmael Durmas | Ishmael Durmas | BBR440 |
| EDWARD ALLEN | Edward Allen | BKT309 |
| Rodrick Long | Rodrick Long | BGU718 |
| LEONARD JOHNSON | Leonard Johnson | RJF427 |
| Albert Williams | Albert Williams | AY4264 |
| Kevian BYRD | Kevian Byrd | BLE480 |
| Jose Rodriguez | Jose Rodriguez | BKG555 |
| Gregory Dawson | Gregory Dawson | BGF-431 |
| Anthony Lopez | | UMC064 |
| Raydian Omar Lindsay | Raydian Lindsay | BKC-043 |
| Abdiel Guerrero | Abdiel Guerrero | BKK784 |
| GIANG, HUNG | 7cg | BGB188 |
| Ikhliue G. Wilson | | BFX550 |
| MAURICE BIBBS | | UUT817 |
| William Turner | | BCN-530 |
| Kelvin Banister | Kelvin B | BCX042 |
| Alonzo Truonglcim | Alonzo Truong | BN4721 |
| Richard Ramirez | | BM0806 |
| Danicholas Evans | Danicholas Evans | BME851 |
| Weiman Blacter | Weiman Blacter | BLB57 |
| Darlaun Barnett | Darlaun Barnett | BJS-526 |
| Jayden McDaniels | Jayden McDaniels | BMI657 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Bennie Walker | | BLN 974 |
| Rickey Jackson | | BLE087 |
| Elijah Henry | Elijah Henry | BLT848 |
| Pearl Mann | | AYS 686 |
| Shedrick Henry | | AVA-752 |
| Antoine Felix | | BiQ746 |
| Curtys Taylor | | BLE377 |
| Rashad Albert | | BJD809 |
| Errol Anderson | Errol Anderson | AYR629 |
| Vernell Cloy | V. Cloy | BJC971 |
| Donald Sims | | BHR383 |
| Nathaniel Dudley | Nathaniel Dudley | BMB814 |
| Andre Poole | Andre Poole | BGQ970 |
| Jerry Harbin | Jerry H | BGHS30 |
| Michael Pruitt | M | BML639 |
| Siamak Montes de Oca | | BJQ128 |
| Dwon Huche | | BIW748 |
| Dominic R. Wilson | | BLY785 |
| Maurice A Powell Jr | Maurice A Powell | UMC431 |
| Hillard Webb | Hillard Webb | BMG321 |
| Andrew Peter | Andrew Peter | BJC988 |
| Ezahna Evans | Ezahna Evans | ULZ822 |
| RANDALL E. SHUMPERT | | UMC341 |
| Mynyamani Stevenson | | Bmm664 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Burt'E Gucci Rhodes | B.R. | UMB960 |
| Ishmael Durmas | Ishmael Durmas | BBR440 |
| EDWARD ALLEN | Edward Allen | BKT309 |
| Bredrick Long | Bredrick Long | BGU718 |
| LEONARd Johnson | Leonard Johnson | AJE427 |
| Albert Williams | Albert Williams | AY4264 |
| Kevian BYRD | Kevian Byrd | BLE480 |
| Jose Rodriguez | Jose Rodriguez | BKG555 |
| Gregory Dawson | Gregory Dawson | BGF-431 |
| Anthony Lopez | | UMC064 |
| Raydran Omar Lindsay | Raydran Lindsay | BKC-043 |
| Abdiel Guerrero | Abdiel Guerrero | BKK784 |
| GIANG, HUNG | Tcg | BGB188 |
| Ishlue G. Wilson | | BFX5C0 |
| Maurice BiBBS | M B | UUT817 |
| William Turner | | BCN-530 |
| Kelvin Banister | Nac B | BCX042 |
| Alonzo Truongham | Alonzo Truong | BV14921 |
| Richard Ramirez | RR | BM0806 |
| DaNicholas Evans | DaNicholas Evans | BME851 |
| Waymon Blocker | Waymon Blocker | BNB57 |
| Davaun Barnett | Davaun Barnett | BJS-526 |
| Jayden McDaniels | | BMI657 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| John W. Miller, Jr | John W. Miller, Jr | AME-406 |
| Alex Fernandez | | BJW353 |
| Enrique Sandoval | | AXV-433 |
| Marcel Rutherford Chen | | BLQ811 |
| Demetrice Thompson | | BKM280 |
| Gibson | | BGW-699 |
| Otis | Otis Wright | BLI068 |
| | | |
| Anthony Dennis | | BLA638 |
| Jimmie Foster | Jimmie Foster | BLS474 |
| LARONTE STADESVILLE | | RLK878 |
| Ray Webb | Ray Webb | UMD002 |
| Mike Miller | | AWX627 |
| Lance Green | | ULW571 |
| Jerome Slayter | Jerome Slayter | UMC576 |
| R.M Roderick Maggay | R-M | ULW183 |
| Luis Cardenas | Luis Cardenas | DMJ673 |
| Richard Myers | M. R. Myers | ULW862 |
| Tyler Dickens | | BMG516 |
| Andre Cook | Jim Cook | UMC206 |
| Daniel Chavez | D. Chavez | UMA611 |
| JOEL GARCIA-LOPEZ | | BHY333 |
| JOHN BLACKNELL | John Blacknell | BLR401 |

