UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GONZALEZ, et al., | Case No.  19-cv-07423-JSC |
| Plaintiffs, | |
| v. | **ORDER RE: PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| GREGORY J. AHERN, et al., | Re: Dkt. No. 12 |
| Defendants. | |

Plaintiffs, 14 current and former inmates of Santa Rita Jail in Alameda County, bring this Section 1983 putative class action alleging violation of their First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  Plaintiffs have filed a motion for a temporary restraining order seeking injunctive relief to protect the prisoners at Santa Rita Jail from Defendants' alleged continuing failure to provide reasonable COVID-19 prevention, care, and treatment.[1]  (Dkt. No. 12.)  Having considered the parties' briefs and having had the benefit of oral argument by video on June 25, 2020, the Court DENIES Plaintiffs' motion for a temporary restraining order.  Plaintiffs have failed to demonstrate a likelihood of success on their claim that Defendants are deliberately indifferent to the risks of exposure to COVID-19 at Santa Rita Jail or deliberately indifferent with respect to the medical care provided to those with COVID-19 at Santa Rita Jail.

## BACKGROUND

### A.  First Amended Complaint Allegations

Plaintiffs are current and former inmates at Santa Rita Jail ("the Jail") who allege that they are subject to unlawful, inhumane, and unconstitutional treatment at the Jail.  (First Amended

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 16, 17, 21, 22.)

United States District Court
Northern District of California

Complaint ("FAC"), Dkt. No. 10 at ¶¶ 2-3.)  In particular, Plaintiffs seek redress for the following conditions:

> (1) Excessive lock down, and inadequate time out of cell; (2) Inadequate outdoor recreation; (3) Unsanitary conditions of confinement; (4) Food that is infested with rodents, insects and bird droppings; (5) Food that is inedible due to excessive cooking and overheating; (6) Food that is inedible due to age, poor storage and spoilage, (7) Food that lacks nutritional value and consists primarily of soy powder, white flour and sugar; (8) Lack of medical care for newly booked detainees who are detoxing from drugs; (9) Requiring prisoners to provide the medical care for newly booked, detoxing detainees; (10) Profit motivated policy which creates deliberate delay and denial of prisoners' medical care to save on costs; (11) Cost based medical care for less effective and cutting corners on medical treatment; (12) Denial of comfort care in medical treatment; (13) Cost cutting, requiring prisoners to share medications including asthma inhalers; (14) Group punishment: punishing entire units for the perceived infraction of individuals; (15) Retaliation and discipline against prisoners for speaking out against problems; (16) Deliberate conduct by defendants to prevent plaintiffs and class members from filing grievances or raising complaints over conditions of confinement; (17) Intimidation and retaliation by defendants when plaintiffs and class members attempt to file grievances or articulate complaints over conditions of confinement; (18) Defendants wrongful denials of attorney visits, family visits, phone calls and mail; (19) Defendants' price gouging and profiteering from charges for commissary; phone calls and video visits; [and] (20) Defendants' profit motive driving the reduction of all prisoner services to the bare bones minimum.

(*Id*. at ¶ 7.)  Plaintiffs bring three Section 1983 claims against Alameda County, Alameda County Sheriff's Office, Sheriff Gregory Ahearn, Tom Madigan as the Commander in Charge of Detention and Corrections, D. Hesselein as the Detention and Corrections Captain at Santa Rita Jail, four individual Sheriff's deputies, Wellpath Management, Inc., and Aramark Correctional Services LLC.

Plaintiffs' first claim is pled as to Alameda County, the Sheriff's Office, Sheriff Ahearn, and the six Sheriff's Office employees only and alleges that the Jail fails to apply or misapplies its policies so as to deny Plaintiffs their First, Fourth, Eighth, and Fourteenth Amendment rights.  (*Id*. at ¶¶ 174-176.)  Plaintiffs' second claim is pled as to Sheriff Ahearn and Wellpath and alleges they are deliberately indifferent to inmates' medical needs in violation of Plaintiffs' Eighth and Fourteenth Amendment rights. (*Id*. at ¶¶ 183-191.)  Plaintiffs' third claim is pled as to Sheriff Ahearn and Aramark and alleges that they are deliberately indifferent to inmates' need for food

2

that is adequate to maintain health in in violation of Plaintiffs' Eighth and Fourteenth Amendment rights. (*Id*. at ¶¶ 195-204.)  Plaintiffs seek to represent a class of "all men incarcerated at Santa Rita Jail ("SRJ") from November 12, 2017 through to the present, and the subclass of men incarcerated at Santa Rita Jail ("SRJ") from March and April, 2020 through to the present who contracted the corona virus while under the custody of defendants."  (*Id*. at ¶ 24.)

### B.  Procedural Background

Plaintiffs initially filed this putative class action on November 12, 2019, but did not serve the defendants until after filing their amended complaint on May 7, 2020.  (Dkt. Nos 1 12, 13, 15.) Plaintiffs filed the now pending motion for a temporary restraining order ("TRO") at the same time as their amended complaint.  (Dkt. No. 12.) All Defendants have now appeared and consented to the jurisdiction of the undersigned magistrate judge. (Dkt. Nos. 8, 16, 17, 21, 22.) Further, all the defendants joined in a single opposition to Plaintiffs' motion for a TRO.  (Dkt. No. 28.)

### LEGAL STANDARD

The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). To meet that showing, Plaintiffs must demonstrate "'[they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). A district court is not required to hold an evidentiary hearing before denying a motion seeking a preliminary injunction or TRO. *See Kenneally v. Lungren*, 967 F.2d 329, 334-35 (9th Cir. 1992).

### DISCUSSION

Plaintiffs ask the Court to immediately issue the following temporary restraining order and require Defendants to do the following:

1    1) require appropriate use of PPE (personal protective equipment) by all deputies and staff,

2    2) provide real supplies and tools required for actual cell sanitation;

3    3) perform genuine and consistent housing unit sanitation including sanitation of tablets,

4    phones, tables and the like;

5    4) provide consistent supplies of soap, masks, and sanitation wipes for prisoners;

6    5) offer actual medical care and comfort for those who are infected with Covid-19,

7    including palliative care; and

8    6) provide accurate and prompt information to prisoners on their own medical condition

9    and on incidence and source of Covid-19 cases at the Jail.

10   (Dkt. No. 29 at 16.)

11   **A.  PLRA Exhaustion**

12   As a threshold matter, the Court must consider Defendants' argument that Plaintiffs have

13   failed to exhaust their administrative remedies under the Prison Litigation Reform Act ("PLRA").

14   Under the PLRA, "[n]o action shall be brought with respect to prison conditions under … [42

15   U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

16   correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

17   § 1997e(a).  "Courts may not engraft an unwritten 'special circumstances' exception onto the

18   PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its

19   text: An inmate need exhaust only such administrative remedies as are 'available.'"  *Ross v. Blake*,

20   136 S. Ct. 1850, 1862 (2016) (internal citation and quotation marks omitted).  In *Ross*, the

21   Supreme Court held that a remedy is unavailable where: (1) the procedure "operates as a simple

22   dead end" because the "relevant administrative procedure lacks authority to provide any relief" or

23   "administrative officials have apparent authority, but decline ever to exercise it[;]" (2) the

24   "administrative scheme [is] so opaque that ... no reasonable prisoner can use them[;]" or (3) when

25   "prison administrators thwart inmates from taking advantage of a grievance process through

26   machination, misrepresentation, or intimidation." *Id*. at 1859-60 (internal citations omitted).

27   Courts are split regarding whether prisoners seeking relief based on COVID-19 are

28   required to exhaust their administrative remedies under the PLRA.  *See Maney v. Brown*, No.

4

United States District Court
Northern District of California

6:20-CV-00570-SB, 2020 WL 2839423, at *10 (D. Or. June 1, 2020) (collecting cases).  In *Maney*, the court concluded that the COVID-19 pandemic does not automatically excuse the PLRA's exhaustion requirement, but that depending on the facts of the particular case, the prison's grievance system may be such that it is incapable of responding to the pandemic.  *Id.* at *11.  *Maney's* reasoning was based in large part on a recent statement from Justices Sotomayor and Ginsburg in *Valentine v. Collier*, 140 S. Ct. 1598 (2020).   In *Valentine*, inmates at a geriatric prison alleged that the facility failed to protect them from the dangers of COVID-19 in violation of their Eighth Amendment rights.  *Id.*   The district court issued an injunction which required the prison "to follow an extensive protocol, including frequent cleaning and increased education efforts." *Id.*   The Fifth Circuit stayed the injunction and the Supreme Court denied plaintiffs' application to vacate the Fifth Circuit's stay.  Justices Sotomayor and Ginsburg filed a statement along with the stay denial taking issue with the Fifth Circuit's finding that the plaintiffs were required to exhaust their remedies.  *Id.* at 1600.  In doing so, the Justices noted that "if a plaintiff has established that the prison grievance procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid–19, the procedures may be 'unavailable' to meet the plaintiff's purposes, much in the way they would be if prison officials ignored the grievances entirely." *Id.* at 1600-01.

Defendants argue that the FAC fails to allege that any plaintiff, let alone all of them, exhausted their administrative remedies regarding the jail conditions, including any conditions in light of COVID-19.  The Court agrees.  Indeed, other than amending their complaint to include a subclass of individuals who "contracted the corona virus [sic] while under the custody of defendants," the FAC does not contain any allegations regarding COVID-19.  (Dkt. No. 10 at ¶ 24.)  Plaintiffs' reply brief does not argue that they attempted, but were thwarted, from exhausting a claim regarding the relief sought here, and instead makes generalized arguments regarding Defendants' failure to respond to grievances, refusal by guards to file grievances, and a "culture of disregard for inmates' complaints and concerns."  (Dkt. No. 29 at 15.)

However, as exhaustion is a non-jurisdictional affirmative defense, Defendants bear the burden of proving that there was an available remedy that was not exhausted.  *See Rumbles v. Hill*,

182 F.3d 1064, 1067–68 (9th Cir. 1999), overruled on other grounds by *Booth*, 532 U.S. 731; *see also Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("a defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy. … Then, the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. … The ultimate burden of proof, however, remains with the defendants."). Given the absence of any evidence regarding the availability of administrative remedies, Defendants have not met their burden of demonstrating that Plaintiffs' claims are barred based on failure to exhaust under the PLRA.

## B. Likelihood of Success on the Merits

The Court thus proceeds to the merits of Plaintiffs' application for a TRO. "The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Although Plaintiffs' FAC (which was filed the same day as this motion) does not include a claim regarding Defendants' COVID-19 response, Plaintiffs' second claim for relief alleges that the Sheriff and Wellpath are deliberately indifferent to their medical needs in violation of their Eighth and Fourteenth Amendment rights. (FAC at ¶¶ 181-193.)

Pretrial detainee's rights arise under the Fourteenth Amendment's Due Process Clause whereas convicted prisoner's rights arise under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A deliberate indifference test applies to both a pretrial detainee's claim and a prisoner's claim, but for a pretrial detainee it is an objective test, rather than the subjective test which applies to a prisoner's claim. *See Gordon v. County of Orange*, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018). While it is unclear from the FAC whether Plaintiffs are pretrial detainees or convicted prisoners, because the vast majority of inmates at the Jail are pretrial detainees (FAC at ¶ 25), the Court applies the more stringent objective deliberate indifference standard. Under this standard, a pretrial detainee must show:

(i) the defendant made an intentional decision with respect to the

United States District Court
Northern District of California

United States District Court
Northern District of California

conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1125.  With regard to the third element, the defendant's conduct must be objectively unreasonable—"a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id*. (internal citations and internal quotation marks omitted).  Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."  *Id*.

Plaintiffs' allegations of deliberate indifference in the TRO fall in two categories: (1) failure to protect against the risk of COVID-19 exposure, and (2) failure to provide medical care for individuals who have tested positive for COVID-19.

### 1)  Risk of COVID-19 Exposure

Defendants contend that Plaintiffs are not likely to succeed on the merits of their deliberate indifference claim because the FAC contains no allegations regarding harm or potential harm to Plaintiffs resulting from Defendants' COVID-19 response.  They insist that the declarations Plaintiffs submitted with their TRO are outdated and do not demonstrate the actual conditions at the Jail or Defendants' response to the COVID-pandemic.  And they maintain that they have a comprehensive system in place for addressing COVID-19 which is being actively monitored by Judge Cousins in *Ashok Babu, et al. v. County of Alameda, et al*., No. 18-cv-07677-NC.

Plaintiffs counter that although Defendants have offered declarations of written policies and procedures, these written policies fail to reflect the on-the-ground practices at the Jail.  In particular, Plaintiffs have submitted 15 declarations with their reply brief that attest that there are continuing on-going issues with the sanitation supplies they are provided including that they are often not provided sufficient cleaning solution or mops, an entire housing area may share a single cleaning bucket, tablets are not cleaned between users, the soap is unusable for personal hygiene, and the showers are unclean.  (Dkt. No. 30 at ¶¶ 5-6; Dkt. No. 30-2 at ¶¶ 7-8; Dkt. No. 30-3 at ¶¶ 7, 10, 11; Dkt. No. 30-8 at ¶ 3; Dkt. No. 30-10 at ¶ 6; Dkt. No. 30-11 at ¶¶ 5-8; Dkt. No. 30-12 at ¶ 3; Dkt. No. 30-13 at ¶¶  3-5; Dkt. No. 30-14 at ¶¶ 4-5; Dkt. No. 30-15 at ¶¶ 3). Other declarations

United States District Court
Northern District of California

1   reflect that there are inconsistencies in the Jail's enforcement of policies particularly with regard to

2   wearing masks and that inmates have had difficulty exchanging their masks.  (Dkt. No. 30-3 at ¶

3   12; Dkt. No. 30-5 at ¶¶ 2-4; Dkt. No. 30-8 at ¶ 4; Dkt. No. 30-10 at ¶ 5; Dkt. No. 30-11 at ¶ 10;

4   Dkt. No. 30-12 at ¶ 6; Dkt. No. 30-14 at ¶ 1.)  In addition, Mr. Chase, who was transferred into the

5   Jail on May 27, was neither tested for COVID-19 nor temperature checked upon intake, and was

6   instead, placed in an unclean holding cell with several individuals.  (Dkt. No. 30-2 at ¶¶ 3-4.)

7        To satisfy the objective deliberate indifference standard, prison officials must disregard an

8   "objectively intolerable risk of harm." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).  That is,

9   Plaintiffs must show that prison officials acted with reckless disregard of the substantial risk of

10  harm posed by COVID-19 exposure.  There can be no dispute that proper sanitation, hygiene,

11  wearing masks, and social distancing are essential components of safeguarding against COVID-19

12  exposure.  To be sure, Plaintiffs' declarations reflect deficiencies in each of these areas, but the

13  *Babu* court is actively monitoring the Jail's COVID's response.  Further, under the *Babu* court's

14  oversight, the Jail has put together a comprehensive plan in keeping with Center for Disease

15  Control and Prevention Guidelines for Correctional and Detention Facilities.  (Dkt. No. 28-2 at 3,

16  Madigan Decl. at ¶ 4.)  As relevant to Plaintiffs' allegations here, the plan includes, among other

17  things, a cleaning schedule which requires "all housing units/areas in the jail facilities to conduct

18  deep cleaning 2 times a day," that inmates receive adequate cleaning materials for housing areas

19  and increased distribution of soap, that all staff wear masks, and that inmates be provided two

20  types of masks which may be exchanged as needed.  (*Id*. at ¶ 30.)  The Jail has also reduced the

21  inmate population by 800 inmates since early March 2020. (*Id*. at ¶ 5.)

22       Further, the parties in *Babu* have jointly retained an expert, Mike Brady, to inspect the Jail

23  to "evaluate the policies, procedures, and practices that have been implemented to mitigate and

24  control the spread of COVID-19." [2]  (Dkt. No. 28-1 at 20.)  He conducted inspections on May 27

25

26  _____

27  [2] Plaintiffs object to consideration of the Mr. Brady's declaration because it was not signed under penalty perjury under 28 U.S.C. § 1746. (Dkt. No. 29 at 6.)  The Court, however, does not consider Mr. Brady's report as evidence of conditions within the Jail, but rather, as evidence of the

28  fact that a neutral expert in the *Babu* case is actively inspecting and reporting on conditions within the Jail.

1   and June 8, and in his June 10 report he opined that "the [Alameda County Sheriff's Office] has a

2   thoughtful, well organized, science driven, Covid19 multi-disciplinary action plan and process in

3   place." (*Id.* at 35.)   His report includes recommendations that directly acknowledge and address

4   the deficiencies complained about by Plaintiffs and Defendants are considering them.  *See Babu,*

5   *et al. v. County of Alameda, et al*., No. 18-cv-07677-NC, Dkt. No. 146 at 2 (June 24, 2020 Status

6   Report).

7        Given the dynamic nature of prison administration and this pandemic, the Jail's response

8   has not been perfect and it has not achieved 100 percent compliance with all of its policies.  *See*

9   *Maney v. Brown*, No. 6:20-CV-00570-SB, 2020 WL 2839423, at *3 (D. Or. June 1, 2020) ("the

10  question is not whether [defendant] can do better, the question is whether [defendant] has acted

11  with indifference to the risks posed by COVID-19.").   But the Jail cannot be said to be deliberately

12  disregarding the substantial risk of harm posed by COVID-19 when it is being actively monitored

13  by and cooperating with the *Babu* court to ensure that it is *not* deliberately indifferent to the risk of

14  COVID-19 exposure among the inmate population.   To the extent that Plaintiffs have issues with

15  the adequacy of the Jail's efforts to prevent exposure to COVID-19, Plaintiffs should first raise

16  those concerns with *Babu* Plaintiffs' counsel.  If Plaintiffs here are unsatisfied, or believe that

17  constitutional violations are occurring such that their clients' interests are not being adequately

18  represented, they could seek to intervene in *Babu* to raise their concerns.   But what they have not

19  done in their TRO motion is show a likelihood of success on their claim in this case that

20  Defendants' current response to the pandemic—which includes working with the jointly selected

21  expert—rises to the level of deliberate indifference. The Court thus denies Plaintiffs' request for

22  an evidentiary hearing to resolve the parties' factual disputes regarding the Jail's response to the

23  pandemic.  It would make no sense for this Court to attempt to manage the same claims regarding

24  risk of exposure that are being managed in *Babu*, and in fact, it would not be in the interests of

25  Plaintiffs or the members of the putative class for two different judges to manage the same claims

26  given that resources are already stretched thin responding to this ever-changing public health

27  crisis.

28        Further, that Defendants' response to the pandemic has been effective at reducing COVID-

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   19 within the Jail population is borne out by the numbers.  As of June 24, there were no active

2   inmate COVID-19 cases at the Jail, the 50 formerly positive inmates have fully recovered, and the

3   8 other individuals who tested positive have been released. *See* Alameda County Sheriff's Office

4   COVID-19 Update, https://www.alamedacountysheriff.org/admin_covid19.php (last visited June

5   25, 2020).  These numbers are in stark contrast to other cases where courts have granted TROs.

6   For example, in *Ahlman v. Barnes*, 2020 WL 2754938, at *11 (C.D. Cal. May 26, 2020), the court

7   granted a TRO where "the number of confirmed COVID—19 cases [wa]s skyrocketing" and the

8   rate of infection in the jail was 12.4 percent compared to .14 percent in the county as a whole.  The

9   court noted that "[t]he amount of care required in a prison with no suspected cases is far different

10  than the amount of care required in an institution with hundreds of cases: one bar of soap a week

11  may not be deliberately indifferent where there are no infections but it certainly is where—as

12  here—there are hundreds of infected individuals with new cases daily."  *Id*. at *12; *see also Mays*

13  *v. Dart*, No. 20 C 2134, 2020 WL 1812381, at *11 (N.D. Ill. Apr. 9, 2020) (finding that "the

14  significant number of confirmed coronavirus infections among detainees certainly suggests the

15  risk is significant" and concluding based on that risk that "plaintiffs have shown a reasonable

16  likelihood of success on their claim that the execution of the Sheriff's policies regarding sanitation

17  and sanitation supplies is objectively unreasonable."). While Ms. Huang's supplemental

18  declaration and the Sheriff's Office website indicate that there are 32 staff COVID-19 positive

19  cases, there is no evidence currently before the Court that these staff infections have resulted in

20  additional infections among the inmate population.  (Dkt. No. 38 at ¶ 2; Alameda County Sheriff's

21  Office COVID-19 Update, https://www.alamedacountysheriff.org/admin_covid19.php (last visited

22  June 25, 2020).)`

23          Given that the Jail has put together a comprehensive plan to respond to the pandemic,

24  which is being actively monitored by the *Babu* court and which appears to be working to reduce

25  the spread of COVID-19 at the Jail, Plaintiffs have failed to demonstrate that they are likely to

26  succeed on their claim that Defendants' response to the pandemic is deliberately indifferent to the

27  serious risk of COVID-19 exposure.

28  //

United States District Court
Northern District of California

1

2)  **Failure to Provide Medical Care**

2          Plaintiffs also contend that the Jail has been deliberately indifferent to the medical needs of

3   inmates with COVID-19.  Plaintiffs, however, have failed to offer evidence in support of their

4   claim.

5          With their motion for TRO, Plaintiffs offered declarations of five inmates who attest that

6   when they tested positive for COVID-19 they were moved to a solitary cell which was "filthy,"

7   the only medical care they received was someone taking their temperature daily (some inmates

8   also received Tylenol), they were feverish and cold but not provided an extra blanket, and they

9   were not offered anything to make them more comfortable. (Dkt. Nos. 12-2, Henry Decl. at ¶¶ 4-6;

10  Dkt. No. 12-7, Wakefield Decl. at ¶¶ 6-10; Dkt. No. 12-8, Johnson Decl. at ¶¶ 11-20; Dkt. No. 12-

11  9, Espinoza Decl. at ¶¶ 3-6; Dkt. No. 12-11, Adams Decl. at ¶¶ 3-9.) These declarations are all

12  from April.  As noted above, there is no evidence of any active inmate cases of COVID-19 at this

13  time.  With their reply, Plaintiffs again offered declarations from Mr. Henry and Mr. Espinoza

14  who attest that although they have recovered from COVID, they continue to experience problems.

15  (Dkt. No. 30-4; Dkt. No. 30-6.) Mr. Espinoza attests that his "body hurts in my bones," he

16  twitches, and experiences pain in his bones.  (Dkt. No. 30-4 at ¶ 2.)  Mr. Henry attests that he

17  continues to experience headaches and has difficulty breathing; while the Jail has given him an

18  inhaler and Tylenol, he has not been provided "other medical care." (Dkt. No. 30-6 at ¶¶ 3-6.)

19          But Plaintiffs have not shown what constitutionally adequate care would be under the

20  circumstances or how the care that these inmates received was deliberately indifferent to their

21  medical needs.  *See Plata v. Newsom*, No. 01-CV-01351-JST, 2020 WL 1908776, at *8 (N.D. Cal.

22  Apr. 17, 2020) (denying emergency relief because "Plaintiffs have provided no standard by which

23  to determine how much physical distance is required 'to ensure reasonable safety.'").  Likewise, to

24  the extent that some declarants attest to difficulty obtaining information regarding their own

25  medical condition and incidence of COVID-19 cases at the Jail, Plaintiffs have not shown that the

26  delays in processing testing or communication lapses rise to the level of reckless disregard—

27  "mere lack of due care by a state official does not deprive an individual of life, liberty, or property

28  under the Fourteenth Amendment."  *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir.

1    2018).

2         Plaintiffs have thus failed to demonstrate a likelihood of success on the merits of their

3    deliberate indifference claim predicated on a failure to provide medical care to inmates with

4    COVID-19.  As discussed at the hearing, Plaintiffs inability to make their showing, if one can be

5    made, may be hampered by the lack of their medical records.  Defendants agreed to supply the

6    named plaintiffs with their medical records provided they receive adequate authorization.

7         **B. Remaining Injunctive Relief Factors**

8         The next three factors require Plaintiffs to demonstrate they are "likely to suffer irreparable

9    harm in the absence of preliminary relief," the "balance of equities tips in [their] favor" and the

10   "public interest favors granting an injunction." *Hernandez v. Sessions*, 872 F.3d 975, 995, 996 (9th

11   Cir. 2017) (internal quotations omitted).  Here, however, Plaintiffs have failed to show at "an

12   irreducible minimum that there is a fair chance of success on the merits[,]" and the Court cannot

13   grant injunctive relief based on these remaining three factors. *Martin v. Int'l Olympic Comm.*, 740

14   F.2d 670, 675 (9th Cir. 1984).  In any event, for the same reason Plaintiffs cannot demonstrate a

15   likelihood of success on the merits, they cannot demonstrate irreparable harm or that the balance

16   of equities tip in their favor.  This is not a situation where the Jail has done nothing.  Under the

17   *Babu* court's oversight, it has made significant efforts to address the spread of COVID-19 and

18   these efforts have yielded results.  Defendants' approach "may not be the plan that Plaintiffs think

19   best; it may not even be the plan that the Court would choose, if it were sufficiently informed to

20   offer an opinion on the subject. But the [Fourteenth] Amendment does not afford litigants and

21   courts an avenue for *de novo* review of the decisions of prison officials." *Money v. Pritzker*, No.

22   20-CV-2093, 2020 WL 1820660, at *18 (N.D. Ill. Apr. 10, 2020). Nor would the public's interests

23   be served by having two different judges oversee the same areas of the Jail's response to the

24   pandemic.

25                                **CONCLUSION**

26        For the reasons stated above, the Court DENIES Plaintiffs' motion for a temporary

27   restraining order.

28        //

United States District Court
Northern District of California

12

1    This Order disposes of Docket No. 12.

2    **IT IS SO ORDERED.**

3  Dated:  June 25, 2020

4
     _____
5                              JACQUELINE SCOTT CORLEY
                             United States Magistrate Judge

United States District Court
Northern District of California