UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GONZALEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY J. AHERN, et al.,<br><br>Defendants. | Case No.  19-cv-07423-JSC<br><br>**ORDER RE: DEFENDANTS'<br>MOTIONS TO DISMISS SECOND<br>AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 51, 52 |

Plaintiffs, current and former inmates from Santa Rita Jail, bring this Section 1983 putative class action alleging violation of their constitutional rights.  Plaintiffs bring their claims against Alameda County, Alameda County Sheriff's Office, Sheriff Gregory Ahearn, Tom Madigan as the Commander in Charge of Detention and Corrections, Captain Hesselein as the former Detention and Corrections Captain at Santa Rita Jail, Captain Luckett-Fahima as the current Detention and Corrections Captain at Santa Rita Jail, four individual Sheriff's deputies, (collectively referred to hereafter as the "County Defendants"); Wellpath Management, Inc. ("Wellpath"), and Aramark Correctional Services LLC ("Aramark").  The County Defendants and Aramark have separately filed motions to dismiss Plaintiffs' Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[1]  (Dkt. Nos. 51, 52.)  Having considered the parties' briefs, the Court concludes that oral argument is not necessary, *see* N.D. Cal. Civ. L.R. 7-1(b), the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss as set forth below.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 16, 17, 21, 22, 68.)

United States District Court
Northern District of California

United States District Court
Northern District of California

**BACKGROUND**

**A.   Second Amended Complaint Allegations**

Plaintiffs are current and former inmates at Santa Rita Jail ("the Jail") who allege that they are subject to unlawful, inhumane, and unconstitutional treatment at the Jail.  (Second Amended Complaint ("SAC"), Dkt. No. 50 at ¶ 6.)  In particular, Plaintiffs identify the following conditions of confinement as giving rise to their claims: (1) inadequate and unsanitary food; (2) profiteering with respect to the commissary, tablets and visitation; (3) insufficient and inadequate sanitation; (4) inadequate medical care: (5) "punishment and deprivation" as evidence by enforced idleness, group punishment, grievance policy, lack of language services, and denial of attorney visits; and (6) disregarding for the safety and welfare of prisoners with respect to COVID-19.  (*Id.*) Plaintiffs have identified two policies underlying their conditions of confinement claims: (1) "as publicly articulated by Sheriff Gregory AHEARN, is that Santa Rita's Jail prisoners, including all pretrial prisoners, who are 85% of the prisoner population, are violent criminals, who have lied their entire lives, and not to be believed and despite the constitutional presumption of innocence, all prisoners, including pretrial detainees in its custody, are deserving of punishment and deprivations"; and (2) "a fiscal tightfisted, penny pinching attitude toward prisoner services, which results in greatly limited and reduced prisoner services provided by the jail and the flourishing and emphasis by the jail on fee based prisoner services."  (SAC at ¶ 3.)

Plaintiffs bring eleven Section 1983 claims: (1) violation of their First Amendment rights; (2) violation of their Eighth Amendment rights based on inadequate medical care; (3) violation of their Fourteenth Amendment rights based on inadequate medical care; (4) violation of their Eighth Amendment rights based on inadequate and contaminated food; (5) violation of their Fourteenth Amendment rights based on inadequate and contaminated food; (6) violation of their Eighth Amendment rights based on inadequate sanitation; (7) violation of their Fourteenth Amendment rights based on inadequate sanitation; (8) violation of their Sixth Amendment right to counsel; (9) violation of their Fourteenth Amendment rights based "punishment and actions without penological justification"; (10) violation of Section VI of the Civil Rights Act of 1964 and Executive Order 13166; and (11) violation of their Fourteenth Amendment rights based on

United States District Court
Northern District of California

"profiteering resulting in deprivation and punishment." (SAC at pp. 65-84.[2])

**B. Procedural Background**

Plaintiffs initially filed this putative class action on November 12, 2019, but did not serve the defendants until after filing their amended complaint on May 7, 2020. (Dkt. Nos. 1, 12, 13, 15.) On the same day Plaintiffs filed their amended complaint, they filed a motion for a temporary restraining order which the Court subsequently denied. (Dkt. Nos. 12, 41.) While the motion for a temporary restraining order was pending, the County Defendants, Wellpath, and Aramark each filed separate motions to dismiss which the Court granted in part and denied in part. (Dkt. Nos. 18, 41, 34, 49.) The Court denied the motion as to Defendants' exhaustion argument but found that Plaintiffs had failed to adequately allege their myriad constitutional claims challenging 20 separate conditions of confinement at the Jail. Plaintiffs were granted leave to amend (except with respect to their Fifth Amendment claim). The Court specifically instructed Plaintiffs to separately state each claim, identify each defendant sued on each claim (and whether sued in individual or official capacities), as well as identify the constitutional provision at issue on each claim. (Dkt. No. 49 at 8-9.) Plaintiffs thereafter filed the now pending 87-page SAC which Defendants have again moved to dismiss. (Dkt. Nos. 50, 51, 52.)

## DISCUSSION

The County Defendants, joined by WellPath, move to dismiss all of Plaintiffs' conditions of confinement claims for failure to state a claim. Aramark separately moves to dismiss Plaintiffs' condition of confinement claims alleging that the food at the Jail violates their Eighth and Fourteenth Amendment rights.

While Plaintiffs' 87-page SAC contains greater detail regarding their factual allegations, it fails to cure many of the pleading defects from the prior version of the complaint. Plaintiffs plead each claim against nearly every defendant, but have failed to tether their claims to allegations of wrong-doing by each named defendant. In addition, Plaintiffs have failed to provide factual allegations supporting the breadth of the claims alleged. For these reasons and others set forth

---

[2] The paragraph numbers of the complaint are in places not sequential. The Court thus instead refers to the ECF page number cite here.

below, Defendants' motions to dismiss are granted in part and denied in part.

**A. Proper Defendants**

The Court's Order required Plaintiffs to indicate for each claim whether the named defendants were sued in their official or individual capacity. (Dkt. No. 49 at 8.) Rather than doing so, Plaintiffs have pled each claim against nearly every defendant. In the section listing each defendant, however, Plaintiffs appear to limit their individual capacity claims to Defendants Hesselien (sued in his official and individual capacity), Deputy Ignot, and Deputy Joe—although they do not specify whether these defendants are named in their individual capacity for every claim or only particular claim(s). (SAC at ¶¶ 12-21.) The Court will address the adequacy of the allegations as to each defendant named in his individual capacity in the context of each claim for relief below.

All the other individual defendants—Sheriff Ahern, Madigan, Luckett-Fahima, Waldura, and Diaz—are sued in their official capacity. (*Id.*) A § 1983 "official capacity suit against a municipal officer is equivalent to a suit against the entity." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.") (internal citation and omitted). This is true regardless of whether damages or injunctive relief is sought because the County is also named as a defendant. *See Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at *3 (N.D. Cal. Dec. 2, 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) ("There is no longer a need to bring official capacity actions against local government officials [because] under *Monell*, ... local government units can be sued directly for damages and injunctive or declaratory relief.")). Because Sheriff Ahern, Madigan, Luckett-Fahima, Waldura, and Diaz are all sued in their official capacity only and there are no specific factual allegations with respect to the claims alleged as to them, they are dismissed as redundant.

**B. Adequacy of Plaintiffs' Allegations**

**1. First Amendment Claim (First Claim)**

As with the prior version of the complaint, Plaintiffs' First Amendment claim is vaguely

United States District Court
Northern District of California

pled; it refers to a host of paragraphs, most of which do not relate to violation of any First

Amendment Rights.  (SAC at ¶ 252 (citing ¶¶ 4, 6.1, 6.1.2, 91, 92, 106-111, 189-198, 208-213,

and 227-244).)   However, the allegations of the claim itself suggest that it relates to the grievance

practices at the Jail.  In particular, it alleges that the County, the Sheriffs' Office, Sheriff Ahern,

Commander Madigan, and Captain Luckett-Fahima violated Plaintiffs' First Amendment rights:

> 1) by preventing plaintiffs and members of the plaintiff class from filing grievances regarding conditions of confinement at Santa Rita Jail; as herein described;
>
> 2) by retaliating and punishing plaintiffs and members of the plaintiff class for voicing concerns and complaints regarding conditions of confinement at Santa Rita Jail; as herein described;
>
> 3) this retaliation often occurred as group punishment, punishing entire PODs or housing units for the statements of a few, in order to inflict greater pressure and punishment for speaking out;
>
> 4) by preventing, interfering with and hampering communications between plaintiffs and class members with their family and loved ones.

(SAC at ¶ 253.)

Plaintiffs thus appear to allege three categories of First Amendment claims: (1) they are

denied access to the Jail's grievance process; (2) they are retaliated against for filing grievances,

and (3) the Jail interferes with communications between Plaintiffs and their families.   The Court

addresses each in turn.

First, to the extent that Plaintiffs challenge the grievance policy generally and allege that

deputies "refuse" to accept grievances, this claim fails.  (SAC at ¶¶ 6.2(b)(c), 38, 79-85).  There is

no "constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334

F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There

is no legitimate claim of entitlement to a grievance procedure.").

Second, Plaintiffs allege that they are retaliated against for filing grievances.  Defendants'

argument that *Mann* and *Ramirez* likewise bar a retaliation claim is unavailing. "The holdings in

*Mann* and *Ramirez* do not stand for the broad proposition that the processing of an administrative

appeal cannot, under any circumstance, form the basis of a claim to relief under § 1983. Instead,

they are limited to holding that a prisoner has no substantive right to a prison grievance system

and, therefore, due process claims based on the denial of or interference with a prisoner's access to a prison grievance system are not cognizable." *Wright v. Hedgepeth*, No. C 09-4358 CW PR, 2012 WL 4556632, at *3 (N.D. Cal. Sept. 30, 2012).   Prisoners can plead a First Amendment retaliation claim based a grievance policy or practice: "[w]ithin the prison context, [such a claim] entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff Gerrans has adequately pled a claim for retaliation based on the grievances filed following the October 17, 2019 incident with Defendant Hesselein.  (SAC at ¶¶ 208-211, 241-242.)  Plaintiff Gerrans alleges that following this incident he collected everyone's grievances and wrote them up in a document which came to be known as the "Strike Demands" and "Strike Statement."  (*Id*. at ¶¶ 213, 241.)  Following his submission of these grievances, he was removed from the Jail at the instruction of Defendant Hesselein "to stifle the prisoners, remove the individual who the prisoners had chosen to be their spokesperson, and intimidate and frighten the prisoners who only saw that Larry was removed and never reappeared." (*Id*. at ¶¶ 241-242.) Defendants' insistence that Plaintiff Gerrans has not pled any facts to support his allegation that the Sheriff ordered him transferred is unpersuasive.  At the pleading stage, the Court must accept the facts alleged in the complaint as true—the Court cannot resolve disputes as to the accuracy of the facts pled at the pleading stage.  Defendants also fail to cite any support for their argument that they cannot be held liable for retaliation against Plaintiff Gerrans because he was a federal prisoner.

Third, Plaintiffs allege that Defendants have interfered with their communications with their families and family visits.  In their opposition brief, Plaintiffs' identify the Jail's practice of charging for phone and video calls.  (Dkt. No. 65 at 9.)   However, beyond alleging that Defendants have a "profiteering motive" untethered to a penological purpose, Plaintiffs have failed to identify a policy or practice which either violated their First Amendment rights of association through family visits or that otherwise gives rise to a constitutional claim.

United States District Court
Northern District of California

1    Accordingly, the County's motion to dismiss Plaintiffs' First Amendment claim is granted,

2  except to the extent that the claim is predicated on Plaintiff Gerrans' alleged transfer in retaliation

3  for filing a grievance and the allegedly chilling effect his transfer had on his exercise of his First

4  Amendment rights.  Mr. Gerrans has adequately stated a claim on this basis against the County,

5  the Sheriff's Office, and Defendant Hesselein in his individual capacity.  The remaining named

6  plaintiffs have not stated a claim as to Mr. Gerrans' transfer as none allege that he was at the Jail

7  at the time and participated in the collective grievance.

### 2.   Inadequate Medical Care Claim (Second and Third Claims)

8

9    Plaintiffs plead claims under both the Eighth and Fourteenth Amendments regarding

10  inadequate medical care at the Jail.  A pretrial detainee's rights arise under the Fourteenth

11  Amendment's Due Process Clause whereas a convicted prisoner's rights arise under the Eighth

12  Amendment's Cruel and Unusual Punishments Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535

13  (1979). A deliberate indifference test applies to both a pretrial detainee's claim and a prisoner's

14  claim, but for a pretrial detainee it is an objective test, rather than the subjective test which applies

15  to a prisoner's claim. *See Gordon v. County of Orange*, 888 F.3d 1118, 1122 & n.4 (9th Cir.

16  2018).  Because the majority of inmates at the Jail are pretrial detainees (SAC at ¶¶ 2, 11), the

17  Court applies the more stringent objective deliberate indifference standard. Under this standard, a

18  pretrial detainee must allege:

19    (i) the defendant made an intentional decision with respect to the
conditions under which the plaintiff was confined; (ii) those
20    conditions put the plaintiff at substantial risk of suffering serious
harm; (iii) the defendant did not take reasonable available measures
21    to abate that risk, even though a reasonable official in the
circumstances would have appreciated the high degree of risk
22    involved—making the consequences of the defendant's conduct
obvious; and (iv) by not taking such measures, the defendant caused
23    the plaintiff's injuries.

24  *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  With regard to the third

25  element, the defendant's conduct must be objectively unreasonable—"a test that will necessarily

26  turn[ ] on the facts and circumstances of each particular case." *Id*. (internal citations and internal

27  quotation marks omitted). Thus, the plaintiff must "prove more than negligence but less than

28  subjective intent—something akin to reckless disregard." *Id*.

Plaintiffs' denial of medical care claim is twofold.  First, it is pled as a *Monell* claim against the County and WellPath.[3]  Second, it is pled as to Defendant Deputy Ignot and Defendant Deputy Joe in their individual capacities.

### a.  *Monell* Claim for Inadequate Medical Care

To state a claim for municipal liability under Section 1983, a plaintiff must allege: (1) that the plaintiff was deprived of a constitutional right; "(2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted). There can be no municipal liability without an underlying constitutional violation. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).  A *Monell* claim can proceed under three theories of municipal liability: "(1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." *Brown v. Contra Costa Cty.*, No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010)). Whichever theory is alleged, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which

---

[3] The Ninth Circuit has held that *Monell* applies to claims against private entities under § 1983. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (holding that there is "no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law"); *see also Estate of Jessie P. Contreras v. County of Glenn*, No. 2:09-cv-2468, 2010 WL 4983419, at *4 (E.D. Cal. Dec. 2, 2010) (a private entity "that contracts with the government to provide medical and mental health care may be considered a state actor whose conduct constitutes state action under Section 1983") (citing *Jensen v. Lane County*, 222 F.3d 570, 574–75 (9th Cir. 2000)).

United States District Court
Northern District of California

policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 823-24.

Plaintiffs' *Monell* claim against the County and WellPath is based on their "policies specifically designed and intended to place the reduction of costs as the primary objective in the provision of medical care." (SAC ¶ 28.)  In particular, Plaintiffs allege that the contract between the Jail and WellPath is "based upon the daily average prisoner population and specifies that WELL-PATH itself is solely responsible for all costs incurred in connection with any health care services provided to prisoners inside and outside the jail." (*Id.* at ¶ 136.)  In addition, if any prisoner requires out-of-facility care or inpatient hospital care, then WellPath must reimburse the Sheriff for the cost of care and transport. (*Id.* at ¶¶ 136-137.)  Plaintiffs allege that this system "creates a financial incentive and imperative for WELL-PATH to refuse and withhold needed and appropriate outside medical services to all prisoners." (*Id.* at ¶ 140.)

Plaintiffs allege that there are several examples of the financial incentive allegedly at work. First, Plaintiffs allege that pre-COVID pandemic prisoners who had asthma were required to share a single inhaler and that the inhaler was only available during daily pill call (as opposed to during an asthma attack). (*Id.* at ¶ 147.)  Plaintiffs also allege that class member Geyer fell getting out of his bunk and split his knee open and developed a fecal bacteria skin infection. (*Id.* at ¶ 152.) WellPath allegedly refused to provide Mr. Geyer outpatient treatment for over eight-months and it "took multiple surgeries because the infection became so extensive due to defendant Well-Point[']s  delay and refusal to take the necessary, but more costly medical steps early on." (*Id.* at ¶ 154.)  While Plaintiffs allege several other examples of allegedly inadequate medical care—denial of Plaintiff Gerrans' request to bring his own prescribed medication with him to jail *(id.* at ¶ 148), WellPath's practice of not providing medical treatment for newly-booked individuals with addiction and withdrawal issues even when they become "violently ill" (*id.* at ¶¶ 149-150), and class member Kyle Murphy having a seizure in his housing cell and suffering neurological damage (*id.* at ¶ 151)—these allegations are not tethered to financial incentive policy on which Plaintiffs' *Monell* claim is based. (*See also* SAC at ¶¶ 157-171.) The same is true with respect to Plaintiffs' allegations regarding medical care related to COVID-19. (SAC at ¶¶ 164-188.)  Although Plaintiffs' have included a plethora of allegations regarding COVID-19 at the Jail, they have failed

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   to tie their allegations regarding deliberate indifference to medical needs, to the allege financial

2   incentive policy and have not identified another policy, practice, or custom that forms the basis of

3   their *Monell* claim.

4        A *Monell* claim requires more than "sporadic" incidents.  *See Trevino v. Gates*, 99 F.3d

5   911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or

6   sporadic incidents."). An "isolated instance ... is insufficient evidence of a 'policy statement,

7   ordinance, regulation, or decision officially adopted and promulgated by' the County." *Marsh v.*

8   *County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (internal citations omitted). Because

9   Plaintiffs' have failed to tie the bulk of their allegations of inadequate medical care to the alleged

10  policy of financial incentives to reduce costs of medical care, they have failed to adequately allege

11  a *Monell* claim based on deliberate indifference to prisoner's serious medical needs.

12             **b.  Inadequate Medical Care as to Individual Defendants**

13       Plaintiffs also bring claims for inadequate medical care against Deputy Ignot and Deputy

14  Joe in their individual capacities.  (SAC at ¶¶ 214-221.)  Plaintiffs allege that on October 18, 2019,

15  while the prisoners were in lockdown, a young man experiencing drug withdrawals was placed in

16  a top bunk in HU31.  (*Id*. at ¶ 214.)   He had diarrhea all over himself and when the other prisoners

17  pressed the emergency buzzer and said there was "a man who was ill and needed to leave,"

18  Deputy Ignot came to their cell and said that the infirmary had cleared him to be taken to the

19  housing unit.  (*Id*. at ¶ 215.)  He told the other prisoners "He's your problem."  "You guys take

20  care of him."  (*Id*.)   The prisoners had to escort him back to his mattress.  (*Id*. at ¶ 217.)  The

21  young man had several more bouts of diarrhea and when the prisoners tried to take him for help,

22  Deputy Joe yelled at them, and said "This is your fucking problem.  I don't care how many times

23  he shits himself."  (*Id*. at ¶ 218.)  Deputy Joe told the man to go back to the cell and pulled him up

24  by the hair and yelled at him when he collapsed.  (*Id*. at ¶ 219.)  Plaintiff Gerrans then offered to

25  take care of the young man and said that Deputy Joe's conduct was "indefensible. " Deputy Joe

26  responded "Don't come to jail" and walked off.  (*Id*.)  After 15 hours, the man was finally

27  removed from the cell.  (*Id*. at ¶ 222.)

28       Defendants insist that these allegations are insufficient to state a claim as to Deputy Ignot

or Deputy Joe because the allegations fail to show a pattern or practice entitling any named Plaintiff or class member to relief.  The Court agrees.  While the allegations might be sufficient for the unnamed young man to state a claim for deliberate indifference, Plaintiff Gerrans—the only named Plaintiff alleged to have been present—lacks standing to bring the claim on his behalf.  *See Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) ("[I]f there is a disjuncture between the injuries suffered by named and unnamed plaintiffs, courts applying the standing approach would say the disjuncture deprived the named plaintiff of standing to obtain relief for the unnamed class members.").

In their opposition brief, Plaintiffs suggest that they are also pleading the inadequate medical care claim against Defendant Hesselein in his individual capacity.  (Dkt. No. 65 at 12.)  The SAC, however, suggests that for purposes of these claims Hesselein is only being sued in his official capacity.  (SAC at ¶¶ 262, 269.)  In addition, there are no allegations regarding Hesselein's participation in the denial of medical care.  To the extent that Plaintiffs contend that he knew about the issues through his day-to-day management of the Jail, such inference is inappropriate—he cannot be held liable simply by virtue of his supervisory role.  There is no respondeat superior liability under Section 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." (emphasis in original)).  As a result, to state a claim against Defendant Hesselein based on inadequate medical care, Plaintiffs must allege his "'personal involvement in the constitutional deprivation'" or "'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), abrogated on other grounds by *Farmer*, 511 U.S. at 837).  As currently pled, Plaintiffs have not alleged the requisite causal connection for Defendant Hesselein.

***

Accordingly, Defendants' motion to dismiss Plaintiffs' inadequate medical care claims is granted.

### 3.  Inadequate and Contaminated Food Claims (Fourth and Fifth Claims)

Plaintiffs allege that the food at the Jail is not sufficient to maintain health and is often contaminated or spoiled in violation of their Eighth and Fourteenth Amendment rights.  They bring their claims against the County Defendants and Aramark with whom the Jail has a contract to prepare food for the Jail.  (SAC at ¶ 55.)

"Jail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018).  As noted *supra*, conditions of confinement claims raised by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1123 (9th Cir. 2018). To prevail on a substantive due process claim, the plaintiff must establish that the restrictions imposed by his confinement constituted punishment as opposed to being incident to legitimate governmental purposes.  *Bell*, 441 U.S. at 538.  "[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *See Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).[4]  "Adequate food is a basic human need protected by the Eighth Amendment." *Kennan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (internal citation omitted).

Plaintiffs bring *Monell* claims against Aramark and the County.  As with their denial of medical care claim, Plaintiffs allege that the financial relationship between the two entities has resulted in constitutionally deficient food at the Jail.  In particular, Plaintiffs allege that the prison food budget has been reduced by 25% in recent years which has "had a devasting impact on the quantity and quality of the food provided to prisoners at SRJ, creating a situation where the food

---

[4] The Ninth Circuit has not expressly extended the objective deliberate indifference standard to all pretrial detainee conditions of confinement claims beyond denial of medical care, failure to protect, and excessive force claims, although recent decisions suggest that it will. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124& n.2 (9th Cir. 2018) (citing *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims)); *see also Doreh v. Rodrig*uez, 723 F. App'x 530, 531 (9th Cir. 2018) (holding that plaintiff stated an Eighth Amendment claim when he alleged that the defendant "continued to serve him expired food after [he] lodged several complaints and that [he] suffered injuries as a result.").

served is high in white flour and sugar to reach minimum caloric requirements, with little in the way of fresh fruits and vegetables, and protein is primarily soy power."  (SAC at ¶ 57.)

Aramark insists that Plaintiffs have failed to plead that Aramark has a policy which gives rise to the alleged constitutional violations and therefore Plaintiffs' claims fail.  Plaintiffs counter that they are relying instead on Aramark's "operational control and Aramark's related practices."  In particular, Plaintiffs identify Aramark's practices regarding the preparation, storage, and provision of food, as well as kitchen sanitation.  Plaintiffs allege that the Jail kitchen operates "under the supervision and direction of Defendant ARAMARK."  (SAC at ¶ 60.)   Under Aramark's direction:

- "[p]risoners are not consistently tested for communicable disease before being assigned to work in the kitchen" (*id*. at ¶ 60);
- "[b]irds roost at night in the kitchen.  Kitchen workers report seeing rats and mice daily in the kitchen.  Night time workers report that cockroaches are in the kitchen every night" (*id*. at ¶ 61);
- "[t]he cake and bread trays, loaded with baked goods, are left out over-night, uncovered and birds feast.  Bird feces are left on the cakes and breads" (*id*. at ¶ 62);
- Plaintiff Gonzalez "has seen rats inside the cook pots and birds pecking on baked goods in cake pans" (*id*. at ¶ 63);
- Aramark's food sanitation procedure takes less than 5 minutes and "[o]ften trays have leftover food encrusted, and remaining" (*id*. at ¶ 68);
- Although prisoners have notified Sheriff deputies of the rodent and vermin droppings and bird excrement in their food, as well as boiled mice in the beans, "neither defendant SHERIFF nor Aramark [have] change[d] its procedures, or improve[d] their sanitation" (*id*. at ¶ 70); and
- "[t]he quality of the food provided to prisoners is of the lowest quality, high in starch and sugar, with most of the protein from soy power and plain, flavorless beans.  The food is repetitive, overcooked, and tasteless."  (*id*. at ¶ 72).

These allegations are sufficient to show a custom of improper sanitation and unsafe food in the Jail kitchen which is under Aramark's supervision.  *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), holding modified by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").  Plaintiffs' have thus sufficiently alleged the basis for

a *Monell* claim against Aramark and the County.

Plaintiffs have also sufficiently alleged the predicate constitutional violation for their *Monell* claim based on their inadequate and unsafe food conditions of confinement claim.  That is, Plaintiffs have adequately alleged that the County and Aramark were deliberately indifferent to their health and safety based on their allegations that the sanitation and contamination of the food at the Jail places them at substantial risk of harm and that the County and Aramark's conduct with respect to the same is objectively unreasonable.  *See Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Aramark and the County's argument that Plaintiffs' allegations fail to show that they were in immediate danger is unpersuasive.  Aramark focuses on Plaintiffs' allegations regarding the nutritional content and tasteless food.  While Aramark is correct that prisoners are not entitled aesthetically pleasing food, this ignores Plaintiffs' other allegations regarding the lack of sanitation in the kitchen, the bird and rodent feces in the food, and the foreign objects, including razor blades class members have found in the food.  (SAC at ¶¶ at 77-85.)  *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health").  "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id.*  However, "[t]he circumstances, nature, and duration of a deprivation of [life's] necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Plaintiffs' allegations of a prolonged infestation of rodents and birds in the kitchen is sufficient to show an objectively unreasonable serious risk of harm to the health and safety of prisoners.  *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) ("a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation"); *see also Penny v. Ahern*, No. 19-CV-06307-EMC, 2020 WL 1245343, at *2 (N.D. Cal. Mar. 16, 2020) ("While a chronic rodent infestation would show a sufficiently serious condition, the infrequent discovery of rodent droppings is a different matter.").  Further, Plaintiffs allege that both Aramark and the County have been advised of the sanitation and infestation issues and have done nothing.

1   (SAC at ¶ 70.)  Plaintiffs have not, however, pled sufficient facts to show that the nutritional

2   quality of the food is constitutionally deficient.  *See LeMaire*, 12 F.3d at 1456.

3   　　　　Nor is the Court persuaded by the County's argument that because Plaintiffs allege that

4   they have been able on occasion to ask for a replacement tray they cannot establish an immediate

5   risk of harm.  Such a remedy does little for the class member who unknowingly ingests metal as

6   with class member Chad Arrington.  (SAC at ¶ 81.)  The complaint does not allege that prisoners

7   are always able to inspect their meal before consumption and determine if it contains animal and

8   bird feces as well as foreign objects and ask for a replacement trade should any be found.  The

9   County's argument is not appropriate for a motion to dismiss.

10   　　　　Accordingly, Aramark and the County's motion to dismiss Plaintiffs' fourth and fifth

11   claims for relief based on inadequate and contaminated food is denied to the extent that Plaintiffs'

12   claims are based on the contaminated and unsanitary condition of the food, but granted to the

13   extent that they are based on the nutritional content of the food.  To the extent Plaintiffs can allege

14   specific facts suggesting that the nutritional content of the food is constitutionally deficient, they

15   are granted leave to amend to do so.

16   　　　　　　　　**4.  Sanitation Claims (Sixth and Seventh Claims)**

17   　　　　Plaintiffs allege that they are subjected to "inadequate, and insufficient sanitation,

18   inadequate and insufficient laundry and the inadequate and insufficient means to maintain the

19   necessary personal sanitation in their cells and housing units, to prevent infections and

20   communication of diseases, including covid-19."  (SAC at ¶ 214.)  In particular, Plaintiffs allege

21   that for those in minimum security, pre-COVID, they only received cleaning supplies once a week

22   for 15 minutes and "[m]any times, cleaning supplies are denied for weeks."  (*Id*. at ¶ 113.)  When

23   the cleaning supplies are provided the prisoners are only given one bucket with cleaning solution

24   which must be used to clean all areas—bathrooms, sleeping areas, and common areas.  (*Id*.)

25   While this has improved somewhat since COVID as the cleaning supplies are more available, the

26   prisoners do not get more supplies; that is, they still only have one mop and one mop bucket.  (*Id*.

27   at ¶ 125.) On the maximum-security side, Plaintiffs allege that prisoners do not get a bucket just a

28   broom with no handle and a spray bottle, but no rags, or sponges. (*Id*. at ¶ 121.)  In addition, they

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1  have limited access to the toilets, which are in their cells, during the day and often go to the

2  bathroom in the shower or in a plastic bottle.  (*Id*. at ¶ 122.)  As a result of these unsanitary

3  conditions, many prisoners have caught various skin infections including Plaintiff Gerrans who

4  got a flesh-eating bacterial infection on his foot that he attributed to cleaning the bathroom.  (*Id*. at

5  ¶ 123.)

6          These allegations are sufficient to state a condition of confinement claim based on

7  inadequate sanitation.  "Prison officials have a duty to ensure that prisoners are provided adequate

8  shelter, food, clothing, sanitation, medical care and personal safety.... The more basic the need, the

9  shorter the time it can be withheld." *Johnson v. Lewis*, 217 F.3d 726, 731-32 (9th Cir. 2000)

10  (holding that prisoners who  "testified that they received inedible food and inadequate drinking

11  water for four days,… that they did not receive adequate access to toilets to avoid soiling

12  themselves, and they were not allowed to clean themselves thereafter" demonstrated sufficiently

13  serious violations to satisfy the objective component of an Eighth Amendment claim).

14  Likewise, Plaintiff Gerrans has adequately alleged a condition of confinement claim based on

15  inadequate sanitation against Deputies Ignot and Joe in their individual capacity based on the

16  allegations discussed *supra* regarding the young man with repeated diarrhea who was left in the

17  communal cell exposing the other prisoners to unsanitary conditions of human feces all over the

18  cell for over 15 hours.  (FAC at ¶¶ 212-222.)

19          Accordingly, the motion to dismiss is denied as to the County and as to Plaintiff Gerrans'

20  claim against Deputies Ignot and Joe in their personal capacity.

21          **5.  Denial of Counsel Claim (Eighth Claim)**

22          Plaintiffs' eighth claim for relief alleges that Defendants denied Plaintiffs their Sixth

23  Amendment Right to Counsel.  In particular, they allege that Defendants deprived Plaintiffs of

24              the right to counsel, by canceling, preventing, and otherwise
            interfering with attorney client communications and visits. These
25          policies and practices have been, and continue to be, implemented by
            said Defendants and their agents, officials, employees and all persons
26          acting in concert with them under color of state law, in their official
            capacities, and are the proximate cause of Plaintiffs' and Class
27          member's ongoing deprivation of rights…

28  (SAC at ¶ 223.)  Nowhere, however, do Plaintiffs identify what the challenged policies are.  The

16

SAC includes allegations that two prisoners filed grievances based on denial of legal visits, but it does not indicate who denied the legal visits, that the visits were denied based on a policy or procedure, or the result of the grievances.  (SAC at ¶¶ 193-194.)

As pled, Plaintiffs fail to state a claim based on denial of their Sixth Amendment right to counsel. *See United States v. Irwin*, 612 F.2d 1182, 1186–87 (9th Cir.1980) ("mere government intrusion into the attorney-client relationship ... is not of itself violative of the Sixth Amendment right to counsel.").  Plaintiffs must allege that Defendants (1) "deliberately interfere[d] with the confidential relationship" between themselves and their counsel; and (2) that the interference "substantially prejudice[d]" them. *See Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir. 2002).

Accordingly, Plaintiffs' Sixth Amendment claim is dismissed with leave to amend to the extent Plaintiffs can allege that Defendants deliberately interfered with their confidential relationship with counsel and that the interference substantially prejudiced them.

### 6.  Punishment Claim (Ninth Claim)

Plaintiffs' ninth claim for relief alleges that Plaintiffs are subject to punishment and actions without penological justification in violation of their Fourteenth Amendment rights.  Plaintiffs allege that they are subject to "excessive lockdown and inadequate out of cell time; inadequate outdoor recreation, arbitrary rules preventing or making it difficult to actually exercise, lack of adequate programming, and all other manner of actions to enforce idleness with all of the physical and mental injuries created by enforced idleness."  (SAC at ¶ 208.)  The claim is pled as to the County Defendants and Aramark.

The County Defendants contend that Plaintiffs have failed demonstrate a plausible claim for relief as they have not pled any factual allegations regarding excessive lockdowns or forced idleness as to the named Plaintiffs, and they have not tied the claims to wrong-doing by any particular defendant.  In response, Plaintiffs identify their (1) allegations regarding frequent lockdowns with no justification, including the lockdown which preceded the October 2019 strike (SAC at ¶¶ 199, 208), and (2) their allegations regarding arbitrary rules regarding clothing which make exercise difficult because "[t]he full, ill-fitting jail outfit is difficult to exercise in"  (*Id.* at ¶

United States District Court
Northern District of California

207).

Minimal deviations from comfortable conditions that do not last for an extended time period are considered "de minimis injuries" and do not "constitute a constitutional violations." *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979).  Plaintiffs' allegation that they are "constantly placed on lockdown and denied out of cell time," merely recites the elements of a conditions of confinement claim and fails to allege specific facts which demonstrate deliberate indifference or reckless disregard for their health and safety on the part of Jail personnel.  (SAC at ¶ 88.)  The allegation that Plaintiffs were placed on a 12-hour lockdown in October 2019 is by itself not sufficient when Plaintiffs have failed to plead additional facts regarding the circumstances of the lockdown to demonstrate deliberate indifference or reckless disregard for their health and safety. *See Norwood v. Vance*, 591 F.3d 1062, 1069 (9th Cir. 2010) ("when balancing the obligation to provide for inmate and staff safety against the duty to accord inmates the rights and privileges to which they are entitled, prison officials are afforded wide-ranging deference. When a lockdown was in response to a genuine emergency, and restrictions were eased as the prison administration determined that the emergency permitted, we may not lightly second-guess officials' expert judgments about when exercise and other programs could safely be restored.") (internal citation and quotation marks omitted). The same is true with respect to the impact of the clothing policy on prisoner comfort level while exercising.

Accordingly, Plaintiffs' ninth claim for relief is dismissed with leave to amend to the extent that Plaintiffs' can allege specific facts to demonstrate deliberate indifference or reckless regard of their health and safety with respect to lockdowns and access to exercise.

### 7.  Title VI Claim (Tenth Claim)

Plaintiffs' tenth claim for relief alleges that Defendants violated Title VII of the Civil Rights Act of 1964 and Executive Order 13166 because Defendants have failed to take "reasonable steps" to ensure that those with limited English language proficiency have meaningful access to Defendants' programs and activities.  (SAC at ¶ 221.)

Under Title VI, "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to

18

discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To state a claim for damages under [Title VI] a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-02950 CRB, 2013 WL 812425, at *3 (N.D. Cal. Mar. 5, 2013) (quoting *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir.1994), overruled in part on other grounds by *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir.2001); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir.1998) (citing *Fobbs* in the context of educational discrimination).

Defendants insist that Plaintiffs' Title VI claim fails because Plaintiffs have not alleged that the Jail is receiving federal financial assistance. Plaintiffs' argument that the federal subsidies rule does not apply is unpersuasive as the requirement is written into the statute.   Accordingly, the Title VI claim is dismissed with leave to amend to the extent that Plaintiffs can allege that the Jail receives Federal financial assistance.

### 8.  Profiteering Claim (Eleventh Claim)

Plaintiffs' eleventh claim alleges that Defendants violated Plaintiffs' Fourteenth Amendment rights by subjecting them to "a substantial risk of serious harm and injury from the harmful and inhumane effects of Defendant Sheriff's profiteering, where the goal of profit making overrode Plaintiffs' and Class members' needs, nutrition requirements, sanitation needs, personal hygiene needs, health and mental health needs."  (SAC at ¶ 217.)  This claim appears to be a catch-all claim for Plaintiffs' other claims, all of which attempt to allege stand-alone violations based on these same conditions of confinement.  That Defendants' desire to increase profits has resulted in the alleged constitutional violations is not itself a Fourteenth Amendment claim, but rather evidence of the alleged other violations.  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (construing the plaintiff's claim challenging requirement that he pay a $3 fee for each medical visit as a deliberate indifference to medical needs claim).

Accordingly, Plaintiffs' profiteering claim is dismissed with leave to amend to the extent

United States District Court
Northern District of California

that Plaintiff can allege a basis for the claim that is separate from the other constitutional claims alleged.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the motions to dismiss as set forth below.  The motion is DENIED as to:

1) Plaintiff Gerrans' First Amendment claim (first claim) predicated on his alleged transfer in retaliation for filing a grievance and the allegedly chilling effect his transfer had on his exercise of his First Amendment rights;

2) Plaintiffs' inadequate and contaminated food claims (fourth and fifth claims) as to Aramark and the County to the extent that Plaintiffs' claims are based on the contaminated and unsanitary condition of the food; and

3) Plaintiffs' inadequate sanitation claims (sixth and seventh claims) as to the County and as to Plaintiff Gerrans' claim against Deputies Ignot and Joe.

The motion is GRANTED as to:

1) Plaintiffs' claims against the Sheriff, Madigan, Luckett-Fahima, Waldura, and Diaz;

2) Plaintiffs' First Amendment Claim except as set forth above (first claim);

3) Plaintiffs' inadequate medical care claims (second and third claims);

4) Plaintiffs' inadequate food claims (fourth and fifth claims) to the extent that they are based on the nutritional content of the food;

5) Plaintiffs' Sixth Amendment claim (eighth claim);

6) Plaintiffs' punishment claim (ninth claim);

7) Plaintiffs' Title VI claim (tenth claim); and

8) Plaintiffs' profiteering claim (eleventh claim).

Any amended complaint is due within 21 days of this order.  To the extent that Plaintiffs elect to amend their complaint, they must include specific allegations to support each alleged constitutional violation and clearly identify which allegations support which constitutional claim. Plaintiffs may not allege new claims without first obtaining leave of the Court.

1        This Order disposes of Docket Nos. 51 and 52.

2        **IT IS SO ORDERED.**

3    Dated: November 19, 2020

4

5                                                    _____
                                                      JACQUELINE SCOTT CORLEY
6                                                     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

21