UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GONZALEZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants. | Case No. 19-cv-07423-JSC<br><br>**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS THE FIFTH AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 196, 204, 205 |

Plaintiffs, current and former inmates from Santa Rita Jail, bring this Section 1983 putative class action alleging violations of their constitutional rights. Plaintiffs allege conditions of confinement claims against Alameda County, Alameda County Sheriff's Office, as well as four individual deputies, (collectively referred to hereafter as the "County"); Wellpath Management, Inc. ("Wellpath"), and Aramark Correctional Services LLC ("Aramark"). The County and Aramark have separately filed motions to dismiss Plaintiffs' Fifth Amended Complaint, and Wellpath joined the County's motion to dismiss. (Dkt. Nos. 196, 204, 205.) Having considered the parties' briefs, the Court concludes that oral argument is not necessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the November 10, 2022 hearing, and GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss as set forth below.

## DISCUSSION

On April 6, 2022, the Court granted Plaintiffs leave to file a fifth amended complaint to substitute new named plaintiffs for those previously named plaintiffs who were no longer detained at Santa Rita Jail. (Dkt. No. 179.) Plaintiffs were not granted leave to amend their complaint in any other manner. At that hearing, Plaintiffs represented that they were only pursuing three categories of claims for injunctive relief: (1) inadequate and contaminated food (as to Aramark and the County); (2)

inadequate medical care (as to Wellpath and the County); and (3) inadequate sanitation (as to the County).  Plaintiffs subsequently filed their Fifth Amended Complaint which substitutes new named plaintiffs, names additional defendants, and pleads claims beyond the three referenced above.  (Dkt. No. 180.)

**A. Aramark's Motion**

Aramark's motion to dismiss is two-fold.  First, it maintains that neither the newly added Plaintiffs (Eric Wayne, James Mallett, Rasheed Tucker, Darryl Geyer, Timothy Phillips, Donald Corsetti, and Tiara Arnold), nor the previously named Plaintiffs Lockhart and Harris, have Article III standing to pursue food claims.  Second, Aramark contends that Plaintiffs have not adequately pled a *Monell* claim or the elements of a conditions of confinement claim.

**1) Standing**

"Standing is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  "[The] plaintiff must show (i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Aramark contends that the newly-added Plaintiffs and Plaintiffs Lockhart and Harris lack standing because they have not alleged an injury in fact as to the food claims against Aramark.  Indeed, the Fifth Amended Complaint does not include any allegations about the food served to *these* Plaintiffs.  However, the Fifth Amended Complaint includes allegations regarding the food served to Plaintiffs David Misch, Daniel Gonzalez, Lawrence Gerrans, Tikisha Upshaw, and Eric Rivera (Dkt. No. 180 at ¶¶ 14.3.7, 14.3.8 64, 66, 68, 78, 86, 87) and Aramark does not dispute that these individuals have standing to pursue their food claims against Aramark. (Dkt. No. 196 at 11.)  The Fifth Amended Complaint also includes allegations regarding unsanitary, contaminated, and inedible food generally, including that "food in the kitchen is kept in such a manner that provide the birds, rats and mice easy access and [r]ats climb over the bread and chew open packages,"  used food trays are stacked in the kitchen in a way that "continually attracts mice and rats,"  prisoners have repeatedly "notified sheriff

deputies of rodent and vermin droppings and of bird excrement in their food" as well as the presence "boiled mice" and other foreign objects in their food, and detainees are routinely served spoiled, overcooked food. (Dkt. No. 180 at ¶¶ 54-59, 62, 67, 71, 80.) Because all detainees are fed from this same kitchen, these allegations plausibly support an inference that all detainees face a risk of serious injury based on the food conditions at the Jail. (*Id*. at ¶ 57.) This is sufficient to establish Article III standing.[1] *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("an allegation of future injury may suffice if the threatened injury is certainly impending, or there is a *substantial risk* that the harm will occur.") (cleaned up) (emphasis added).

**2) Adequacy of Plaintiffs'** ***Monell*** **and Conditions of Confinement Claims**

Next, Aramark argues that Plaintiffs have not alleged an Aramark policy or widespread custom or practice sufficient to establish *Monell* liability and have not adequately alleged either prong of a conditions of confinement claim. The Court has repeatedly rejected Aramark's argument that Plaintiffs' allegations fail to establish a basis for *Monell* liability. As previously held, Plaintiffs have adequately alleged a practice of serving prisoners inadequate food and food that is inedible due to contamination and spoiling. (Dkt. No. 73 at 11-15; Dkt. No. 116 at 2.) Aramark's argument on reply that the Court should effectively reconsider its prior rulings because none of the newly-added Plaintiffs "assert any allegations as to the food served to them," is unavailing. (Dkt. No. 214 at 5.) As described above, Plaintiffs have alleged a custom and practice of failing to keep the kitchen free from birds and vermin, food that is contaminated with animal feces and foreign objects, and inedible and spoiled food. These allegations are sufficient to show a custom of improper sanitation and unsafe food in the Jail kitchen which is under Aramark's supervision. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

---

[1] Aramark notably does not argue that the allegations of the newly-named Plaintiffs and Plaintiffs Harris and Lockhart fail to state a food claim against Aramark under Federal Rules of Civil Procedure 12(b)(6) or 12(c). Such an argument would require a different analysis.

1  With respect to the adequacy of the allegations of Plaintiffs' conditions of confinement claim, as previously held, Plaintiffs have adequately alleged that Aramark was deliberately indifferent to their health and safety based on their allegations that the sanitation and contamination of the food at the Jail places them at substantial risk of harm and that Aramark's conduct is objectively unreasonable. *See Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). (Dkt. No. 73 at 11-15; Dkt. No. 116 at 2.) To the extent that Aramark's motion is based on Plaintiffs' allegations regarding the adequacy of their diet, Plaintiffs have repeatedly disavowed that this is a basis for their conditions of confinement claim. (Dkt. No. 114 at 2; Dkt. No. 116 at 2; Dkt. No. 179.) And Plaintiffs were not granted leave to amend their complaint to add a new theory of liability. *See* Fed. R. Civ. P. 15(a)(2) (requiring leave of court to amend the complaint). Plaintiffs' food claims are based on the theory that detainees receive constitutionally inadequate food because it is contaminated, spoiled, and otherwise inedible. (Dkt. No. 180 at ¶ 6.1.)

\*\*\*

Accordingly, Aramark's motion to dismiss is DENIED.

**B.    The County's Motion**

The County's motion to dismiss the claims against the newly added Defendants Deputy Lenahan and Classification Sergeant MacBride is GRANTED. Plaintiffs did not seek, and the Court did not grant them, leave to add additional defendants; the Court only granted leave to file a fifth amended complaint for the injunctive relief claims that substituted new plaintiffs for plaintiffs no longer incarcerated at the Jail. (Dkt. No. 179.) Likewise, to the extent that Plaintiffs replead their class-wide First Amendment claim, this claim was previously dismissed without leave to amend (Dkt. No. 116 at 5) and thus is dismissed. Plaintiffs concede that the Court previously dismissed without leave to amend the individual claims against Deputies Joe and Ignot based on inadequate medical care and should be dismissed. (Dkt. No. 210 at 10, n.2.)

The County also moves to dismiss the claims of the new Named Plaintiffs for failure to state a claim. The motion is DENIED except as to Plaintiff Arnold. Drawing all inferences in Plaintiffs' favor, Plaintiffs Wayne, Mallett, Tucker, Geyer, and Phillips have adequately alleged claims based on inadequate medical care and/or unsanitary conditions.

4

Plaintiff Wayne alleges that he was denied treatment for a skin infection for several months which has caused his lower leg to become "swollen and turn black" such that he has difficulty walking and standing. (Dkt. No. 180 at ¶ 14.3.9.) Plaintiff Mallett allegedly developed a staph infection after he contracted a skin infection from his unsanitary living situation, lost hearing in one ear as a result of another untreated infection, and because of lack of treatment for a hand fracture has difficulty using his right hand. (*Id*. at ¶ 14.3.10.) Plaintiff Tucker allegedly has a mental health condition for which he has been denied medication, and was provided no medical attention after he arrived at the Jail with a gunshot wound to his hand. (*Id*. at ¶ 14.3.11.) Plaintiff Geyer developed a leg infection for which he was provided inadequate treatment and subject to unsanitary conditions which has resulted in long-term side effects. (*Id*. at ¶ 14.3.12.) Finally, Plaintiff Phillips, who has asthma, was forced to share an inhaler, and even after separate inhaler was provided it was kept in a shared bag which resulted in mix-up of inhalers and cross-contamination causing him to contract COVID and a cold. (*Id*. at ¶ 14.3.13.)

Plaintiff Arnold, however, does not allege claims based on inadequate medical care or sanitation. She alleges that when she was previously housed at Santa Rita Jail she "received a chrono for a pillow, an extra mattress and shoes to address physical conditions in her neck, back and feet," but that she has not received these items upon returning the Santa Rita Jail. (*Id*. at ¶ 14.3.15.) These allegations are not tethered to Plaintiffs' theory of liability; that is, that detainees are provided inadequate medical care because of the Jail's financial incentive policy. (*Id*. at ¶ 127 ("[b]y requiring WELL-PATH to pay for any and all medical care provided outside of [the Jail] to any [] prisoner, and by limiting WELL-PATH's ability to recover any amount WELL-PATH pays for such care, SHERIFF'S contract with WELL-PATH creates a financial incentive and imperative for WELL-PATH to refuse and withhold needed and appropriate outside medical services to all prisoners, including pregnant prisoners, when the needed and appropriate medical services consist of 'inpatient hospitalization costs…outpatient physician consultations, outside specialist[s, or[ off-site diagnostic procedures,' among other services.").) Plaintiff Arnold does not allege either that the pillow, extra mattress, or shoes are medically necessary, or that she was denied these items by Wellpath to reduce costs. To the extent that Plaintiff Arnold's allegations seek to revive the dismissed class wide First Amendment claim, as previously noted, this dismissal was without leave to amend.

1 (Dkt. No. 116 at 5.) And to the extent Arnold seeks to make a new claim, the Court has not granted

2 Plaintiff leave to do so. Accordingly, the County's motion to dismiss Plaintiff Arnold's claims is

3 GRANTED.

### C. Wellpath's Joinder

Wellpath filed an untimely joinder in the County's motion to dismiss. (Dkt. No. 205.) On July 20, 2022, the Court ordered Defendants to file their responsive pleadings by September 19, 2022. (Dkt. No. 203.) Wellpath filed its joinder—three days after this deadline—on September 22, 2022, and did not seek leave for its untimely filing. The Court will thus not consider Wellpath's untimely submission.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The following claims survive:

(1) Inadequate and Unsanitary Food Claims as the County and Aramark (claims 1 and 2);

(2) Inadequate Medical Care as to the County and Wellpath (claims 3 and 4);

(3) Inadequate Sanitation as to the County as well as Plaintiff Gerrans' individual claim against Deputies Joe and Ignot (claims 5 and 6);

(4) Plaintiff Gerrans' First Amendment claim as to the County (claim 7).[2]

The claims against Deputy Lenahan and Classification Sergeant MacBride are dismissed, as are the inadequate medical care claims against Deputy Joe and Deputy Ignot. Plaintiff Tiara Arnold's claims are also dismissed.

Defendants shall file their answer by November 21, 2022.

The Court sets a case management conference for December 1, 2022 at 1:30 p.m. via Zoom video to discuss a class certification briefing schedule. On or before November 21, 2022, Plaintiffs shall provide Defendants with a statement indicating which named Plaintiff(s) they intends to offer as a class representative for each of the remaining class claims set forth above.

---

[2] The Court previously allowed this claim to proceed. (Dkt. No. 116 at 5.) However, at the April 6, 2022 case management conference, Plaintiff did not identify this claim as a claim on which they intended to proceed. (Dkt. No. 179.) To the extent that the claim remains, it only encompasses Plaintiff Gerrans' individual claim. (Dkt. No. 73 at 7; Dkt. No. 116 at 5.)

The parties shall then meet and confer, and by November 23, 2022 file a joint, or separate if they are unable to agree, proposals for the class certification briefing schedule.

This Order disposes of Docket Nos. 196, 204, and 205.

**IT IS SO ORDERED.**

Dated: November 7, 2022

JACQUELINE SCOTT CORLEY
United States District Judge