1  Jonathan J. Belaga, Esq. (SBN 275229)
   E-mail: jbelega@skanewilcox.com
2  SKANE MILLS LLP
   33 New Montgomery Street, Suite 1250
3  San Francisco, CA 94105
   Tel: 415.431.4150    Fax: 415.431.4151
4
   Gregory B. Thomas (SBN 239870)
5  E-mail:  gthomas@bwslaw.com
   Temitayo O. Peters (SBN 309913)
6  E-mail:  tpeters@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
7  1999 Harrison Street, Suite 1650
   Oakland, CA  94612-3520
8  Tel:  510.273.8780   Fax:  510.839.9104

9  Attorneys for Defendants
   ALAMEDA COUNTY SHERIFF'S OFFICE,
10 ALAMEDA COUNTY, DEPUTY JOE, and
   DEPUTY IGNONT (collectively "ALAMEDA
11 COUNTY DEFENDANTS")

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO/OAKLAND DIVISION

15

16 **ALAMEDA COUNTY MALE**                    Case No.  3:19-cv-07423-JSC
   **PRISONERS** And Former Prisoners,
17 DANIEL GONZALEZ, et al. on behalf of       **ALAMEDA COUNTY DEFENDANTS'**
   themselves and others similarly situated, as **SUPPLEMENTAL BRIEF IN**
18 a Class, and Subclass;                     **OPPOSITION TO PLAINTIFFS' MOTION**
                                              **FOR CLASS CERTIFICATION**
19 **ALAMEDA COUNTY FEMALE**
   **PRISONERS** And Former Prisoners,
20 JACLYN MOHRBACHER, ERIN ELLIS,
   DOMINIQUE JACKSON, CHRISTINA
21 ZEPEDA, ALEXIS WAH, AND KELSEY
   ERWIN, et al on behalf of themselves and
22 others similarly situated,

23              Plaintiffs,

24 v.

25 ALAMEDA COUNTY SHERIFF'S
   OFFICE, ALAMEDA COUNTY, Deputy
26 Joe, Deputy Ignont (sp) John and Jane
   ROEs, Nos. 1 – 25;
27
   WELL-PATH MANAGEMENT, INC., a
28 Delaware Corporation, (formerly known as

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4888-7519-3172 v1                     - 1 -      ALAMEDA COUNTY DEFTS' SUPP BRIEF IN
                                                      OPP TO PLTFS' MOTION FOR CLASS
                                                                         CERTIFICATION

1  California Forensic Medical Group) a corporation; its Employees and Sub-Contractors, and Rick & Ruth ROEs Nos.26-50;

ARAMARK CORRECTIONAL SERVICES, LLC, a Delaware Limited Liability Company; its Employees and Sub-Contractors, and Rick & Ruth ROES Nos. 51-75,

Defendants.

The Alameda County Defendants respectfully submit the following supplemental brief pursuant to the Court's request at Dkt. No. 257 (Order).

## I. INTRODUCTION

The Court's Order requests supplemental briefing on Plaintiffs' articulation of the two theories behind their request for certification of an "inadequate sanitation subclass" during the February 23 hearing on Plaintiffs' pending Motion for Class Certification (Motion). Certification of an "inadequate sanitation subclass" based on Plaintiffs' asserted theories of (1) inadequate sanitation supplies, including an alleged failure to address sanitation issues related to mentally ill inmates, and (2) a lack of bathroom access is inappropriate and must be denied.

Certification of an "inadequate sanitation subclass" should be denied for three principal reasons. First, Santa Rita Jail ("the Jail") has established policies and procedures in place to ensure proper and adequate inmate sanitation and bathroom access. Second, Plaintiffs cannot meet Federal Rule of Civil Procedure 23's requirements for class certification of their proposed subclass. And finally, third, Plaintiffs' proposed inadequate sanitation subclass is barred by the principles of *res judicata*.

## II. ARGUMENT

During the February 23 hearing on Plaintiffs' Motion, Plaintiffs clarified that their proposed inadequate sanitation subclass is premised on two theories. Plaintiffs' first theory is based on Alameda County Sheriff's Office's (ACSO) alleged "policy requiring inmates to maintain the sanitation of their own cells and common areas, but failing to have a policy or practice which provides inmates with adequate sanitation supplies, or a policy for addressing

1   inmates housed with those who cannot functionally maintain their own sanitation because of
2   mental health issues, which impacts sanitation for all inmates within that congregate housing
3   area." Dkt. No. 257 at 1:18-22.  Plaintiffs' second theory is based on ACSO's alleged "policy of
4   not providing bathrooms in the common areas, and inmates' difficulties obtaining access to
5   bathroom areas during POD or out of cell time." *Id.* at 1:23-25.  Class certification of a proposed
6   subclass on both theories is inappropriate and must be denied.

**A.   ACSO's Policies and Procedures Ensure Proper and Adequate Sanitation and Bathroom Access.**

**1.   ACSO's Inmate Sanitation Policies**

ACSO has existing and well-established policies and procedures in place to ensure proper inmate sanitation.  Pursuant to ACSO Detention and Corrections, Policy and Procedure 15.01, 15.02, and 15.03, inmates are responsible for maintaining the cleanliness of their own cells.  Decl. of Phillip Corvello (Corvello Decl.) ¶¶ 3- 4.  Cleaning materials are made available to inmates in a reasonable timeframe by the housing unit deputies upon request.  *Id.* at ¶ 4.  Deputies are also instructed to offer cleaning materials to inmates at least once per shift (twice a day), regardless of whether cleaning materials are requested, and to ensure that this offering is documented in the Redbook.  *Id. See also id.* at ¶ 8, Exh. G to Corvello Decl. at G-2 (requiring deputies to oversee cell cleaning "twice daily at 0800 hours and 1800 hours").  The available cleaning materials include mops, buckets, vacuums, bleach, restroom cleaner, bathroom cleaner, and daily floor cleaner.  *Id*. at ¶¶ 11-12, Exh. H to Corvello Decl.

Inmate workers (also sometimes referred to as pod workers) are responsible for maintaining the cleanliness of each housing unit's common areas, which are specified under Policy 15.01 and include the housing unit's multipurpose rooms, showers, quasi yards (walled outdoor areas adjacent to housing units), and hallways.  Corvello Decl. ¶ 5.  Each housing unit has at least two – but typically more than two – assigned inmate workers.  *Id.*  Inmate workers have access to the housing unit's cleaning supplies throughout the day.  *Id.*  Inmate workers are responsible for cleaning up after meal services, and as needed, and are generally very proactive at addressing self-identified and deputy-identified cleanliness issues in their assigned housing units.

ACSO also contracts with Crime Scene Cleaners, a professional cleaning service, to address any potential biohazards (such as blood, fecal matter, etc.) identified in the housing units and elsewhere throughout the jail facility. *Id*. at ¶ 6. *See also id.* at ¶ 8, Exh. G to Corvello Decl. at G-2 (discussing the use of inmate workers and Crime Scene Cleaners).

With regards to personal sanitation, inmates are responsible for maintaining the cleanliness of their own person under ACSO Detention and Corrections, Policy and Procedure 15.03. Corvello Decl. ¶ 4; RJN at ¶ 4, Exh. D. Every inmate is provided with a "free-line kit" upon intake, which includes soap, a toothbrush, comb, and other personal hygiene materials. Corvello Decl. at ¶ 13; Exh. I to Corvello Decl. Additional free-line kits can be ordered by inmates through the commissary process even if they do not have money on their books. *Id.* In addition to free-line kits, inmates have access to showers, soap, razors, nail clippers, hair cutting implements and other personal hygiene materials in their housing units upon request and in accordance with their classification restrictions. *Id.*; RJN at ¶ 4, Exh. D. Additional personal hygiene materials are also available for purchase through commissary. *Id*.

To ensure that inmates follow proper sanitation practices, ACSO Detention and Corrections Policy and Procedure 15.01 requires housing unit deputies to "inspect their housing areas during each shift" and address any "cleanliness or maintenance problems" immediately. Alameda County Defendants' Request for Judicial Notice (RJN) ¶ 2, Exh. B at 1. Security sergeants are also required to "inspect all housing units and other areas under their control at least once per shift (twice a day), including weekends and holidays," to "report their findings to the Watch Commander," and to ensure that their inspections are documented in the housing unit's Redbook. *Id*. *See also* Alameda County Defendants' Request for Judicial Notice ("RJN") ¶ 3, Exh. C (setting forth a mandatory safety and sanitation inspection schedule in Detention and Corrections Policy and Procedure 15.02); RJN ¶ 6, Exh. F to RJN (setting forth mandatory supervisory inspections each shift and Redbook documentation of same in Detention and Corrections Policy and Procedure 10.03).

ACSO also has established policies and procedures in place to ensure that mentally ill inmates adhere to proper sanitation practices. It is currently ACSO's practice to work with

inmates to prevent inmate cells from becoming disorderly and/or unsanitary. Corvello Decl. ¶¶ 8, 10; Exh G. Deputies are required to "make an effort to encourage" inmates to clean their cells when they notice that a cell is "disorderly and/or unsanitary." Corvello Decl. ¶ 8; Exh G. at G-2. If the inmate refuses or is unable to clean their cell, deputies are required to work with inmate workers or Crime Scene Cleaners (if appropriate) to have the cell cleaned when the inmate is removed from their cell to attend an external appointment, participate in pod time or for some other reason. *Id.* ACSO does not have any plans to halt any of these practices and is working to ensure that all of these current practices are reflected in written policy. Corvello Decl. ¶ 8.

In accordance with the requirements set forth in the Consent Decree entered in *Ashok Babu, et al. v. County of Alameda, et al.*, Case No. 5:18-cv-07677-NC (*Babu*), ACSO is also actively working with the *Babu* Joint Experts to implement additional policies to comply with the Consent Decree's requirements. *Id.* at ¶ 9; *see also* RJN ¶ 1, Exh. A. Pertinent here, ACSO is currently working with the *Babu* Joint Experts to revise Detention and Corrections Policy and Procedure 10.03 to require supervisors to notate in the Redbook that they are reminding deputies during their daily housing unit inspections to work with the inmates in their charge to ensure good hygiene and cleanliness. *Id.* at ¶ 10. ACSO is also working with the *Babu* Joint Experts and Adult Forensic Behavioral Health staff to promote effective communication practices to ensure that inmates with severe mental illness, cognitive, developmental and/or intellectual disabilities understand what is required to maintain good hygiene and cleanliness. *Id.* Lastly, ACSO is working with the *Babu* Joint Experts to update Detention and Corrections Policy and Procedure 8.12, which governs inmate supervision and observation, to require deputies to notate the cleanliness level of an inmate's cell during mandatory observation rounds when an issue is observed. *Id.*

### 2. ACSO's Bathroom Access Policies

ACSO also has established policies and procedures in place to ensure that inmates are provided with bathroom access during pod and out-of-cell time. Bathroom access during pod and out-of-cell time is governed by Detention and Corrections Policy and Procedure 10.05. *Id.* at ¶ 14. Because the housing unit common areas do not have bathrooms, Policy 10.05 requires

housing unit deputies to ensure that inmates are able to enter/exit their cells at least once per hour while they are out in the common areas. *Id*; *see also* RJN ¶ 5, Exh. E. Inmate cell doors in both the celled and dormitory-style housing are closed and locked during pod time to prevent inmates from escaping observation, assaulting each other during pod time, limit un-authorized access to cells inmates are not assigned to, and to prevent inmates from manipulating the locks on their cell doors. Corvello Dec. at ¶ 14. Deputies are trained to permit inmates to access the restroom upon request when they are outside of their assigned living areas. *Id*. at ¶ 14. This common practice is not currently reflected in written policy, but will be incorporated in the near future through the ongoing policy revision process related to implementing the *Babu* Consent Decree. *Id*.; *see also* RJN ¶ 1, Exh. A at A-24 to A-26 (requiring the County to provide "reasonable access to bathroom facilities as needed" in conjunction with their efforts to increase out-of-cell time through the construction of additional recreational spaces). All of the aforementioned policies justify rejecting Plaintiffs' proposed inadequate sanitation subclass.

**B.  Class Certification Under Federal Rule of Civil Procedure 23(b)(2) is Unwarranted.**

Second, certification of Plaintiffs' proposed inadequate sanitation subclass is inappropriate here because Plaintiffs have not met their burden of showing that the requirements of Federal Rule of Civil Procedure 23 are met. To be certified, Plaintiffs' proposed subclass must satisfy all four of Rule 23(a)'s requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). Because Plaintiffs have also clarified that this "is a Rule 23(b)(2) case," they must also meet the requirements of Rule 23(b). Fed. R. Civ. P. 23(b)(2); Dkt. No. 234 at 10:14 ("Plaintiffs' Reply in Support of Motion for Class Certification Re: County Defendants' Opposition").

Rule 23(a) requires Plaintiffs to establish numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)-(4). Class certification is proper only if the trial court has concluded, after a "rigorous analysis," that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 350-51 (2011)). Plaintiffs have not met any of Rule 23(a)'s requirements for their proposed inadequate sanitation subclass for the reasons discussed at length in the Alameda County Defendants' Opposition to Plaintiffs' Class Certification Motion. In brief, Plaintiffs have not produced any evidence establishing that the inadequate sanitation claims alleged in the operative complaint are true and representative of a specific, systemic, and longstanding ACSO policy or practice to provide inmates at Santa Rita Jail with inadequate sanitation in violation of any recognizable constitutional rights. *See M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 844 (5th Cir. 2012) (holding that "[m]ere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement"); *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ("utterly threadbare allegations that a group is exposed to illegal policies and practices" are insufficient to confer commonality). Plaintiffs proffer no evidence in support of their claims other than self-serving declarations. This failure has prevented Plaintiffs from meeting their burden of establishing that their inadequate sanitation allegations are common, typical, and wide-spread among their proposed subclass. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) (holding that 15 class members were too few to establish a class).

Plaintiffs have also failed to meet their burden of establishing that they are adequate representatives of the proposed subclass. None of the named Plaintiffs asserted sanitation-related allegations related to inadequate bathroom access in the operative complaint. *See* Dkt. No. Dkt. No. 180. Only 6 of the remaining 8 named Plaintiffs asserted sanitation-related allegations related to inadequate sanitation supplies in the operative complaint and at least one has been released from custody. *Id.* at ¶¶ 14.3.2, 14.3.9-14.3.13; *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (citing *Preiser v. Newkirk*, 422 U.S.395, 402-03 (1975) (an "inmate's release from prison while his claims are pending generally will moot his claims for injunctive relief relating to the prison's policies unless the suit has been certified as class action."). But none of the six Plaintiffs submitted any evidence in support of their Motion establishing that the unsanitary conditions they alleged in the operative complaint actually occurred, that they suffered any injuries caused by the alleged unsanitary conditions, or that the alleged unsanitary conditions are the result of an unconstitutional ACSO policy or practice. *See Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 1548 (2016) (proposed class representatives must be able to prove an actual injury).

Plaintiffs also cannot meet Rule 23(b)'s requirements.  Rule 23(b) requires proof that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  As detailed above, ACSO already has robust policies and procedures in place to ensure that proper inmate sanitation is achieved at the Jail.  Corvello Decl. ¶¶ 3-14.  Additional sanitation policies and procedures are being developed with Joint Expert assistance under the Court's oversight through the *Babu* Consent Decree process.  *Id.* at ¶¶ 9-10, 14; RJN ¶ 1, Exh. A at A-60 through A-68.  For these reasons, certification of Plaintiffs' proposed inadequate sanitation subclass under Rule 23 is inappropriate and Plaintiffs' Motion must be denied.

### C. Plaintiffs' Proposed Subclass is Barred by *Res Judicata*.

Finally, certification of Plaintiffs' proposed inadequate sanitation subclass is also improper, because the class is barred by the principles of *res judicata*.  "A lawsuit involving the same parties and based on the same cause of action as asserted in a previous case is barred under the doctrine of *res judicata*." *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992). *See also Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("there is scope within the framework of the Constitution for holding in appropriate cases that a judgment rendered in a class suit is res judicata as to members of the class who are not formal parties to the suit").

The Court's decision in *Alaska Sport Fishing Ass'n v. Exxon Corp.* (*Alaska* lawsuit), 34 F.3d 769 (9th Cir. 1994) is illustrative of the reason why Plaintiffs' proposed sanitation subclass must be rejected.  This putative lawsuit was brought by a group of fisherman seeking damages arising out of the 1989 Exxon Valdez oil spill. *Id*. at 770.  On appeal the Ninth Circuit upheld the lower court's dismissal of the fisherman-plaintiffs' lawsuit under the principles of *res judicata*. *Id*. at 774.  The Ninth Circuit found that: (1) the fisherman-plaintiffs were privy to a prior federal suit brought by the government on behalf of the public that resulted in a consent decree, because the consent decree "specifically provide[d] that the governments were acting in all capacities for their citizens;" and (2) the damages sought by the fisherman-plaintiffs in the second lawsuit were

1 the same damages covered by the prior consent decree. *Id.* at 773. The Ninth Circuit also
2 affirmed the lower court's finding that the only claims arising out of the 1989 Exxon Valdez oil
3 spill that survived after the entry of the consent decree "were 'uniquely private' tort claims" and
4 that class certification was therefore improper. *Id*. at 774.

5        The present case is analogous to the *Alaska* lawsuit. Here, similar to the *Alaska*
6 fisherman-plaintiffs, Plaintiffs were privy to the prior lawsuit that resulted in the *Babu* Consent
7 Decree because they are members of the certified class. RJN ¶ 1, Exh. A at A-5 ("On January 21,
8 2020, the Court certified a class consisting of 'all adults who are now, or in the future will be,
9 incarcerated in the Alameda County Jail'"). The inadequate sanitation claims Plaintiffs seek to
10 assert in this action on behalf of their proposed subclass are specifically covered by the *Babu*
11 Consent Decree provision requiring ACSO to implement policies and procedures to ensure proper
12 sanitation during the COVID-19 pandemic. *Id*. at A-11 through A-14. As discussed above,
13 proper sanitation practices are currently in place and ACSO does not have any plans to halt any of
14 the additional cleaning practices implemented in response to the COVID-19 pandemic. Corvello.
15 Decl. ¶¶ 3-8, Exh. G. ACSO is also actively working to ensure that all of its current sanitation
16 practices are reflected in written policy. Corvello. Decl. ¶ 8.

17        The inadequate sanitation claims Plaintiffs seek to assert on behalf of inmates with
18 "mental health issues" are also covered by the *Babu* Consent Decree. A subclass was certified in
19 the *Babu* lawsuit to address the needs of "all qualified individuals with a psychiatric disability, as
20 that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government
21 Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Alameda
22 County Jail." *Id.* at A-5 to A-6. As discussed above, ACSO already has policies and procedures
23 in place to ensure that mentally ill inmates adhere to proper sanitation practices. Corvello. Decl. ¶
24 8, Exh. G. ACSO is also actively working with the *Babu* Joint Experts to develop additional
25 policies and procedures to comply with the Consent Decree's requirements relating to ensuring
26 that inmates with cognitive, developmental and/or intellectual disabilities maintain proper
27 sanitation and good hygiene. Corvello. Decl. ¶¶ 9-10. In light of these facts, Plaintiffs' proposed
28 improper sanitation subclass necessarily involves the same parties as the *Babu* lawsuit and is thus

barred by the principles of *res judicata*.

Next, just as in the *Alaska* lawsuit, Plaintiffs' proposed improper sanitation subclass is barred by the principles of *res judicata* because Plaintiffs are seeking injunctive relief covered by the Consent Decree. "Plaintiffs' case is a Rule 23(b)(2) case." Dkt. No. 234 at 10:14 ("Plaintiffs' Reply in Support of Motion for Class Certification Re: County Defendants' Opposition"). The *Babu* Consent Decree provides proper and adequate injunctive relief for the allegedly inadequate sanitation issues raised by Plaintiffs in this case. *See* RJN ¶ 1, Exh. A at A-5 through A-10, A-24 to A-27, A-60 through A-68 (outlining sanitation requirements and providing a robust enforcement mechanism). *See also S.E.C. v. Randoph*, 736 F.2d 525, 528 (9th Cir. 1984) ("A consent decree offers more security to the parties than a settlement where 'the only penalty for failure to abide by the agreement is another suit (citations omitted). A consent decree is a judgment, has the force of res judicata, and it may be enforced by judicial sanctions, including as in this case, citations for contempt."). Thus, any remaining inadequate sanitation claims are "'uniquely private' tort claims" that are not proper for class certification. *Alaska Sport Fishing Ass'n*, 34 F.3d at 774. *See also* Dkt. No. 231 at 13-18 (discussing the individualized nature of Plaintiffs' claims generally).

## III. CONCLUSION

Thus, for all of the foregoing reasons, the Alameda County Defendants respectfully request that the Court reject Plaintiffs' attempt to certify an inadequate sanitation class and deny Plaintiffs' Class Certification Motion in full.

Dated: March 9, 2023

By: */s/ Temitayo O. Peters*
Jonathan J. Belaga
SKANE MILLS LLP

Gregory B. Thomas
Temitayo O. Peters
BURKE, WILLIAMS & SORENSEN, LLP

Attorneys for Defendants
ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY