LAW OFFICES OF

# YOLANDA HUANG

Date: October 17, 2023

Hon. Jacqueline Corley
Courtroom 8, 19th Floor
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

    Re: Discovery Dispute Between Plaintiffs and Defendant Aramark

Dear Judge Corley :

Counsels for Defendant Aramark and Plaintiffs have had extensive communications and meet and confers, without being able to resolve the conflicts.

    **a. Responses to Plaintiffs' Special Interrogatories**

        1. <u>Plaintiffs' Position:</u>

<u>Plaintiffs' Interrogatory No. 1</u> requires Aramark to describe in detail the training received by the Aramark employee that is the subject of the interrogatory. Aramark directs Plaintiffs to training records for Peter Burt, Richard Huking, David Lauria, Michael Maltese, Robin Weiss, and Hal Yasa. These records list the topics of the training, but do not indicate the time spent on the training nor who provided the training. The "credit hour" reference to which Aramark refers in meet and confer correspondence does not appear to provide the time spent in training, as in many instances the time indicated for a designated training module marked complete is zero. Aramark's counsel indicated that Aramark is searching for additional documents regarding training and will produce those documents. Aramark has not yet done so.

    Specifically, in its meet and confer correspondence dated October 2, 2023, Aramark states: "[M]ost, if not all, of the food safety training courses consist of on-line, interactive training sessions. The problem . . . is that the on-line, interactive training sessions are produced by a third-party vendor and are constantly being revised. In this regard, we are trying to determine if prior versions of the on-line, interactive training sessions still exist. If such prior versions exist, we will still need to obtain the vendor's approval to share them with you and determine an efficient and secure way to produce these materials."

    Aramark has not yet to produced any of the materials it references.
    Aramark could simply ask its employees to describe in detail the training they received, including the topics, the times the trainings were provided, and who provided the training. Moreover, Aramark's assertion that it does not otherwise have access to this information strains credulity.

<u>Plaintiffs' Interrogatories Nos. 2 and 4</u> require Aramark to provide all dates each subject of the interrogatory has been on location at Santa Rita jail. Aramark provides no specific dates, except to refer to personnel records it has not produced.

In its meet and confer correspondence dated September 20, 2023, Aramark states: "Aramark has time and attendance records for the Aramark hourly employees listed in Plaintiffs' discovery requests and is willing to produce such records to Plaintiffs. Please note that these records are extremely voluminous and comprise of 2,764 pages of documents. Please let us know if Plaintiffs still want these documents. In this regard, Aramark reserves the rights to charge Plaintiffs for any costs associated with responding to Plaintiffs' irrelevant and burdensome discovery request."

Aramark may not simply direct Plaintiffs to search through its document production rather than answering Plaintiffs' interrogatories. Fed. R. Civ. Proc.33(b)(3); *Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d 88, 93 (1st Cir. 2012) (answering interrogatories simply by directing the proponent to look through other discovery materials is inadequate). Aramark surely must know when its employees were or are at Santa Rita Jail. This information is directly relevant to Plaintiffs' claims and must be provided in response to Plaintiffs' interrogatories. Furthermore, since defendant Aramark disputes plaintiffs' alleged facts, the amount of time, and the actual times Aramark employees were at Santa Rita Jail is highly germane to said employees' ability to observe, and credibility.

b. <u>Defendant Aramark's Response:</u>

1. *Plaintiffs' Interrogatories Regarding Training Materials*

Plaintiffs claim that "Aramark has not yet to produce[] any of the materials it reference[d]" during its meet and confer correspondence. This is incorrect. On October 10, 2023, Aramark produced over 750 pages of training materials associated with the food safety training referenced in the training logs that were previously produced to Plaintiffs, as well as two versions of the on-line, interactive training videos at issue. *See* Aramark's third document production in this case, which is Bates-labeled Aramark_Gonzalez-0003396-Aramark_Gonzalez-0003788. Indeed, Plaintiffs have not opened the link to the documents produced on October 10, 2023 or attempted to download them. Further, Aramark previously produced numerous documents concerning its food safety training. For example, Aramark produced its "Food Safety QA Tool." *See* Aramark_Gonzalez-0003005-25. Plaintiffs' failure to review the training materials demonstrates that Plaintiffs have no interest in these documents and are instead merely trying to harass Aramark and prolong these proceedings.

It is also important to note that Aramark produced the training logs for all the Aramark employees identified in Plaintiffs' discovery requests. The training logs clearly show that these individuals completed numerous food safety courses, and each course includes a "credit hours" reference. As to Plaintiffs' claim that the training logs do not indicate the time spent on the training, nor who provided the training, many of the food safety training courses consist of on-line, interactive training videos, which were recently produced. In this regard, Column N of the training logs, entitled "total hours," is only used for "Instructor Led" trainings and does not apply to on-line, interactive training videos. As such, this column shows a "0" for the on-line, interactive training videos. However, Column O is the relevant column to Plaintiffs' requests and clearly shows the "credit hours" for all the training classes. Aramark properly explained how to read the training logs in the e-mail from Charles J. Reitmeyer to Tom Nanney on

October 2, 2023 (*see* **Aramark Exhibit A**, at p. 1), and during their videoconference of September 12, 2023.

Please also note that Plaintiffs' Interrogatories concerning training call for a narrative response that goes beyond the proper scope of interrogatories and a request for such information is more properly obtained through deposition testimony of Aramark's corporate representative.  *See, e.g., Bashkin v. San Diego County*, No. 08-cv-1450-WQH-WVG, 2011 WL 109229 at *2 (S.D. Cal. Jan. 13, 2011) ("[T]o the extent [p]laintiff seeks every minute detail and narratives . . . written discovery is not the proper vehicle to obtain such detail") (citing *Johnson v. Couturier*, 261 F.R.D. 188, 192 (E.D. Cal. 2009)).

2. *Plaintiffs' Interrogatories Regarding Attendance at Santa Rita Jail*

As an initial matter, this action does not involve a specific incident, such as a slip and fall, where it would be important to know who was present at Santa Rita Jail on a specific day. Indeed, Plaintiffs do not ask for time and attendance information for any specific date, but for "all dates" the Aramark employees identified in Plaintiffs' discovery requests have "been on location at Santa Rita Jail."  As such, Aramark properly objected to the Interrogatories at issue "as vague, ambiguous and overly broad and as imposing obligations beyond those imposed by applicable rules and as seeking information not material and necessary in the prosecution or defense of this action because the Interrogator[ies] [are] not limited by time, scope, or matter at issue."

Notwithstanding this objection, Aramark has offered to produce to Plaintiffs 2,764 pages of time and attendance records for the Aramark hourly employees listed in Plaintiffs' discovery requests. Plaintiffs have never responded to this offer.  *See* **Aramark Exhibit A**, at p. 1.  Further, Aramark has explained to Plaintiffs that (1) Aramark managerial employees are not required to "clock in"; (2)  as a general matter, a "General Manager," such as Robin Weiss and Richard Huking are on location at Santa Rita jail several times a week; and (3) in contrast to General Managers, a "District Manager" or "Regional Vice President," such as Michael Maltese, David Lauria and Peter Burt, generally split their time among various locations.  *See* **Aramark Exhibit A**, at p. 3 (Sept. 25, 2023 Email from Charles J. Reitmeyer to Tom Nanney).

Finally, Plaintiffs' Interrogatories concerning when certain Aramark employees are on location at Santa Rita Jail again call for a narrative response that goes beyond the proper scope of interrogatories and a request for such information is more properly obtained through deposition testimony of Aramark's corporate representative.  *See, e.g., Bashkin v. San Diego County*, No. 08-cv-1450-WQH-WVG, 2011 WL 109229 at *2 (S.D. Cal. Jan. 13, 2011) ("[T]o the extent [p]laintiff seeks every minute detail and narratives . . . written discovery is not the proper vehicle to obtain such detail") (citing *Johnson v. Couturier*, 261 F.R.D. 188, 192 (E.D. Cal. 2009)).

b. **Plaintiffs' 30(b)(6) Deposition Topics**

a. Plaintiffs' Position:

After meeting and conferring, Aramark still objects to the following 30(b)(6) deposition topics, which are numbered below as they appear in Plaintiffs' amended deposition notice. Aramark's typical objection to each of these topics is as follows: "Aramark objects to this Topic

. . . because the Court has repeatedly held that Plaintiffs' claims are limited to their allegations that they 'receive constitutionally inadequate food because it is contaminated, spoiled, or otherwise inedible.' (Nov. 7, 2022 Order, Dkt. 216 at 4.) Aramark further objects to this Topic insofar as it seeks Aramark's confidential, non-public, and/or proprietary information, or otherwise commercially-sensitive information." These objections are without merit, as explained below.

> i. *Topics related to Aramark's Budget to Provide Food Services to Plaintiffs and Santa Rita Jail*

TOPIC NO. 1: Overall budget allocation, including details on the overall budget for food services provided to Santa Rita Jail.
TOPIC NO. 2: Cost of goods, including the budget allocated for the procurement of raw materials, prepackaged foods, and other goods necessary for Aramark's food service.
TOPIC NO. 3: Labor costs, including specifics on the budget allocated for salaries, benefits, and other compensation for employees.
TOPIC NO. 4: Operational expenses, including the budget allocation for daily operations, including maintenance of kitchen equipment, transportation, and preparation and service of food.
TOPIC NO. 5: Allocation of funds for ensuring compliance with local, state, and federal regulations, as well as any specific jail standards or requirements.
TOPIC NO. 6: Quality insurance and control, including budget details focused on quality checks, including but not limited to, internal audits, inspections, and third-party consultations.
TOPIC NO. 7: The budget for capital investments like machinery, equipment, or software upgrades that aid in food preparation and service.
TOPIC NO. 8: The budget for employee training programs, covering general, specialized, and compliance-based training.
TOPIC NO. 9: Profit margin and financial goals, including the company's budget in relation to expected revenue, profit margins, and financial objectives.
TOPIC NO. 17: Cost comparison between the cook chill method currently employed by defendant at Santa Rita Jail versus a cook serve method.
TOPIC NO. 24: Pricing and payment terms under the contract between Aramark and the County, including specifics on how pricing was determined, the payment schedule, and any conditions for price adjustments.

All these topics relate to Aramark's budget to provide the services for which it contracted. Plaintiffs' allege "The cost reductions instituted by Defendants ARAMARK, Sheriff and AHERN in the food budget contract had a devastating impact on the quantity and quality of food provided to prisoners at SRJ, creating a situation where the food served is high in white flour, starches and sugar to reach minimum caloric requirements, with little in the way of fresh fruits and vegetables. Protein is primarily soy powder. Availability, frequency and variety of fresh fruits and vegetables diminished significantly, and portion size also diminished." (4AC ¶ 45.) How Aramark allocates its budget to provide food services is directly relevant to Plaintiffs' claims.

In its meet and confer correspondence dated October 11, 2023, Aramark argues that it need not provide a witness to testify to these topics, because "[d]uring the extensive briefing on Aramark's various Motions to Dismiss as to Plaintiffs numerous Amended Complaints, Plaintiffs disavowed that they were basing any of their claims on the nutritional adequacy of

the food. As a result, the Court significantly limited the scope of Plaintiffs' claims against Aramark. Specifically, in its November 7, 2002 Order, the Court stated: 'To the extent that Aramark's motion is based on Plaintiffs' allegations regarding the adequacy of their diet, Plaintiffs have repeatedly disavowed that this is a basis for their conditions of confinement claim. (Dkt. No. 114 at 2; Dkt. No. 116 at 2; Dkt. No. 179.) And Plaintiffs were not granted leave to amend their complaint to add a new theory of liability. See Fed. R. Civ. P. 15(a)(2) (requiring leave of court to amend the complaint). Plaintiffs' food claims are based on the theory that detainees receive constitutionally inadequate food because it is contaminated, spoiled, and otherwise inedible. (Dkt. No.180 at ¶ 6.1.)'"

## ii. Topics Related to Food Waste

TOPIC NO. 11: All efforts to source food locally.
TOPIC NO. 12: All efforts to reduce waste, particularly food waste.
TOPIC NO. 13: The amount of food waste generated, and all efforts used to monitor food waste and reduce food waste.
TOPIC NO. 18: All efforts to reduce solid waste and to meet Alameda County's stated policy of 75% waste reduction by County operations by 2010.

Food waste is an indication of food that inmates have been unable or refuse to consume and substantiate the inedible condition of the food served. The amount of food waste is relevant to plaintiffs' claims. Presumably, fresh, delicious food would be eaten, and not wasted.

In its meet and confer correspondence dated October 11, 2023, Aramark argues that it need not provide a witness to testify to these topics, because "[t]he issues of "food waste" and "sourcing food locally" are not found in the Fifth Amended Complaint. Plaintiffs do not allege that "sourcing food locally" is a Constitutional requirement. It is still unclear of exactly what type of food waste to which you refer in your topics and to which Aramark operations, if any, are implicated. In this regard, it is impossible for Aramark to properly prepare its witness for these topics. Even though Aramark properly objected to the listed food waste topics, Aramark has agreed to produce a witness to testify generally regarding its operations at the Santa Rita Jail."

## iii. Topics Related to Contract Violations

TOPIC NO. 33: Any and all penalties to Aramark for contract violations, and if so for which contract violations and the amount of the penalties, the history of penalty assessment and the process by which penalties are assessed.

Whether Aramark has incurred penalties for violating its contract with the County is directly relevant to Plaintiffs' claims. Last December, Sheriff Ahern requested a contract increase so that Aramark could purchase better quality food. Whether, for example, Aramark is buying postdated, spoilt or contaminated foods to save money, and therefore not meeting county contract standards and incurring penalties as a result, is relevant as a discovery issue. In its meet and confer correspondence dated October 11, 2023, Aramark asserts that the topic "is so vague and broad that it is impossible for Aramark to properly prepare its witness for this topic."
The topic is not too vague nor too broad. The topic simply calls for a witness to testify regarding penalties imposed on Aramark due to Aramark's violation of its contract with the County.

### iv. Topics Related to Training of Aramark Employees

TOPIC NO. 41: Training policies related to employee interactions with inmates, including behavioral guidelines, security protocols, and quality control.

TOPIC NO. 44: Training relating to cultural sensitivity and accommodating diverse dietary needs, including religious or health-related restrictions.

Plaintiffs have alleged inadequate food, and insufficient portion size, poorly cleaned trays, etc. Training and employee interaction with inmates is an essential part of the food services, Aramark provides as Aramark has stated that inmates are supervised and directed by Aramark employees.

TOPIC NO. 54: Procedures and training for preparing and complying with external audits, inspections, or any other third-party evaluations.

Both Aramark and ACSO have claimed that the "inspections" by BSCC and the County health demonstrate ACSO and Aramark's compliance with community standards. How Aramark prepares for audits and inspections is therefore relevant in discovery.

In its meet and confer correspondence dated October 11, 2023, Aramark asserts that "[t]he issues of 'behavioral guidelines,' 'cultural sensitivity' and 'accommodating diverse dietary needs' are not found in the Fifth Amend Complaint. Plaintiffs do not allege that any 'security protocols' were breached by Aramark in the service of food to the inmates at Santa Rita Jail. Plaintiffs also do not allege any claims against Aramark concerning 'religious restrictions.' . . . . [T]he claims against Aramark are limited to "the theory that detainees receive constitutionally inadequate food because it is contaminated, spoiled, and otherwise inedible.' Even though Aramark properly objected to the listed food waste topics, Aramark has agreed to produce a witness to testify generally regarding its policies and practices related to training for its food service operations at the Santa Rita Jail. Aramark has also agreed to produce a witness to testify generally regarding its compliance efforts at the Santa Rita Jail, quality control and kitchen inspections, which are relevant to the training topics that you listed below."

This is clearly not true. David Misch, whose complaint is primarily in the inedible quality and insufficient quantity of the food receives the kosher/halal diet, and has testified extensively on this in this deposition.

b. Aramark's Position:

As an initial matter, Plaintiff Timothy Phillips' list of 54 deposition topics to Aramark is overly burdensome. Indeed, Rule 30(b)(6) does not permit "burdening the responding party with production and preparation of a witness on every facet of the litigation." *See Apple Inc. v. Samsung Elecs. Co.*, Case No. C 11-1846 LHK (PSG), 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (holding that preparing corporate witnesses for deposition "becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand"). It is entirely unreasonable to force Aramark to prepare its witness to testify as to so many irrelevant, vague and obscure topics. Notwithstanding, Aramark has agreed to produce a witness as to many of the 54 listed topics. Further, Aramark has agreed to produce a witness to testify generally regarding its operations at the Santa Rita Jail, including but not limited to compliance, training and food safety issues. In this regard, Aramark has and will fully comply

with its obligations imposed by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Northern District of California.

      i. *Topics Related to Aramark's Budget to Provide Food Services to Plaintiffs and Santa Rita Jail*

Plaintiffs claim that the budget topics are relevant to Plaintiffs' allegation that "[t]he cost reductions instituted by Defendants ARAMARK, Sheriff and AHERN in the food budget contract had a devastating impact on the quantity and quality of food provided to prisoners at SRJ, creating a situation where the food served is high in white flour, starches and sugar to reach minimum caloric requirements, with little in the way of fresh fruits and vegetables. Protein is primarily soy powder. Availability, frequency and variety of fresh fruits and vegetables diminished significantly, and portion size also diminished." (4AC ¶ 45.) However, as noted above, Plaintiffs disavowed that they were basing any of their claims on the nutritional adequacy of the food. In this regard, questions regarding whether the food served is high in white flour, starches and sugar, contains sufficient fresh fruits and vegetables or includes proper protein sources are irrelevant.

As we have stated numerous times and Plaintiffs continue to ignore, the claims against Aramark are limited to "the theory that detainees receive constitutionally inadequate food because it is contaminated, spoiled, and otherwise inedible. Concepts such as "labor costs," "capital investments," "software upgrades," "cook chill" and "cook serve" are not found in the Fifth Amend Complaint. Moreover, it is undisputed that Aramark does not have the authority on its own to increase any budgets, make capital improvements to the physical condition of the Santa Rita Jail kitchen or switch the Santa Rita Jail kitchen to a cook serve method.

Even if Aramark had this authority, disclosure of financial information is discouraged by courts except in the case of claims for punitive damages, which are not present here. *See Klein v. City of Beverly HIlls*, No. CV 13-110-JFW (VBKX), 2015 WL 13906841, at *2 (C.D. Cal. Apr. 23, 2015) (some showing of entitlement to punitive damages required before the court would consider ordering disclosure of defendant's financial condition in a § 1983 case) (citing *Garcia v. City of Imperial*, 270 F.R.D. 566, 572-73 (S.D. Cal. 2010)). This is especially true in this case, where the claims against Aramark are limited to "the theory that detainees receive constitutionally inadequate food because it is contaminated, spoiled, and otherwise inedible."

Nevertheless, even though Aramark properly objected to the listed budget topics, Aramark has agreed to produce a witness to testify generally regarding many of the issues in these topics. Specifically, Aramark has agreed to produce a witness to testify generally regarding: (1) its operations at the Santa Rita Jail; (2) its compliance efforts at the Santa Rita Jail; (3) quality insurance, quality control, quality checks and kitchen inspections at the Santa Rita Jail; and (4) its policies and practices related to training for its food service operations at the Santa Rita Jail.

      ii. *Topics Related to Food Waste*

As an initial matter, the topics concerning "waste," "food waste" and "solid waste" are so vague and broad that it is impossible for Aramark to properly prepare its witness for these topics. Nor are the issues of "waste," "food waste," "solid waste" and "sourcing food locally" are

not found in Plaintiffs' food claims in the Fifth Amend Complaint. Plaintiffs do not allege that "sourcing food locally" is a Constitutional requirement.

Even though Aramark properly objected to the listed food waste topics, Aramark has agreed to produce a witness to testify generally regarding its operations at the Santa Rita Jail.

### iii. Topics Related to Contract Violations

The claims against Aramark in this case are limited to "the theory that detainees [at the Santa Rita Jail] receive constitutionally inadequate food because it is contaminated, spoiled, and otherwise inedible." However, Topic No. 33 concerning penalties for contract violations is not limited by time, location, scope, or matter at issue. Additionally, Topic No. 33 is so vague and broad that it is impossible for Aramark to properly prepare its witness for this topic.

### iv. Topics Related to Training of Aramark Employees

The claims against Aramark in this case are limited to "the theory that detainees [at the Santa Rita Jail] receive constitutionally inadequate food because it is contaminated, spoiled, and otherwise inedible." However, Topic Nos. 41 and 44 have nothing to do with "contaminated, spoiled, and otherwise inedible" food. The issues of "behavioral guidelines," "cultural sensitivity" and "accommodating diverse dietary needs" are also not found in the Fifth Amended Complaint. Plaintiffs do not allege that any "security protocols" were breached by Aramark in the service of food to the inmates at Santa Rita Jail. Plaintiffs also do not allege any claims against Aramark concerning "religious restrictions."

Even though Aramark properly objected Topic Nos. 41 and 44, Aramark has agreed to produce a witness to testify generally regarding its policies and practices related to training for its food service operations and quality control efforts at the Santa Rita Jail.

### c. Length of the Aramark 30(b)(6) Deposition

#### a. Plaintiffs' Position:

Finally, given that this is a multi-party action with 12 plaintiffs,, more than seven hours will be needed to fairly depose Aramark's 30(b)(6) representative. See Fed. R. Civ. Proc. 30(d)(1). Plaintiffs' anticipate needing 21 hours to depose Aramark's 30(b)(6) representative – 7 hours on issues relating to Aramark's budget; 7 hours on issues relating to training of Aramark's employees; and 7 hours relating on issues related to the contract between Aramark and the County.

Aramark has offered 7 hours only.

#### b. Aramark's Position:

"A party who seeks leave of court to exceed the [deposition] limit of one day of seven hours 'is expected to show good cause to justify such an order.'" *Eastman v. Allstate Ins. Co.*, No. 14CV00703WQHWVG, 2016 WL 795881, at *3 (S.D. Cal. Feb. 29, 2016) (quoting *Hernandez v. Best Buy Co., Inc.*, 2014 WL 5307175, at *1 (S.D. Cal. Oct. 15, 2014)). Moreover, "the court should begin with the presumption that the seven-hour limit was carefully chosen and that extensions of that limit should be the exception, not the rule." *Somerset Studios, LLC v. Sch.*

*Specialty, Inc.*, No. C 10-5527 MEJ, 2011 WL 4344596, at *5 (N.D. Cal. Sept. 14, 2011) (refusing to extend the 7-hour limit, finding instead that "the better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period.").

Aramark has consistently stated that "[a]s to the time parameters for Aramark's Rule 30(b)(6) deposition, we are willing to go a little over the seven hour limit and we will not count any examination by the other defendants against the seven hour limit, but the requested 21 hours of examination is excessive, unreasonable and burdensome." *See* **Aramark Exhibit B** (Oct. 15, 2023 Email from Charles J. Reitmeyer to Yolanda Huang).

Plaintiffs' claim that more than seven hours is needed because "this is a multi-party action with 12 plaintiffs" is a red herring. Indeed, not one of Plaintiff Timothy Phillips' list of 54 deposition topics specifically references the Plaintiffs as a group or an individual Plaintiff. As such, the topics generally concern Aramark's operations at the Santa Rita Jail and do not require a Plaintiff-by-Plaintiff specific inquiry. Further, of the fourteen Plaintiffs in this action, only Daniel Gonzalez, Lawrence Gerrans, Cedric Henry, David Misch and Tikisha Upshaw assert any food claims.

### d. Aramark's Additional Discovery Dispute Concerning Document Retention

a. <u>Defendant's Position:</u>

It has become apparent from Plaintiffs' deposition testimony that Plaintiffs have failed to preserve and search for responsive and relevant documents in this case. All parties and their counsel have a duty to preserve relevant evidence, which includes identifying, locating, and maintaining possession of relevant documents. *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012).

For example, although Plaintiffs have produced **no documents** concerning Plaintiff Cedric Henry in this litigation, Mr. Henry clearly testified at his deposition that he left prison with numerous documents relevant to this case, but either lost or threw the documents away. *See generally* Dep. of Henry at pages 39-41. Specifically, Mr. Henry testified that he collected documents "from 1995 up to 20 -- to the day I was released" concerning his conditions of confinement and his grievances. *Id.* at 39:16-18. Mr. Henry also stated that "I done lost a lot of that stuff, and I went through a lot of the things and couldn't find majority of the stuff that I had from being there." *Id.* at 40:24-25, 41:1-2. It is undisputed that Mr. Henry had these documents **after** his incarceration. Specifically, he stated that "I took it to where I was living at first, and then I put it in a storage, and I was going in and out and getting things here and there, and some things I no longer know where they are. Some things I do know where they are. Some things I threw away." It is important to note that Mr. Henry was added as a Plaintiff in the First Amended Complaint, which was filed on May 7, 2020, and he was released from prison on February 5, 2022. In this regard, Plaintiffs' Counsel has failed to instruct Mr. Henry to preserve relevant evidence in this case and failed to collect relevant documents that he had in his possession while he was represented by Plaintiffs' Counsel and while he was no longer incarcerated.

Similarly, Plaintiff Eric Rivera testified that he packed various boxes of documents to be sent to his criminal attorney, Darryl Stallworth, and that Mr. Stallworth did, in fact, receive two such boxes. *See generally* Dep. of Rivera at pages 119-120. Mr. Rivera also testified that

grievances concerning his stay at Santa Rita Jail were included in the documents that he packed to be sent to Mr. Stallworth. *Id.* at 120:5-12. There is, however, no indication that these two boxes of documents were ever searched for responsive and relevant documents in this case. Indeed, Mr. Rivera testified that he does not know what is contained in the two boxes received by Mr. Stallworth. Dep. of Rivera at page 120, lines 16-19. Further, Mr. Rivera testified that he does not know whether any of the grievances that he packed in the boxes to be sent to Mr. Stallworth were ever produced in this case. Dep. of Rivera at 122:8-12.

Further, Plaintiffs only produced a few grievances from Mr. Rivera two days before his deposition on September 1, 2023. However, Mr. Rivera testified that he provided Plaintiffs' Counsel with "many" grievances "[b]efore the complaint was filed." Dep. of Rivera at page 124, lines 4-25. Mr. Rivera was added as a Plaintiff to this action on August 31, 2020.

Mr. Rivera's testimony also confirms Plaintiffs' usual practice of producing documents for a witness on the day of or one or two days before the deposition, even though they have had the documents in their possession for months. This practice prejudices Defendants and amounts to improper gamesmanship. Indeed, Plaintiffs recently produced thousands of pages of documents after almost of all the Plaintiffs have been deposed without any explanation.

Although Defendants have repeatedly requested that Plaintiffs produce the missing documents for Messrs. Henry and Rivera or confirm that they no longer can be found, Plaintiffs have ignored all such requests. *See generally* **Aramark Exhibit C** (Oct. 15, 2023 Email from C. Reitmeyer to Y. Huang).

Sincerely,

/s/ *Yolanda Huang*
Yolanda Huang
Attorney for Plaintiffs


/s/ *Charles Reitmeyer*
Charles Reitmeyer
Attorney for Defendant Aramark


Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval, on October 18, 2023, from Emily Wheeling for the filing of this discovery letter.