Cp2

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we _all_ endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
| --- | --- | --- |
| Re | | |
| Robert Redmond | Robert Redmond | MRX-059 |
| Jimm Mullins | Mulli | ULG-130 |
| JAMES Robinson | James Robt | BAH-T26 |
| Monuel Salus | | BMD-440 |
| Jamar Maddox | Jr Allen | BD-055 |
| Marco Bryant | M. T. Bryant | ANY-557 |
| Sean Collins | | UMB-955 |
| Kali Ponder | D AlPo | PLB888 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
| --- | --- | --- |
| GEORGE BLANK | George Blank | PPW446 |
| Donald Smith | Donald Smith | BAO-879 |
| Daniel Lesley | Daniel Lesley | BLG-058 |
| TERRELL MARTINEZ | Terrell Martinez | AU2551 |
| Michael Pitre | Michael Pitre | Au6384 |
| Chris Moss | M | BTT-024 |
| John Lee | John Lee | UMC493 |
| Aaron Burks | Aaron Burks | BEE574 |
| Jacobi Gaines | Jacobi Gaines | BMP-055 |
| Fard collins | Fard Collins | BJL705 |
| Jemaine Godfrey | J. G | |
| Darryl Hickman | Darryl Hickman | BFK463 |
| Alexander McCree | | BGNS80 |
| ARTHUR JACKSON | Arthur Jack | BHC-167 |
| Dijon Newton | NR | BGU-814 |
| Treshaun George | Jayce | BJZ559 |
| Dishawn Richmond | Richmond | BLR-010 |
| MARQUICE McClinton | | BET-497 |
| Jacorian Frazier | | BGW-930 |
| Juan Rodrigue | Juan R | BMC837 |
| Mike Gaddhie | M | ALU772 |
| | | |
| | | |

E-pod

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Djontay Shackelford | | BAV816 |
| Anthon Malcolm Crenshaw | Anthon Crenshaw | VMD-098 |
| Matthew Pierce | Matthew Pierce | BHI-608 |
| Larorn mcglothin | Larorn mcglothin | Bgp265 |
| Keith Smith | Keith Smith | BDJ-538 |
| Julio Rodriguez | Julio Rodriguez | BFH425 |
| Juan martinez | | BKR568 |
| Omar A. Bonilla V. | | BIE024 |
| ARMONIE PUGH | | BLF521 |
| Eduardo vazquez | | BLL-157 |
| Julian Robinson | Julian Robinson | BAF955 |
| Alofa Muli | | BEV884 |
| Raya man | | VMD118 |
| JORGE L. ALFARO | Jorge Alfaro | BDR777 |
| JASON HATHORN | Jason Hathorn | BER424 |
| DEARUN DUMAS | Dearun Dumas | ANH397 |
| Andre Martin | | BMG482 |
| Eanrace L Iiopo | | BCQ661 |
| Dijon Holifield | Dijon Holifield | BGY853 |
| Alkehm Session | Alkehm Session | BLG672 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| DARRELL HARGROVE | Darell Harn | AGK-900 |
| Christopher Kemp | C. Kemp | 4AC-428 |
| DE'Shawn Franklin | Deshawn Franklin | BJH043 |
| HENRY FORD | Henry Ford | BAC204 |
| Jametrius Taylor | | Bat908 |
| Troy Kelley | Troy Kelley | AUX46L |
| Dejon Disburke | Dejon Disburke | AWC-156 |
| Eddie S. Obelton | | BFC-945 |
| Oontaye L. Turner | | BHT-564 |
| Ramayne Baker | | BAV746 |
| DeAndre Torrence | DeAndre Torrence | ARA-725 |
| Charles Crane | Cu | 745 |
| Douglas Gladden | D~ | BHF-695 |
| JIMMIE JONES | Jimmie Jones | ULX525 |
| Brian Johnson | | BIJ732 |
| Vonderrick Vickers | | BBN052 |
| Joshua Henderson | | PFN UMC928 |
| Gabriell Benitez | | BMO844 |
| Fontana Hill | | AW2N874 |
| WAHAB MOJADDIDI | Wahab | BCE-398 |
| Hector Mandron | | BLZ700 |
| Izayah Hayes | N.H | BMJO74 |
| LINCONA MARTINEZ | carlos | UMC474 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
| --- | --- | --- |
| Brenis F. Merida De Leon. | | BKB833 |
| Rodulio Alexo Garcia | | UMD109 |
| Carlos Alberto Limon | Carlos Limon | UMC248 |
| De'Shaun Allen | | BMB633 |
| Michael Seymour | M Seymour | AND531 |
| Cameron Garrett | Cameron Garrett | AYR225 |
| De'Shawn Franklin | Deshawn Franklin | BJH043 |
| CHRISTOPHER ADDIS | | BED609 |
| Diondre Stewart | Diondre Stewart | BJL460 |
| Adelfo López A. | | UMC525 |
| RANDAL CAIRES | Randal Caires | ALK814 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Vishal Manlashwa | | 079. |
| Gerardo Diaz Hernandez | Gerardo Diaz Hernandez | BMA782 |
| Jorge Martinez | Jorge Mart | UMD126 |
| Francisco | Heredia | UMC 346 |
| Derrick Simmons | | B10698 |
| DARRIEN SMITH | | B5L893 |
| Barrientos Alex | | UMC 282 |
| Manuel Titonga | Tinun | UMC 386 |
| Brayan Lopez | | UMD 034 |
| AHAN OSORTO | Ax Tour | UMC 385 |
| Axel Ramos | Ramo | BMG645 |
| Luis Amoupa Lopez | | BMP 861 |
| Martin Hernandez | Hernandez | UMC451 |
| Miguel Vazquez | Kumbla | UAB 179 |
| Jaime Avina Burajas | Jaime Avina Burajas | BMK553 |
| Oscar Madrigal | Oscar | UMD042 |
| luis orrega | gu. ZA | UMC-542 |
| Alejandro Alvarez | Alejandro Alvarez | UMD-103 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we _all_ endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Daniel Gonzalez | Daniel Gonzalez | BEZ 543 |
| José Quezada | | UMC 544 |
| Nathanael Avila | Nathan Avila | UMB879 |
| Benjamin Pearsall | BEN PEARSALL | UMC525 |
| David Price | David Price | ULY465 |
| Chad Sunderland | Chad | UMC 269 |
| Arnulfo Estrada | Arnulfo Estrada | UMD 031 |
| Alexander Mazarogos | Mazarogos | UMD.080 |
| Tu minh Do | TmD | BGC969 |
| Billy Durflinger | Billy Dur | BGE 413 |
| Michael Swenk | Michael Swenk | UMB963 |
| Eddie Edwards | | BHE 230 |
| Roger Karlson | | UMC96 |
| Britt Dunn | Britt DUNN | UMB917 |
| Steven Wolverton | | AYX 836 |
| Andrew Franklin | Andy F | BJK919 |
| Marcus Felder | M Felder | UJK034 |
| Josue Cardenas | J.C. | BLE238 |
| Wayne Smith | Wayne Smith | ATP484 |
| Adam Nelson | adam M | BCW098 |
| Hasboullah Nasir | | BIQ709 |
| John Long | | AJN 630 |
| Raven Gonzales | | BLW488 |

WE DO NOT AGREE WITH GETTING BODY SCANNERS
WE DO NOT WANT BODY SCANNERS AT ALL!!!

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
| --- | --- | --- |
| Robert Ruhitte | [signature] | UMC 549 |
| Christopher Jensen | Chris | BFX341 |
| Ryan Chandler | Ryan Chandler | UMD022 |
| Marus Smith | Marus Smith | VLZ152 |
| Erasto Campos | Erasto Campos | UMC477 |
| Bradley Grasseschi | [signature] | BJF681 |
| Talalelei Iopu | Talalelei Iopu | UMD065 |
| Raven Gonzales | Raven G | BLW488 |
| Matthew Shell | Matt Shell | BMN080 |
| Jose Wentworth | [signature] | GNC 415 |
| Luis Nunja | [signature] | UMC-207 |
| Vishal Kandeshwar | [signature] | UMC-079 |
| Eric Dennis | Eric Dennis | AVU268 |
| STEVEN CASEY | [signature] | BHW638 |
| Leonidas Macadiaza | [signature] | UMD015 |
| Terriel Luis | [signature] | UMD015 |
| Damian Baleas | [signature] | UMD 032 |
| William Brown | Wilbur Brown | UY-814 |
| Immanuel Simmons | [signature] | 0106 JSS47 |
| Sherard King | King | HK-605 |
| Deamous McKinley | Deamous McKinley | AVB-702 |
| MEHARY ETHIRE | [signature] | UFN 405 |
| Shane Crotty | [signature] | UMD 091 |

We are all inmates under the custody of the Alameda County Sheriff's Office: Santa Rita Jail. Our ultimate goal is to improve the overall conditions unto which all inmates of this institution are subject. We therefore, as inmates, affirm our consensus that the issues we list in this grievance, are common to all of us, and are the most significant issues we all endure. We are filing a group grievance because of the difficulty with filing grievances within Santa Rita Jail.

| Name (please print) | Signature | PFN |
|---|---|---|
| Robert Manning | Robert Manning | LLW916 |
| DARRELL Buckley | Darrell Buckley | AVL880 |
| Dontay Sanders | Dontay Sanders | BHH600 |
| Julius Basham | | BIIC-140 |
| Ernest Fobbs | | UMC417 |
| Gerald Paynes | | RLU430 |
| Carlo Serrano | | BKU828 |
| LAMAR JOHNSON | | UMC200 |
| Ron Christian | Ron Christian | RMP540 |
| Jemel Pettaway | | BIY352 |
| Roderick Brisco | Roderick Rivas | ULV587 |
| Justin Dorsey | | BLZ494 |
| Ed Morales | | AXT400 |
| Shane / all 11 | | BBI4174 |
| Samuel Lunas | | AUU922 |
| ABAYomi Brown | | RAE544 |
| Jeffrey Chavez | J.C | Big234 |
| GARY CROCKETT | | BLS223 |
| | | |
| | | |
| | | |
| | | |

# SANITATION LAWSUIT 34 EAST

**NAME:** Richard Garcia

**PFD:** BDZ-395

**COMPLAINT:** Mice poop on our cake and food, our trays are always dirty from left over food. weevils in Beans. cleaning supplys never come. Also, they threatend us with an extra 30 days loss of time if we do not work in Kitchen.

**NAME:** Angelo Tollardo

**PFD:** BFF-171 - 34 EAST - E1 - L.

**COMPLAINT:** lack of cleaning supplies, Nats on our food, food tray are dirty, Rat feces on food in the Kitchen Everyone getting sick in the pod letting people work while there sick, I caught hives from laundr

**NAME:** MIKE ROACH

**PFD:** BGJ-431

**COMPLAINT:** PEOPLE COMING INTO JAIL KICKING FROM HEROIN ARE PLACED IN GENERAL POPULATION. IT IS COMMON KNOWLEDGE THOSE KICKING HAVE UNCONTROLABLE BOWEL MOVEMENTS. WHICH EXPOSE EVERYONE AND DEPUTY SHERIFF'S EXPECT FELLOW INMATES TO CLEAN THE PERSON UP.

**NAME:** EDMUND LEE

**PFD:** ULX 882

**COMPLAINT:** WE DON'T GET CLEANING SUPPLIES FREQUENTLY ENOUGH, LEADING TO POOR AND FILTHY LIVING CONDITIONS. THERE ARE GNATS THROUGHOUT THE POD, WHICH ARE A HUGE NUISANCE. I HAVE SEEN MICE TWICE - ONCE IN THE LIVING AREAS AND OUT IN THE HALLWAY. WE ALSO GET IMPROPERLY CLASSIFIED INMATES WHO ARE PLACED IN OUR MIDST, WHO THEN CREATE A BIGGER MESS (POOR HYGIENE, BEING A PACK RAT, ETC.).

NAME: VINCENT JOHN BARRON / (559)313-9237
PFN: BMG-635 / APRIL 2019 - APRIL 2020
COMPLAINT: SPOILED FOOD, CLEANING SUPPLIES UNATTAINABLE
EXTREMELY IRREGULAR FEEDING TIMES
UNHEALTHY/UNSANITARY LIVING ENVIRONMENT

NAME: Peter Craig Ford / 510-314-2704 / 510-706-3871
PFN: AVB240 / April 2018 - ?
COMPLAINT: No mental treatment, pre-scheduled surgery for major hair
loss/Tinnitus canceled, Very unsanitary conditions caus
bad noro-virus and Strep throat, passed out and left
untreated. 45LB weight loss due to lack of treatment.

NAME: VINCENT MARTIN
PFN: ALT186
COMPLAINT: Infestation, flying insects and other vermonts lack of
cleaning supplies never available Miss classification screening
on inmates being housed.

NAME: MIGUEL RUBIO
PFN: BIL568
COMPLAINT:

NAME: Joshua Dalando Harris
PFN: BKC448
COMPLAINT:

ANDRe Gonzales BDQ758
UNACCePtable mealtimes And
UNSAnitary living conditions

Name James Traylor
PFN BAF 220
complaint: Dirty trays.

Name sims Damian
PFN BBC 657
complaint: everything Dirty.

Emilio Escobar
Pfn: UmA 598
complaint: Dirty trays

Oscar correa
PFn: B5R 435
unsanitary living conditions

Carlos Garcia
PFN BBC 193
Dirty KitcHen For YEARS leving conditions

NAME: MICHAEL LARINA
PFN: BMC401

NAME: Julio CESAR INOCENCIO H
PFN: BLU727

Name: Jesus Salazar
PFN: BMJ180

NAME: Donald Lee Marler
PFN: BLC996

NAME: John Warren
PFN: AUB712

NAME: AKRAM HUSSAIN
PFN: BMH501

NAME:
PFN:

NAME:
PFN:

NAME:
PFN: