Peter G. Bertling [SBN 131602]
Jemma Parker Saunders [SBN 227962]
Bertling Law Group
21 East Canon Perdido Street, Suite 204B
Santa Barbara, CA 93101
Telephone: 805-879-7558
Facsimile: 805-962-0722
peter@bertlinglawgroup.com
jemma@bertlinglawgroup.com

Attorneys for Defendant
WELLPATH MANAGEMENT, INC.

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALAMEDA COUNTY MALE PRISONERS** And Former Prisoners, DANIEL GONZALEZ, et al. on behalf of themselves and others similarly situated, <u>as a Class, and Subclass</u>; **ALAMEDA COUNTY FEMALE PRISONERS** And Former Prisoners, JACLYN MOHRBACHER, ERIN ELLIS, DOMINIQUE JACKSON, CHRISTINA ZEPEDA, ALEXIS WAH, AND KELSEY ERWIN, et al on behalf of themselves and other similarly situated,<br><br>                              Plaintiffs,<br>v.<br><br>**ALAMEDA COUNTY SHERIFF'S OFFICE**, ALAMEDA COUNTY, Deputy Joe, Deputy Ignont (sp) Jane ROEs, Nos. 1 – 25; **WELLPATH MANAGEMENT, INC.**, a Delaware Corporation (formerly known as California Forensic Medical Group) a corporation; its Employees and Sub-Contractors, and Rick & Ruth ROEs Nos. 26-50; **ARAMARK CORRECTIONAL SERVICES, LLC**, a Delaware Limited Liability Company; its Employees and Sub-Contractors, and Rick & Ruth ROES Nos. 51-75,<br>                              Defendants. | Case No.: 3:19-cv-07423 JSC<br><br>**NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>  Hearing Date: **July 12, 2024**<br>  Hearing Time: **10:00 a.m.**<br>  Hearing Dept: **8 – 19th Floor**<br><br>*[Declaration, Exhibits, and [Proposed] Order filed concurrently herewith]*<br><br><br>Action Filed: November 12, 2019<br>Judge: Hon. Jacqueline Scott Corley<br>Ctrm: 8—19th Floor |

3:19-cv-07423 JSC

- 0 -
**NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………..ii-iv

NOTICE OF MOTION FOR SUMMARY JUDGMENT……………………………...1-2


MEMORANDUM OF POINTS AND AUTHORITIES

I.      INTRODUCTION AND FACTUAL BACKGROUND SUMMARY……………1

II.     LEGAL STANDARDS AND AUTHORITIES FOR SUMMARY
        JUDGMENT/SUMMARY ADJUDICATION.………………………………..1-3

III.    RELEVANT BACKGROUND …………………………………………………3-4

IV.     ARGUMENT…………………………………………………………...4-31

        A.  *Monell* Liability Standards…………………………………………4-6

        B.  Wellpath's Executive Arguments………………………………………7-8

        C.  Individual Plaintiffs' Claims…………………………………………8-28

            1.  Lawrence Gerrans…………………………………………………8-9

            2.  Darryl Geyer……………………………………………………...9-11

            3.  Daniel Gonzalez…………………………………………………11-13

            4.  Randy Harris…………………………………………………13-16

            5.  Cedric Henry…………………………………………………16-18

            6.  James Mallett…………………………………………………18-20

            7.  David Misch……………………………………………………...20

            8.  Timothy Phillips…………………………………………………...20-22

            9.  Eric Rivera…………………………………………………22-23

            10. Rasheed Tucker…………………………………………………24-25

            11. Eric Wayne……………………………………………………...25-26

            12. Tikisha Upshaw…………………………………………………26-28

        D.  Evidence in Support of Summary Judgment/Summary Adjudication…31

V.      CONCLUSION……………………………………………………………...31

# TABLE OF AUTHORITIES

*Cases*                                                                    *Page(s)*

*Anderson v. Clow,*
   (9th Cir. 1996) 89 F.3d 1399, 1403……………………………………………3

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 250 (1986)…………………………………………………2

*Angel v. Seattle-First Nat'l Bank,*
   653 F.2d 1293, 1299 (9th Cir. 1981)…………………………………...2

*Board of County Com'rs of Bryan County, Okl. v. Brown,*
   520 U.S. 397, 404 (1997)…………………………………………………6

*Castro v. County of Los Angeles,*
   833 F.3d 1060, 1073 (9th Cir. 2016)…………………………………...4

*City of Canton v. Harris,*
   (1989) 489 U.S. 378, 385, 389……………………………………5, 6, 13, 19

*City of Los Angeles v. Heller,*
   475 U.S. 796, 799 (1986)…………………………………………………4

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 323 (1986)…………………………………………………1, 2

*Epstein v. Washington Energy Co.,*
   (9th Cir. 1996) 83F.3d 1136, 1140………………………………………..3

*Gravelet-Blondin v. Shelton,*
   (9th Cir. 2013) 728 F.3d 1086, 1096…………………………………...6, 13, 19

*Harvey v. City of S. Lake Tahoe,*
   No. CIV S-10-1653 KJM EFB PS, 2012 U.S. Dist. LEXIS 51876, at *30 (E.D. Cal.
   Apr. 12, 2012)…………………………………………………………6

*Hernandez Castro v. City of Hanford,*
   546 F.Supp.2d 822, 826 (E.D. Cal. 2008)………………………………...5

**NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1
2

# TABLE OF AUTHORITIES

3

*Cases*                                                                 *Page(s)*

4
5

*L.A. Police Protective League v. Gates,*
    907 F.2d 879, 890 (9th Cir. 1990)……………………………………………..6

6
7

*Lujan v. National Wildlife Federation,*
    504 U.S. 555, 561 (1992)…………………………………………………………2

8
9

*Monell v. Dept. of Soc. Servs. Of New York,*
    436 U.S. 658, 691 (1978)…………………4, 5, 6, 8-9, 11, 13, 16, 18-20, 22-28, 30-31

10
11

*Pembaur v. City of Cincinnati,*
    475 U.S. 469, 483–84 (1986)…………………………………………...…5

12
13

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,*
    130 F.3d 432, 438 (9th Cir.1997)…………………………………………6

14
15

*Price v. Sery,*
    513 F.3d 962, 966 (9th Cir. 2008)………………………………………...5

16
17

*Quintanilla v. City of Downey,*
    84 F.3d 353, 355 (9th Cir. 1996)…………………………………………4

18
19

*Segura v. City of La Mesa,*
    (S.D.CA 2022) 647 F.Supp.3d 926, 940………………………………6, 13, 19

20
21

*Taylor v. List,*
    880 F.2d 1040,1045-1046, 1989 U.S. App. LEXIS 10186……………………………2

22
23

*Trevino v. Gates,*
    99 F.3d 911, 918 (9th Cir. 1996………………………………………………6

24
25

*Vandenburg v. Cty. Of Riverside,*
    722 F.App'x 657, 658 (9th Cir. 2018)…………………………………………5

26
27

*///*

28

iii

# TABLE OF AUTHORITIES

*Cases*                                                                                                    *Page(s)*

*Whitaker v. Garcetti,*
    486 F.3d 572, 581 (9th Cir. 2007)…………………………………………………5, 30

*Young v. City of Visalia,*
    687 F.Supp.2d 1141, 1149 (E.D. Cal. 2009…………………………………………6

3:19-cv-07423 JSC

iv
**NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on Thursday, July 12, 2024, at 10:00 a.m. or as soon thereafter as the matter may be heard in the above-entitled court located at 450 Golden Gate Ave., San Francisco, California, Courtroom 8, Defendant WELLPATH MANAGEMENT, INC. ("Wellpath"), respectfully will and hereby does move the Court for summary judgment on the ground that no plaintiff can set forth the requisite elements of their *Monell* claims against Wellpath.  By this motion, Wellpath moves for summary judgment/summary adjudication on the following bases:

1.    Third Claim for Relief: Deprivation of Federal Civil Rights under 42 U.S.C. §1983, as to each individual plaintiff fails to demonstrate they possessed a constitutional right of which they were deprived; a Wellpath policy, practice, or custom was deliberately indifferent to their constitutional right; and that the Wellpath policy, practice, or custom at issue was the moving force behind, or caused the constitutional violation alleged.

2.    Fourth Claim for Relief: Deprivation of Federal Civil Rights under 42 U.S.C. §1983, as to each individual plaintiff fails to demonstrate they possessed a constitutional right of which they were deprived; a Wellpath policy, practice, or custom was deliberately indifferent to their constitutional right; and that the Wellpath policy, practice, or custom at issue was the moving force behind, or caused the constitutional violation alleged.

This motion is based upon this Notion of Motion, and Motion, the accompanying Memorandum of Points and Authorities, the Declaration attached to this Motion, all pleadings, exhibits, and papers on file in this action, and upon such other matters as may be presented upon the hearing of this motion.

Defendant Wellpath moves the above-entitled court to ender judgment in its favor, pursuant to Rule 56, Federal Rules of Civil Procedure, dismissing the above-entitled action on the grounds that there is no genuine issue as to any material fact and Defendant

3:19-cv-07423 JSC

- 1 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Wellpath is entitled to judgment as a matter of law.  In the alternative, Defendant Wellpath moves for summary adjudication of the issues.

Respectfully submitted,

Dated: May 16, 2024                     BERTLING LAW GROUP


*/s/ Peter G. Bertling*
Peter G. Bertling
Jemma Parker Saunders
Attorneys for Defendant
WELLPATH MANAGEMENT, INC.

- 2 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND FACTUAL BACKGROUND SUMMARY

Plaintiffs Lawrence Gerrans, Darryl Geyer, Daniel Gonzalez, Randy Harris, Cedric Henry, James Mallett, David Misch, Timothy Phillips, Eric Rivera, Rasheed Tucker, Eric Wayne, and Tikisha Upshaw (collectively, "Plaintiffs") bring their claims individually against Wellpath, following denial of their motion for class certification as to Wellpath. See ECF No. 322.  Each Plaintiff herein has alleged only a §1983 claim pursuant to *Monell* against Wellpath spread over two nearly identical causes of action.  No individual Wellpath health care providers are named as defendants, and no California state law claims for negligence involving the standard of care are alleged.  Rather, each Plaintiff claims separately that Wellpath, as the medical provider for the Santa Rita Jail and Alameda County Sheriff's Office, operated its medical delivery system placing "profits over patients" and per the Fifth Amended Complaint ("5AC,") "Defendants subjected Plaintiffs ~~and the members of the Plaintiff class they represent,~~ [stricken from the claims as to Wellpath] to a substantial risk of serious harm and injury from the harmful and inhumane effects of denial and delay of necessary and needed medical care and the inadequate medical care, when provided."  5AC, ECF No. 180, ¶236.

Given the dearth of evidence of any entity-related deliberate indifference on the part of Wellpath, Wellpath now moves for summary judgment as to each Plaintiff individually, or in the alternative, summary adjudication as to some or all of Plaintiffs' individual claims.

## II.  LEGAL STANDARDS AND AUTHORITIES FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must

3:19-cv-07423 JSC

- 1 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324. The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477U.S. at 322; *Anderson*, 477 U.S. at 252. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 252). The Non-moving party must support their opposition to the motion with facts. The Courts have said:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presume[e]that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Federation*, (1992) 504 U.S. 555. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true. *Lujan v. Defenders of Wildlife, supra*, at 561.

General allegations and allegations based on information and belief, without providing any supporting facts, are not sufficient to meet a party's burden of proof. Based on the allegations presented by Plaintiffs, they have not established their claims as set forth below. The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678.

In *Taylor v. List*, the Court said, "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data. *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)." *Taylor v. List*, 880 F.2d 1040,1045-1046, 1989 U.S. App. LEXIS 10186. "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

1  dismiss." 2-12 Moore's Federal Practice – Civil §12.34, citing in part *Anderson v. Clow*
2  (9th Cir. 1996) 89 F.3d 1399, 1403 (conclusory allegations of law and unwarranted
3  inferences are insufficient to defeat motion to dismiss for failure to state claim); *Epstein*
4  *v. Washington Energy Co.* (9th Cir. 1996) 83F.3d 1136, 1140. "While facts must be
5  accepted as alleged, this does not automatically extend to bald assertions, subjective
6  characterizations, or legal conclusions." 2-12 Moore's Federal Practice – Civil § 12.34
7  (citations omitted.)

8       Here, Plaintiffs have no support for their *Monell* claims against Wellpath.  There is
9  no factual data in support of any Plaintiff's *Monell* claims against Wellpath, each Plaintiff
10 has plead and demonstrated nothing more than conclusory allegations, devoid of any
11 factual support (despite what Plaintiffs' experts contend), and Summary Judgment of
12 each Plaintiff's claim against Wellpath is appropriate.

13      **III.      RELEVANT BACKGROUND**

14      Each Plaintiff herein alleges different medical issues, with divergent and unrelated
15 outcomes allegedly incurred during their incarceration at the Santa Rita Jail.  Wellpath is
16 the contracted medical provider at the Santa Rita Jail, and as reflected in the various
17 medical records of the individual plaintiffs, provided primary care, specialty care and
18 appropriately referrals to outside providers and specialties when medically necessary.
19 The individual plaintiffs contend Wellpath operates its program based on a practice of
20 cost-cutting rather than providing constitutionally sound medical care in the jail.  Indeed,
21 this is the only claim surviving in this litigation, brought via *Monell* on behalf of each
22 plaintiff individually.  Given this is not a class action, to prevail on their separate claims,
23 each plaintiff must prove a *Monell* violation without regard to their co-plaintiffs' care and
24 claims.  Plaintiffs cannot meet this burden.

25      The remaining plaintiffs, Lawrence Gerrans, Darryl Geyer, Daniel Gonzalez,
26 Randy Harris, Cedric Henry, James Mallett, David Misch, Timothy Phillips, Eric Rivera,
27 Rasheed Tucker, Eric Wayne, and Tikisha Upshaw cannot demonstrate a *Monell*
28 violation by Wellpath.  This is true because not only is there no evidence of an

3:19-cv-07423 JSC

- 3 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

unconstitutional policy in each of these plaintiffs' cases, but equally important, is the total lack of causation or causal link between any of their complaints and the alleged *Monell* violation.   Based on the foregoing and as discussed more fully below, Wellpath respectfully requests its motion for summary judgment be granted as to each and every plaintiff, or in the alternative, for the Court to grant summary adjudication.

## IV.    ARGUMENT

### A.  *Monell* **Liability Standards**

The only claim each Plaintiff has made against Wellpath is a *Monell* claim under §1983, plead in the third and fourth causes of action in the 5AC.  "[A] municipality (or a company such as CFMG) cannot be held liable under §1983 on a *respondeat superior* theory." *Monell v. Dept. of Soc. Servs. Of New York*, 436 U.S. 658, 691 (1978). Municipal liability under 42 U.S.C. §1983 exists only "when execution of a government's policy or custom . . . inflicts [constitutional] injury . . . ." *Id*. At 694. "The Court has further required that the plaintiff demonstrate that the policy or custom of a municipality reflects deliberate indifference to the constitutional rights of its inhabitants." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016).

Moreover, to maintain a claim for municipal liability, a Plaintiff must show that there was an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). Plaintiffs cannot make this offer of proof, and none of Wellpath's policies or procedures in the Santa Rita Jail were deficient or caused any injuries to any plaintiff. Vicarious liability for §1983 causes of action is specifically disallowed by *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

To establish municipal liability under §1983, each Plaintiff must demonstrate, at a minimum: (1) the Plaintiff possessed a constitutional right of which they were deprived; (2) the municipality had a policy, practice, or custom; (3) that policy, practice, or custom is deliberately indifferent to Plaintiff's constitutional right; and (4) the policy, practice, or custom at issue is "the 'moving force' behind" the constitutional violation alleged.

3:19-cv-07423 JSC

- 4 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007).  The "policy, custom, or practice" requirement of *Monell* claims stems from the core principle ensconced in *Monell* that "'municipal liability under §1983 attaches where—**and only where**—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton v. Harris*, (1989) 489 U.S. 378, 389 (quoting *Pembaur v. City of Cincinnati*, (1986) 475 U.S. 469, 483–84 (emphasis added).

Therefore, Plaintiffs must show at least one of the following, besides the other elements, for liability to attach:

(1) conduct pursuant to an official policy inflicted the injury;

(2) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;"

(3) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or

(4) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). Under *Monell*, "[a] single mistake does not give rise to municipal liability" *Vandenburg v. Cty. Of Riverside*, 722 F.App'x 657, 658 (9th Cir. 2018) and "proof of random acts or isolated events are insufficient to establish custom, policy or practice." *Hernandez Castro v. City of Hanford*, 546 F.Supp.2d 822, 826 (E.D. Cal. 2008). *Accord Tuttle*, 471 U.S. at 823-824 ("proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."). When alleging liability under *Monell*, Plaintiffs must proffer facts on **all** of the following:

a. Identify the challenged policy or custom;

b. Explain how the policy or custom is deficient;

c. Explain how the policy or custom caused the harm; and

d. Reflect how the policy or custom amounted to deliberate indifference, i.e.,

show how the deficiency involved was obvious and the constitutional injury was likely to occur.

E.g., *Harvey v. City of S. Lake Tahoe*, No. CIV S-10-1653 KJM EFB PS, 2012 U.S. Dist. LEXIS 51876, at *30 (E.D. Cal. Apr. 12, 2012), citing *Young v. City of Visalia*, 687 F.Supp.2d 1141, 1149 (E.D. Cal. 2009). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); accord *L.A. Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990) ("proof of random acts or isolated events are insufficient to establish custom").

Furthermore, in the context of a *Monell* claim every Plaintiff has the burden to establish causation.  It is not enough for a §1983 Plaintiff merely to identify conduct properly attributable to the municipality.  The Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. See, e.g. *Board of County Com'rs of Bryan County, Okl. v. Brown*, (1997) 520 U.S. 397, 404.  That is, a Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.  *Id.*  A Plaintiff must establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Segura v. City of La Mesa*, (S.D.CA 2022) 647 F.Supp.3d 926, 940, citing *City of Canton, Ohio v. Harris*, (1989) 489 U.S. 378, 385.  To meet the "moving force" requirement, a Plaintiff "must show both causation-in-fact and proximate causation." *Gravelet-Blondin v. Shelton*, (9th Cir. 2013) 728 F.3d 1086, 1096.

Each Plaintiff herein must have evidence that Wellpath's policies at the Santa Rita Jail were the "moving force" behind the alleged constitutional violation.  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997).  Along establishing a Wellpath policy, practice, or custom was deliberately indifferent to each Plaintiff's constitutional right, causation is also required element of a *Monell* claim.

1

2

### B. *Wellpath's Principal Arguments*

At its' essence, Plaintiffs' 5AC only states (in various iterations): "Defendants subjected Plaintiffs ~~and the members of the Plaintiff class they represent~~, [stricken from the claims as to Wellpath] to a substantial risk of serious harm and injury from the harmful and inhumane effects of denial and delay of necessary and needed medical care and the inadequate medical care, when provided. 5AC, ECF No. 180, ¶236. And yet, there has been no specific Wellpath policy or procedure identified by Plaintiff which is alleged to be deficient. At best, Plaintiff have fleshed out this statement by alleging that Wellpath "places profits above patient care" with no factual evidence of the same.

Rather, all factual evidence supports the position that all relevant Wellpath policy and procedures are comprehensive and reflect nationally accepted correctional healthcare standards. They reflect no evidence of disregard for the inmate population and their associated healthcare needs. As Ms. Pearson has articulated in significant detail in her reports dated February 14, 2024 and March 21, 2024, the policies well as the actual events noted in the medical records of the twelve Plaintiff provide no evidence Wellpath placing "profits before patients." Declaration of Peter G. Bertling in Support of Motion for Summary Judgment ("Bertling Mtn for Summary Judgment Dec.") at ¶2, p. 78, and ¶3, pp. 7-8. There are clear and comprehensive policies outlining specialty care referrals, hospital care, emergency department visits, and multiple other healthcare interventions that must be accomplished off-site. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 76-77. Of course, Wellpath is and was acutely aware of the fact that inmate/patients are going to require outside/off-site care, and of course it is allotted for in the Contract with Alameda County. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 77. There is no evidence in the policies, nor the medical records, nor the testimony of any witness that indicates any disregard for patient care by denying access or creating delays for financial gain.

///

///

**NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Neither in policy nor in practice as exemplified and evidenced with the Plaintiffs' care in this case, did Wellpath or its staff factor costs, profits or any other financial motivation during medical decision making.

Furthermore, no Plaintiff will be able to meet their individual burden to establish causation related to their individual *Monell* claims. No policy, procedure or practice has caused or was the moving force of harm to any Plaintiff. As causation is a required element of a *Monell* claim and Plaintiffs simply cannot demonstrate that any of Wellpath's policies, procedures or practices is or was causally related to the injuries of which Plaintiffs claim, this is a secondary basis upon which to grant summary judgment or summary adjudication pursuant to FRCP Rule 56.

### C. Individual Plaintiffs' Claims[1]

### 1. <u>Lawrence Gerrans</u>

Plaintiff Gerrans alleges "he suffered a serious fungal or bacterial infection in his right foot, , so that even today, he has trouble walking." 5AC, ECF No. 180, ¶14.3.2.

There is no evidence of any disregard on the part of Wellpath related to Mr. Gerrans great right toenail. Mr. Gerrans submitted a Sick Call request and was promptly scheduled for an evaluation which he then refused to attend. He submitted another request which again resulted in being scheduled for an evaluation the following day. He was evaluated by a licensed nurse who also contacted a provider (an M.D./P.A.) to obtain orders for dressing changes and antibiotics. Dressing changes were completed. Antibiotics were offered and attempted to be given; however, Mr. Gerrans chose not to take all his antibiotics by choosing not to report to "Medication Pass." Furthermore, there is no evidence Mr. Gerrans had any ongoing complaints regarding his toe while at the Santa Rita Jail, as he had demonstrated an understanding of how to access healthcare services via the Medical Request Form system, but he submitted no further requests.

---

[1]  While each plaintiff has class action claims pending against Defendant Alameda County and other claims against defendant Aramark, only the medical claims are discussed herein.

**NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 12-13; Bertling Mtn for Summary Judgment Dec. at ¶9, in total.

Mr. Gerrans' long term and pre-existing ambulation difficulties (which he related to a long-standing sports career and associated injuries) are completely unrelated to his toe and self-proclaimed staph infection, which has no medical basis, evidence, or diagnosis by a trained and licensed provider.   Bertling Mtn for Summary Judgment Dec. at ¶2, p. 13.  There is no evidence of disregard on the part of Wellpath related to Mr. Gerrans' claims, nor is there any evidence Wellpath's care and treatment caused any harm to Mr. Gerrans.

Importantly, there is no policy attributable to Wellpath as applied to Mr. Gerrans indicative of deliberate indifference.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 13. Absent any unconstitutional policy, it is an impossibility that such policy could have caused any injury to Mr. Gerrans as required to be proven by *Monell*.  There is no evidence of any financial considerations playing any role in Mr. Gerrans' care, nor any instances of undue delay in care triggered by profiteering on the part of Wellpath. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 13, 73-78; Bertling Mtn for Summary Judgment Dec. at ¶9.

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Gerrans' *Monell* claims in the 5AC.

## 2. **Darryl Geyer**

Plaintiff Geyer's claims focus on an alleged infection in his knee sustained from a fall in the Santa Rita Jail.  Mr. Geyer claims he fell and split open his knee, for which he was sent to the Emergency Department.  He claims when he returned from the hospital with fresh sutures, the doctor ordered that he be provided with a lower tier, and lower bunk cell. The jail (not Wellpath) "refused" to provide him with a lower tier, lower bunk and in climbing into the upper bunk, he tore his sutures and Wellpath returned him to the hospital for care. Yet again, following the second return from the hospital, when climbing up and down from the upper bunk, he tore his sutures and Wellpath sent him back to the

**NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

hospital for a third visit. Plaintiff claims Wellpath housed in him the Outpatient Housing Unit ("OPHU") and provided unsanitary care related to the wound, which was by then infected and poorly cared for.  Mr. Geyer claims prior to his release from Santa Rita Jail, he contracted COVID and was transferred to a temporary housing provided by Alameda County where the infection in his knee resolved, although weakness and loss of sensation were present.  5AC, ECF No. 180, ¶14.3.12.

However, the documented medical records from Mr. Geyer's Wellpath chart indicate from the time he fell sustaining a laceration to his knee, Wellpath staff were responsive and provided ongoing care provided by multiple licensed physicians and nursing staff, as well as specialists and numerous hospital referrals for emergency care, as well as surgical interventions, all paid for per contract by Wellpath. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 19 – 21, 73-81; Bertling Mtn for Summary Judgment Dec. at ¶10; Bertling Mtn for Summary Judgment Dec. at ¶8.  Mr. Geyer was housed in the OPHU for a significant portion of his incarceration, and he was receiving medications, assessments, dressing changes, Incision & Draining ("I&D") procedures, sutures/stitches, vital signs, oral and intravenous IV antibiotics, wound cultures, and recommendations to custody for accommodations to meet his healthcare needs (housing recommendations, equipment recommendations).  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 20; Bertling Mtn for Summary Judgment Dec. at ¶10.

As for Mr. Geyer's allegations that Wellpath staff provided unsanitary treatment for his wound and infection, there is no evidence that this occurred. Conversely, the medical documentation includes specific notations regarding sterile equipment, cleansing of the wounds, etc. Plaintiff Geyer simply has no evidence supporting this allegation. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 20; Bertling Mtn for Summary Judgment Dec. at ¶10.

While Mr. Geyer did suffer a knee laceration that became infected during his incarceration at the Santa Rita Jail, this occurred in spite of reasonable and appropriate treatment. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 21.  There was no

3:19-cv-07423 JSC

NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

disregard for his clinical condition exhibited by Wellpath. He received professional clinical assessments, with corresponding reasonable medical decision making, treatments, procedures, medications, outside referrals and treatments, surgery, medical housing, and diagnostic testing. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 21; Bertling Mtn for Summary Judgment Dec. at ¶10. Although his infection was complicated and prolonged, this has no relation to any disregard on the part of Wellpath. There is no evidence of disregard on the part of Wellpath related to Mr. Geyer's claims, nor is there any evidence Wellpath's care and treatment caused any harm to Mr. Geyer. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 21, 73-81.

There is no policy attributable to Wellpath as applied to Mr. Geyer indicative of deliberate indifference. Absent any unconstitutional policy, it is an impossibility that such policy could have caused any injury to Mr. Geyer as required to be proven by *Monell*. There is no evidence of any financial considerations playing any role in Mr. Geyer's care, on the contrary, significant expenditures on the part of Wellpath to treat Mr. Geyer's infection were incurred given the vast access to outside care and specialists, and frequent and responsive care provided inside Santa Rita Jail by Wellpath. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 21, 73-81; Bertling Mtn for Summary Judgment Dec. at ¶10. Simply, there are no instances of undue delay or withholding of care triggered by profiteering on the part of Wellpath.

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Geyer's *Monell* claims in the 5AC.

### 3.  Daniel Gonzalez

Plaintiff Gonzalez alleges he suffered a severe tooth ache, and despite multiple requests for medical attention, Santa Rita Jail and defendant Wellpath failed to provide him with dental care, until he was in such serious distress, that he threatened self-harm. Mr. Gonzalez claims because of such a lengthy delay, and severe infection, his tooth was pulled. He claims if dental care had been timely provided, his tooth could have been repaired and saved.  5AC, ECF No. 180, ¶14.3.1.

3:19-cv-07423 JSC

- 11 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Gonzalez's claims are not supported by the evidence in his medical records. Firstly, there is no evidence Mr. Gonzalez ever threatened to harm himself or was otherwise suicidal related to his tooth or otherwise at the Santa Rita Jail.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 24; Bertling Mtn for Summary Judgment Dec. at ¶11.  Furthermore, Mr. Gonzalez' medical record contains an overwhelming number of refusals for care including refusals for dental care. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 25; Bertling Mtn for Summary Judgment Dec. at ¶11.  Mr. Gonzalez was scheduled and offered care on multiple occasions whereby he *chose* to refuse to be seen. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 25; Bertling Mtn for Summary Judgment Dec. at ¶11. However, regardless of his refusals for care, numerous notations in his medical record document evaluation of infection with no presence of infection, no signs of infection, no abscess, and no fevers. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 25; Bertling Mtn for Summary Judgment Dec. at ¶11.  Although Mr. Gonzalez did have tooth decay and a cracked tooth, none of those conditions required antibiotics. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 25; Bertling Mtn for Summary Judgment Dec. at ¶11.  In fact, the Wellpath dentist described the treatment options available to Mr. Gonzalez for the decayed and cracked teeth, and Mr. Gonzalez opted for fillings versus extraction. He did not have any teeth extracted during the incarceration – refuting the allegations in the Complaint. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 25; Bertling Mtn for Summary Judgment Dec. at ¶11; 5AC, ECF No. 180.  Further, to address the important symptom of dental pain, Mr. Gonzalez was provided with prescriptions for both Tylenol and Ibuprofen to address his toothache.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 25; Bertling Mtn for Summary Judgment Dec. at ¶11.

In short, Mr. Gonzalez had access to medical and dental care. He was evaluated by licensed healthcare staff including a dentist and was scheduled to be seen either by medical and/or dental for evaluations and treatment at clinically reasonable intervals. There is no evidence of disregard on the part of Wellpath related to Mr. Gonzalez's claims, nor is there any evidence Wellpath's care and treatment caused any harm to Mr.

3:19-cv-07423 JSC

- 12 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    Gonzalez.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 25; Bertling Mtn for

2    Summary Judgment Dec. at ¶11.

3        The only policy at issue with Mr. Gonzalez's claims against Wellpath is arguably

4    the dental policy.  There is no evidence that the policy in and of itself, or as applied to

5    Mr. Gonzalez is indicative of systemic deliberate indifference by Wellpath.  Indeed, at

6    best, plaintiffs' own dental expert Dr. Rosenberg has stated only that a better x-ray should

7    have been taken of one tooth, but he simultaneously admitted he could not conclude that

8    omission caused any damage to Mr. Gonzalez.  Bertling Mtn for Summary Judgment

9    Dec. at ¶20, pp. 11-12. Dr. Rosenberg's testimony goes no further than critiquing the

10   individual dentist's medical decision-making, which cannot form the basis of any

11   possible *Monell* claim. There is no evidence of any financial considerations playing any

12   role in Mr. Gonzalez's dental care, rather, it was Mr. Gonzalez's own interference in his

13   care and declination to be evaluated which created any delay in his receipt of dental care.

14   Bertling Mtn for Summary Judgment Dec. at ¶2, p. 25, Bertling Mtn for Summary

15   Judgment Dec. at ¶11. Equally important, there is no evidence (even promoted by Mr.

16   Gonzalez's experts), that indicate any of the care provided by Wellpath to him caused his

17   alleged injuries or damages.  Bertling Mtn for Summary Judgment Dec. at ¶20, pp. 11-12.

18   Mr. Gonzalez cannot establish Wellpath's care was a "moving force" behind the alleged

19   injury to meet the causation requirement of *Monell*.  E.g. *Segura v. City of La Mesa*,

20   (S.D.CA 2022) 647 F.Supp.3d 926, 940, citing *City of Canton, Ohio v. Harris*, (1989)

21   489 U.S. 378, 385; *Gravelet-Blondin v. Shelton*, (9th Cir. 2013) 728 F.3d 1086, 1096.

22       Simply, there are no instances of undue delay or withholding of care triggered by

23   profiteering on the part of Wellpath's dental program.  Summary Judgment should be

24   granted in favor of Wellpath as to Plaintiff Gonzalez's *Monell* claims in the 5AC.

25       **4.  Randy Harris**

26       Plaintiff Harris' allegations against Wellpath are meandering and primarily focused

27   on injuries sustained during a fall at Santa Rita Jail and Wellpath's claimed substandard

28   response to the injury in terms of treatment and pain management.

3:19-cv-07423 JSC

- 13 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Specifically, Mr. Harris claims he suffered a seizure which caused him to fall down approximately eleven steps. 5AC, ECF No. 180, ¶14.3.5.  After receiving a trauma evaluation at Eden Medical Center, Mr. Harris was prescribed Neurontin (Gabapentin) and Hydrocodone/Acetaminophen (NORCO) and issued a cervical ("C") collar.  After his return to Santa Rita Jail, Mr. Harris claims he was informed that Santa Rita Jail "does not offer the medications he was prescribed," and that his pain management was to consist of over the counter (OTC) Tylenol.  Mr. Harris claims as a result of this fall, he cannot walk more than 10 paces at a time, cannot shower without a shower chair and has developed ulcers from the "excessive use of Tylenol . . causing him to vomit."  Mr. Harris contends his condition has deteriorated and "surgical intervention is necessary to relieve the symptoms of his condition" but surgery will not be ordered because Santa Rita Jail does not have the facility, nor does Wellpath have the means for Mr. Harris to appropriately recovery from spinal surgery.  Mr. Harris finally claims Wellpath has "cut off" his pain medications.  5AC, ECF No. 180, ¶148.

15
16
17
18
19
20
21

There is no evidence to support Mr. Harris' contentions.  Wellpath staff provided care, assessments, examinations, referrals to the hospital, numerous medication options, as well as extensive accommodations and interventions to address a *chronic and degenerative issue* (not an acute fall) which was repeatedly documented by diagnostic testing.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 35; Bertling Mtn for Summary Judgment Dec. at ¶12.  Mr. Harris was provided with an evaluation by a neurosurgeon, paid for entirely by Wellpath.

22
23
24
25
26
27
28

Mr. Harris' ongoing contradictions regarding his history (seizure and related medications), as well as the subjective/objective contradictions created challenges for Wellpath staff in managing his care.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 36; Bertling Mtn for Summary Judgment Dec. at ¶12.  Regardless, they continued to address his concerns and provide treatment throughout his incarceration. Mr. Harris' Wellpath medical record exceeds 2100 pages of healthcare delivery, encounters, and treatment. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 36; Bertling Mtn for

3:19-cv-07423 JSC

- 14 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    Summary Judgment Dec. at ¶12.  Multiple referrals to the Emergency Department were

2    done for further clinical evaluation, which by contract were paid for by Wellpath.

3    Bertling Mtn for Summary Judgment Dec. at ¶2, p. 36; Bertling Mtn for Summary

4    Judgment Dec. at¶8; Bertling Mtn for Summary Judgment Dec. at ¶12. At no point was it

5    recommended by the emergency department for Mr. Harris to follow up with a

6    neurologist.  Bertling Mtn for Summary Judgment Dec. at ¶¶2, pp. 30-36; Bertling Mtn

7    for Summary Judgment Dec. at ¶12.  The emergency room performed CTs, again at

8    Wellpath's expense, but an MRI was not recommended. Bertling Mtn for Summary

9    Judgment Dec. at ¶¶2, pp. 30-36; Bertling Mtn for Summary Judgment Dec. at ¶8;

10   Bertling Mtn for Summary Judgment Dec. at ¶12.  Wellpath providers similarly found no

11   neurological abnormalities warranting an MRI, however in response to Mr. Harris'

12   continued reports of pain with no improvement (despite appropriate therapy) Wellpath

13   obtained specialty neurosurgical consultation, and it was not until this time, imaging with

14   MRI was recommended.  Bertling Mtn for Summary Judgment Dec. at ¶¶2, pp. 30-36;

15   Bertling Mtn for Summary Judgment Dec. at ¶12.  However, Mr. Harris was released

16   from custody prior to completion of the MRI.  Bertling Mtn for Summary Judgment Dec.

17   at ¶¶2, p. 35; Bertling Mtn for Summary Judgment Dec. at ¶12.  Given these undisputed

18   facts, there is no evidence Wellpath ever "refused" to provide Mr. Harris specialty care

19   due to cost or any other consideration.

20        Suffice to say, Mr. Harris received an extensive amount of medical care during his

21   incarceration. He was specifically told that it was unreasonable to expect no pain with his

22   chronic, preexisting, and degenerative spine issues. He likely was not pain free; however,

23   there is no evidence of disregard on the part of Wellpath in providing care to Mr. Harris,

24   nor is there any evidence Wellpath's care and treatment caused any harm to Mr. Harris.

25   Bertling Mtn for Summary Judgment Dec. at ¶2, p. 37; Bertling Mtn for Summary

26   Judgment Dec. at ¶12.

27        There is no policy attributable to Wellpath as applied to Mr. Harris indicative of

28   deliberate indifference.  Absent any unconstitutional policy, it is an impossibility that

NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    such policy could have caused any injury to Mr. Harris as required to be proven by

2    *Monell*.

3        Moreover, there is no evidence of any financial considerations playing any role in

4    Mr. Harris' medical care.  He suffered from chronic, degenerative conditions, and

5    received significant access to outside care and specialists, and frequent and responsive

6    care provided inside Santa Rita Jail by Wellpath.  There is no evidence of any clinical

7    recommendations being denied by Wellpath based on cost, nor is there any evidence of

8    undue delay or withholding of care triggered by profiteering on the part of Wellpath.

9        Summary Judgment should be granted in favor of Wellpath as to Plaintiff Harris'

10   *Monell* claims in the 5AC.

11      **5.  Cedric Henry**

12       Plaintiff Henry's claims center on his COVID infection in the Santa Rita Jail.  Mr.

13   Henry claims he caught COVID "multiple times" and Wellpath provided no medical

14   treatment, "not even a cough drop."  Mr. Henry then claims while he was still

15   symptomatic, the jail (not Wellpath) attempted to move him into general population and

16   when he protested, the jail (not Wellpath) retaliated by placing Mr. Henry in the "hole"

17   for 48 hours.  He claims his COVID condition worsened so he was moved to the OPHU.

18   Mr. Henry finally alleges that while he was housed in the OPHU he had terrible diarrhea

19   and was very hungry. He claims to have "long haul covid" which he attributes to the care

20   he received from Wellpath during the pandemic.  5AC, ECF No. 180, ¶14.3.3.  To begin,

21   Mr. Henry has alleged that Wellpath did not provide any medical treatment, "not even a

22   cough drop." 5AC, ECF No. 180, ¶14.3.3.  This is patently untrue. There are 336 pages

23   of medical records outlining the various encounters, medical housing entries, medication

24   orders, nursing and provider evaluations, quarantine monitoring, diagnostic testing, and

25   other medically related interventions. Bertling Mtn for Summary Judgment Dec. at ¶2,

26   p. 41; Bertling Mtn for Summary Judgment Dec. at ¶13.  There are 68 pages (with an

27   average of 25 entries per page) of medication administration records, which also

28   document the numerous times that Mr. Henry chose to refuse Medication Pass and

receive his prescribed and scheduled medications in addition to extensive "refusals" for healthcare services. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 41; Bertling Mtn for Summary Judgment Dec. at ¶13.

Regarding his COVID treatment, Mr. Henry was provided with diagnostic testing by Wellpath (with two tests done to confirm positive or negative COVID results); chest x-ray (which was negative), quarantining of individuals; provided monitoring in terms of vital signs, oxygen saturation levels; and focused assessments by a licensed nurses, as well as medications to address symptoms. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 42; Bertling Mtn for Summary Judgment Dec. at ¶13. Mr. Henry was monitored every day while in quarantine with vital signs, oxygen levels, and a focused symptom assessment conducted by a licensed nurse done each day. Upon release from quarantine, Mr. Henry did not request any healthcare services. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 42; Bertling Mtn for Summary Judgment Dec. at ¶13.

Mr. Henry had numerous encounters regarding the presence of his intermittent headaches. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 42-43; Bertling Mtn for Summary Judgment Dec. at ¶13. At the time, COVID was a new virus with limited confirmed medical data. The CDC was issuing ongoing guidelines and recommendations that were changing sometimes daily, as information was changing regarding the science of a virus that was completely unknown. Mr. Henry – as well as hundreds of thousands of Americans – was unfortunately infected with the virus. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 43. However, Wellpath was in no way indifferent to his condition or healthcare needs. Wellpath monitored and treated each inmate, including Mr. Henry, based upon the guidelines and directives available from the scientific community. Wellpath's commitment and implementation of the monitoring and treatment options clearly reveals no disregard for Mr. Henry's health.

There is no evidence of disregard on the part of Wellpath related to Mr. Henry's claims, nor is there any evidence Wellpath's care and treatment caused any harm to Mr. Henry. Acquiring "long haul COVID" is not in and of itself evidence of Wellpath's

- 17 -

3:19-cv-07423 JSC

NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

deliberate indifference to Mr. Henry.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 43.  Evaluation of Mr. Henry's headaches did not have any documented neurological abnormalities during his medical provider examinations by Wellpath, nor did he have any red flags which would warrant any advanced imaging or specialty consultation.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 43; Bertling Mtn for Summary Judgment Dec. at ¶13. In fact, no provider recommended this occur, and therefore Wellpath never refused to provide him specialty care due to cost or any other consideration.  Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 41-43; Bertling Mtn for Summary Judgment Dec. at ¶13. There is no evidence that Wellpath withheld or delayed care to Mr. Henry to increase its' profits or bottom line.  Wellpath provided the only care for COVID-19 known at the time, and its policies and procedures related to COVID reflect an ongoing, responsive and dynamic effort to provide care for a novel virus in a jail setting.

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Henry's *Monell* claims in the 5AC.

### 6.  James Mallett

Plaintiff Mallett alleges he developed an abscess which became infected during his incarceration in the Santa Rita Jail.  The infection was cultured and was positive for MRSA and claims Wellpath improperly managed his infection.  He further claims he developed a second infection in his ear which was also allegedly improperly managed. Besides his allegations related to his infections, Mr. Mallett also claims Wellpath's only medical care for the alleged hand fracture was "to provide James Mallett with an ace bandage" and that Wellpath failed to provide care for preexisting back and knee injuries. 5AC, ECF No. 180, ¶14.3.10.  Over the course of his incarcerations, Mr. Mallett received several courses of antibiotics, antifungals, oral antibiotics, antibiotic ear drops, Debrox for wax, and antihistamines to help resolve his recurring infections by Wellpath. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 54; Bertling Mtn for Summary Judgment Dec. at ¶14.  He was ultimately seen by an ENT at Highland Hospital which was paid for per contract by Wellpath. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 54; Bertling

3:19-cv-07423 JSC

- 18 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Mtn for Summary Judgment Dec. at ¶8; Bertling Mtn for Summary Judgment Dec. at ¶14. The ENT did not have any recommendations beyond what had already been attempted by Wellpath, except to encourage an audiogram to evaluate his hearing. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 54; Bertling Mtn for Summary Judgment Dec. at ¶14. Wellpath arranged for those appointments as well, and Mr. Mallett was noted to have mild to moderate hearing loss in his left ear with a recommendation to use a hearing aid, which he declined on two separate occasions. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 54; Bertling Mtn for Summary Judgment Dec. at ¶14. There was no disregard exhibited for Mr. Mallett's chronic ear condition and long-term hearing loss, for which he chose not to accept the offered treatment option. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 54; Bertling Mtn for Summary Judgment Dec. at ¶14.

Moreover, plaintiff Mallett has proffered no evidence that his alleged hearing loss was caused by any of Wellpath's care and treatment at the Santa Rita Jail. In fact, his own expert, Dr. Franco-Parades has stated "Q.: Can you state, with any degree of medical probability, what caused [Mr. Mallett's] hearing loss that is documented on the January 28, 2022, study? A.: No, I can't". Bertling Mtn for Summary Judgment Dec. at ¶21, p. 16.

Therefore, plaintiff Mallett cannot establish the essential element of causation for his *Monell* claim. There is no evidence from Mr. Mallett's experts or otherwise, that establish Wellpath's care was a "moving force" behind the alleged injury to meet the causation requirement of *Monell*. E.g. *Segura v. City of La Mesa*, (S.D.CA 2022) 647 F.Supp.3d 926, 940, citing *City of Canton, Ohio v. Harris*, (1989) 489 U.S. 378, 385; *Gravelet-Blondin v. Shelton*, (9th Cir. 2013) 728 F.3d 1086, 1096.

Regarding his MRSA skin infection, Mr. Mallett was evaluated by an infectious disease physician who appropriately suspected MRSA. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 54; Bertling Mtn for Summary Judgment Dec. at ¶14. Mr. Mallet was treated with an appropriate course of antibiotics for a MRSA skin infection. He

NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

further received timely and appropriate care of his recurrent ear infections and other problems by Wellpath providers and outside specialists.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 54; Bertling Mtn for Summary Judgment Dec. at ¶14.

There is no policy attributable to Wellpath as applied to Mr. Mallett indicative of deliberate indifference.  Whether a different course of antibiotics, or the addition of a prophylactic treatment complied with the standard of care is irrelevant in assessment of whether Wellpath was deliberately indifferent to Mr. Mallett's healthcare pursuant to *Monell*.  There is no evidence of any financial considerations playing any role in Mr. Mallett's care because contrarily, significant expenditures on the part of Wellpath to treat Mr. Mallett's infection and ear complaints including access to outside care and specialists, and frequent and responsive care provided inside Santa Rita Jail by Wellpath.  Simply, there are no instances of undue delay or withholding of care triggered by profiteering on the part of Wellpath.

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Mallett's *Monell* claims in the 5AC.

### 7. <u>David Misch</u>

Mr. Misch has made no allegations regarding his medical care in the Santa Rita Jail and has made no allegations against Wellpath in this litigation.  5AC, ECF No. 180.  Summary Judgment of his *Monell* claims against Wellpath must therefore be granted.

### 8. <u>Timothy Phillips</u>

Plaintiff Phillips alleges he had asthma, and Defendant Wellpath would not let him keep an inhaler on his person and could only use the inhaler during medication pass.  He claims that although he could use the intercom to request his inhaler, this was insufficient.  Mr. Phillips further claims inmates had to "share inhalers." Mr. Phillips claims even though inmates received their own inhalers, this was not sanitary.  He also alleges on one occasion he was provided the wrong inhaler, and he claims he contracted COVID and/or a cold from the incident.  5AC, ECF No. 180, ¶14.3.13.

///

3:19-cv-07423 JSC

- 20 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Keeping an inhaler "on person" is not the purview of Wellpath. This is a decision made by custody staff related to the safety and security of the facility. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 58. However, here, not only did Wellpath have Mr. Phillips' inhaler available for his scheduled twice daily administration, but there were also "as needed" inhaler orders that were either provided to him by nursing staff or at times to "keep on person" or "KOP" as indicated in the medical record. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 59; Bertling Mtn for Summary Judgment Dec. at ¶15. His movement in and out of safety cells further resulted in periods where he was not able to keep an inhaler due to safety reasons and threats of self-harm. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 59; Bertling Mtn for Summary Judgment Dec. at ¶15.

There is no evidence of inmates being required to "share inhalers" in the records. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 59; Bertling Mtn for Summary Judgment Dec. at ¶15. In fact, Mr. Phillips was specifically told that each individual inhaler was in its own bag and labeled with the patient name and PFN number. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 59; Bertling Mtn for Summary Judgment Dec. at ¶15. Although Mr. Phillips was provided with another inmate's inhaler on one occasion, this was a simple mistake, and does not automatically indicate disregard for Mr. Phillips but rather an error due to two inmates with the same name. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 59; Bertling Mtn for Summary Judgment Dec. at ¶15. Likewise, there is no evidence Mr. Phillips got a bad cold and/or COVID from being issued someone else's inhaler. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 59; Bertling Mtn for Summary Judgment Dec. at ¶15. There is no indication Mr. Phillips even used the other inhaler. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 59, Bertling Mtn for Summary Judgment Dec. at ¶15. Mr. Phillips routinely refused to participate in his care, including medication administration, treatments, and monitoring. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 59; Bertling Mtn for Summary Judgment Dec. at ¶15.

///

3:19-cv-07423 JSC

- 21 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Mr. Phillips received appropriate medical care regarding his asthma diagnosis. There is no policy attributable to Wellpath as applied to Mr. Phillips indicative of deliberate indifference. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 58-60. There are specific situations where it is not possible to allow patients in a correctional setting to keep medical devices such as an inhaler on their person. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 58-60. These situations are frequently related to mental health issues, as is the case with Mr. Phillips. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 58-60. No unconstitutional policy or procedure has been identified by plaintiff, so there can be no policy that could have caused any injury to Mr. Phillips as required to be proven by *Monell*. Mr. Phillips' allegations are provably false in the medical records- particularly as to the fact he was injured at all from accidentally being provided another inmate's inhaler. There is no evidence of any financial considerations playing any role in Mr. Phillips' care, and definitively there are no instances of undue delay or withholding of care triggered by profiteering on the part of Wellpath.

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Phillips' *Monell* claims in the 5AC.

### 9. Eric Rivera

Plaintiff Rivera alleges he slipped and fell, hitting his head and shoulder, and the 5AC claims he "briefly lost consciousness." Mr. Rivera alleges Wellpath improperly managed his head injury and pain. He claims because of Wellpath's substandard care of his injuries he continues to suffer daily pain and discomfort to his back and shoulder. 5AC, ECF No. 180, ¶14.3.6.

Mr. Rivera was seen numerous times after his fall by Wellpath medical staff. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 61-64; Bertling Mtn for Summary Judgment Dec. at ¶16. None of these medical evaluations demonstrated neurological abnormalities on exam warranting further or additional care. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 64-66. In addition, Mr. Rivera denied any loss of consciousness

in association with his fall until six months later.   Bertling Mtn for Summary Judgment Dec. at ¶2, p. 65; Bertling Mtn for Summary Judgment Dec. at ¶16. There is no objective evidence necessitating the need for additional or further diagnostics as implied by Mr. Rivera in the 5AC.  Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 64-66; Bertling Mtn for Summary Judgment Dec. at ¶16. No provider recommended them, and Wellpath did not refuse or delay the provision of any care based on costs or any other consideration.  Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 64-66; Bertling Mtn for Summary Judgment Dec. at ¶16.

The appropriate clinical actions when someone hits their head is to conduct and evaluate a clinical assessment of alertness, orientation, ability to move extremities and neurological function based upon the mechanism of the head injury.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 65. This was done by Wellpath was assessed and documented with negative findings.  Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 64-66; Bertling Mtn for Summary Judgment Dec. at ¶16.  Mr. Rivera was medicated for pain, monitored, provided ice packs and appropriately treated contrary to his allegations in the 5AC.  There is no evidence of disregard for Mr. Rivera's head injury or his pain. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 65; Bertling Mtn for Summary Judgment Dec. at ¶16.

It is undisputed that no provider recommended any additional imaging or consultation for Mr. Rivera's head injury, and Wellpath never "refused" to provide him specialty care due to cost or any other consideration.  Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 64-66; Bertling Mtn for Summary Judgment Dec. at ¶16.  There is no evidence that Wellpath withheld or delayed care to Mr. Rivera to increase its' profits or bottom line.  They were simply medically unnecessary.

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Henry's *Monell* claims in the 5AC.

///

///

NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 10. <u>Rasheed Tucker</u>

Plaintiff Tucker alleges that prior to his incarceration, he suffered a gunshot wound to his left hand, for which Wellpath provided "no medical attention" resulting in decreased use of his left hand.  Mr. Tucker has also made several allegations regarding mental health diagnosis and medication management which, although healthcare related, are directed to Alameda County and Alameda Behavioral Health (AFBH) since Wellpath is not contractually obligated to provide the mental health services at the Santa Rita Jail or to Mr. Tucker.  5AC, ECF No. 180, ¶14.3.11.

There is no evidence of disregard for Mr. Tucker's healthcare needs. He presented to the jail with several preexisting conditions that were identified, evaluated, and treated by licensed healthcare staff including nursing and provider staff. Bertling Mtn for Summary Judgment Dec. at ¶2, p. 67; Bertling Mtn for Summary Judgment Dec. at ¶17. There were no interventions or treatments necessary related to Mr. Tucker's left index finger. There were no documented complaints from Mr. Tucker regarding his preexisting hand injury nor any requests to further address the preexisting hand injury. Bertling Mtn for Summary Judgment Dec. at ¶ 2, p. 67; Bertling Mtn for Summary Judgment Dec. at ¶17.

Mr. Tucker's allegations related to his hand injury are false.  There were no requests for care related to his hand, despite Wellpath providing care to him for other pre-existing conditions.  Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 67-68; Bertling Mtn for Summary Judgment Dec. at ¶17.  There were no interventions or treatments recommended by a provider which were denied or delayed by Wellpath on the basis of cost or any other consideration.  Bertling Mtn for Summary Judgment Dec. at ¶2, p. 67; Bertling Mtn for Summary Judgment Dec. at ¶17.  Moreover, there is no policy attributable to Wellpath as applied to Mr. Tucker indicative of deliberate indifference. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 67-68.  No unconstitutional policy or procedure has been identified by plaintiff, so there can be no policy that could have caused any injury to Mr. Tucker as required to be proven by *Monell*.  There is no

evidence of any financial considerations playing any role in Mr. Tucker's care, and definitively there are no instances of undue delay or withholding of care triggered by profiteering on the part of Wellpath.

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Tucker's *Monell* claims in the 5AC.

### 11. Eric Wayne

Plaintiff Wayne alleges he contracted a bacterial or fungal infection on his left leg, between his ankle and his calf and he experienced pain and skin injuries. Mr. Wayne alleges the only medication Wellpath provided was "some hydrocortisone cream and some type of salve, which did not resolve the problem." Mr. Wayne claims the infection was improperly cared for, and as a result he continues to experience pain in his lower leg. Mr. Wayne also alleges deficient care for his "low back problems" and that Wellpath failed to provide dental care for a tooth pain for five months. 5AC, ECF No. 180, ¶14.3.9. Mr. Wayne suffers from a congenital foot problem known as pes planus which leads to chronic issues. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 70-74; Bertling Mtn for Summary Judgment Dec. at ¶19. He suffered a compression fracture in his foot during his incarceration and nonoperative management was recommended by an orthopedic surgeon. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 70-74; Bertling Mtn for Summary Judgment Dec. at ¶19. Mr. Wayne did not agree with this recommendation, but nevertheless he was managed appropriately. As evidenced in Mr. Wayne's lengthy medical records, he was provided with numerous and varied interventions by Wellpath for his ongoing medical concerns, in addition to sick call appointments with numerous providers and nearly daily encounters with licensed nursing staff. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 70-74; Bertling Mtn for Summary Judgment Dec. at ¶19. He was scheduled and seen for specialty care at Highland Podiatry Clinic, as well as undergoing orthopedic evaluations by an Orthopedic Surgeon. Bertling Mtn for Summary Judgment Dec. at ¶2 pp. 70-74; Bertling Mtn for Summary Judgment Dec. at ¶19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

There is no evidence that Wellpath withheld or delayed care to Mr. Wayne based on financial considerations. Bertling Mtn for Summary Judgment Dec. at ¶2, pp. 72-73. In fact, Wellpath complied with all its' policies and procedures relative to Mr. Wayne. Wellpath never refused to provide him specialty care due to cost or any other consideration. There is no evidence that Wellpath withheld or delayed care to Mr. Wayne to increase its' profits. Wellpath provided responsive, thorough, almost daily care to Mr. Wayne's chronic medical conditions during his incarceration, with no decisions made in contemplation of finances.

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Henry's *Monell* claims in the 5AC.

### 12. <u>Tikisha Upshaw</u>

Plaintiff Upshaw alleges she fell off the top bunk, injuring her head and her hands. Ms. Upshaw claims Wellpath improperly examined and treated her injuries and she regularly complained of pain and headaches during her incarceration. Ms. Upshaw claims Wellpath provided only nominal pain management. Ms. Upshaw admits upon being transferred to the CDCR in Chowchilla, she was diagnosed as having cervical spondylolisthesis, which she attributes to a cervical fracture that she believes was the result of the fall from the top bunk at Santa Rita Jail. 5AC, ECF No. 180, ¶14.3.8.

There is no evidence of any disregard on the part of Wellpath related to Ms. Upshaw's reported fall. She submitted a Sick Call request the following day and was then evaluated by a licensed nurse who referred her to be seen by the facility provider (Nurse Practitioner), who ordered physical therapy, as well as an evaluation by an orthopedic surgeon. Bertling Mtn for Summary Judgment Dec. at ¶3, p. 6; Bertling Mtn for Summary Judgment Dec. at ¶18. In addition to professional examinations and clinical judgements rendered by licensed healthcare professionals, Ms. Upshaw also continued to receive ongoing physical therapy treatments to address her chronic neck pain. Bertling Mtn for Summary Judgment Dec. at ¶3, p. 6; Bertling Mtn for Summary Judgment Dec. at ¶18. Ms. Upshaw was managed appropriately after her fall, and based on her medical

**3:19-cv-07423 JSC**

- 26 -
**NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

records, there was no need for, nor orders for advanced imaging. Her pain reportedly improved with medication and physical therapy. Bertling Mtn for Summary Judgment Dec. at ¶3, pp. 3-8; Bertling Mtn for Summary Judgment Dec. at ¶18.

*Monell* causation importantly fails in particular as to Ms. Upshaw. Given the patient's reported history of spinal pain and multiple traumas prior to incarceration, in addition to the timeframe from the injury and the reported x-ray completed in June of 2021, it cannot be said that her fall or any care rendered to her by Wellpath after her fall were the "moving force" causing her injuries. Bertling Mtn for Summary Judgment Dec. at ¶3, pp. 3-8; Bertling Mtn for Summary Judgment Dec. at ¶18. In fact, it is impossible to attribute an alleged diagnosis of spondylolisthesis definitively to Ms. Upshaw sustaining an untreated fracture at Santa Rita Jail. Bertling Mtn for Summary Judgment Dec. at ¶3, p. 7. There are multiple clinical conditions that can lead to a diagnosis of spondylolisthesis, including degenerative changes with aging, osteoporosis, congenital conditions, and trauma – of which Ms. Upshaw repeatedly attributed to her multiple vehicular accidents. Bertling Mtn for Summary Judgment Dec. at ¶3, p. 7; Bertling Mtn for Summary Judgment Dec. at ¶18.

There is no policy or procedure implicated in Wellpath's care of Ms. Upshaw which would give rise to a *Monell* claim for deliberate indifference. There is also no evidence that Wellpath withheld or delayed any care to Ms. Upshaw based on financial considerations. Wellpath never refused to provide specialty care due to cost or any other consideration. In fact, Ms. Upshaw was provided with physical therapy and other appropriate interventions for her neck pain and injury, and there were no recommendations by a healthcare provider for further or additional care which Wellpath "refused" or delayed as to Ms. Upshaw to increase its' profits. Bertling Mtn for Summary Judgment Dec. at ¶3, pp. 6-8; Bertling Mtn for Summary Judgment Dec. at ¶18. Wellpath provided responsive, thorough care to Ms. Upshaw during her incarceration, with no decisions made in contemplation of finances.

///

3:19-cv-07423 JSC

Summary Judgment should be granted in favor of Wellpath as to Plaintiff Upshaw's *Monell* claims in the 5AC.

### D. Evidence in Support of Summary Judgment/Summary Adjudication

Given each plaintiff's case against Wellpath is a *Monell* claim only, Plaintiffs each must demonstrate that there is an unconstitutional policy or procedure which has caused them individual harm. This is the only issue as to each plaintiff in this litigation.

Wellpath has submitted the report(s) of Ms. Kim Pearson in support of its' defense as to each plaintiff's *Monell* allegations against it. Ms. Pearson has opined that Wellpath has a comprehensive Policy and Procedure Manual which has been written in accordance with NCCHC standards, American Correctional Association standards, and Institute of Medical Quality standards, and are not in and of themselves unconstitutional. Bertling Mtn for Summary Judgment Dec. at ¶2. Plaintiffs have no support, nor do they appear to contend that the Wellpath policies are unconstitutional on their face. None of Plaintiffs experts have offered any criticisms of the Wellpath policies, nor indicated they were unconstitutional for any reason.

Rather, plaintiffs have alleged in the 5AC that Wellpath has adopted "policy that places profit over people." 5AC, ECF No. 180, p. 22:4. The 5AC attempts to outline the financial arrangement between Wellpath and Alameda County stating that Wellpath pays for inpatient hospitalization costs, emergency room visits, outpatient physician consultations, etc. suggesting that Wellpath denies, delays, or provides inadequate care so as not to pay for services and ultimately for financial gain. All relevant policies and the actual events noted in the medical records of the 12 plaintiffs provide no evidence of this allegation.

Conversely, Wellpath's nurses and providers have testified to the opposite. Wellpath Registered Nurse, Dawnielle Mageloff, testified in her deposition that medical staff have not been discouraged to send patients to outside facilities based on cost or for any other reason. Bertling Mtn for Summary Judgment Dec. at ¶4, p. 186. Mr. Cooper, Wellpath's P.A. who treated a majority of plaintiffs in this case, similarly testified he was

unaware of whether Wellpath had to pay for outside medical services, nor had he ever heard anyone say Wellpath must to pay for outside medical services out-of-pocket. Bertling Mtn for Summary Judgment Dec. at ¶7, p. 49. Mr. Cooper further testified during never during any biweekly provider meetings are financial issues discussed. Bertling Mtn for Summary Judgment Dec. at ¶7, p. 71.  Dr. Magat, a Wellpath physician and former medical director at the Santa Rita Jail stated she is unaware of whether any outside referral decisions factored costs into the approval process.  Bertling Mtn for Summary Judgment Dec. at ¶5, p. 45.  She also stated in her meetings with physician directors and other Wellpath staff, costs of sending inmates to outside treatment were never discussed nor was she ever discouraged from sending inmates to outside treatment for cost purposes.  Bertling Mtn for Summary Judgment Dec. at ¶5, p. 54.  Even as medical director, she was not familiar with the issue of payments either from or to Wellpath, for outside medical and dental services provided to inmates at the Santa Rita Jail.  Bertling Mtn for Summary Judgment Dec. at ¶5, p. 78.  Wellpath's in-house orthopedic surgeon at Santa Rita Jail, Dr. Slabaugh, similarly testified he was unaware of whether the costs of outside services are considered in evaluating his requests for outside care.  Bertling Mtn for Summary Judgment Dec. at ¶6, p. 42.  He does not know what the financial arrangements are related to Wellpath's payment for outside care, and it cannot and does not factor into any of his medical decisions related to individual patients' care. Bertling Mtn for Summary Judgment Dec. at ¶6, pp. 42-43.  He has never had any of his requests for outside care for any patient denied by Wellpath.  Bertling Mtn for Summary Judgment Dec. at ¶6, p. 44.

    As evidenced by the above testimony and based on all the records of care of the individual plaintiffs in this case, neither in policy nor in practice as exemplified and evidenced with the plaintiffs' care in this case (discussed in detail at subsection C above), did Wellpath or its staff factor costs, profits or any other financial motivation in the course of medical decision-making.

///

NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Rather than attack Wellpath's policies and practices in support of their *Monell* allegations, Plaintiffs have instead jointly submitted the reports of experts Dr. Feachem, Dr. Waldman, Dr. Rosenberg and Dr. Franco-Paredes identifying only discreet events related to the individual plaintiffs' treatment indicating a breach of the standard of care. For example, Dr. Franco-Paredes' statement that a prophylactic cleanser should have been prescribed to Mr. Mallett to prevent future MRSA infections, or Dr. Waldman's criticism of Wellpath not providing x-ray or advanced imaging of Mr. Gerrans' preexisting sports injuries.  However, none of the experts can offer support for the individual plaintiffs' *Monell* claims.  While a provider or nurse may (or may not) have breached the standard of care, the issues are whether Wellpath had a policy, practice, or custom that is deliberately indifferent to Plaintiff's constitutional right; and whether the policy, practice, or custom at issue was the 'moving force' behind the constitutional violation alleged.  *Monell v. Dept. of Soc. Servs. Of New York*, 436 U.S. 658, 691 (1978); *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007).  No plaintiff has evidence in support of their contention that Wellpath has a policy of placing profits over patient care, nor does any plaintiff's experience with Wellpath in the Santa Rita Jail evidence such a conclusion.

Moreover, Wellpath has concurrently filed *Daubert* motions as to Dr. Waldman and Dr. Feachem, and to the extent their reports and opinions are relied upon by a plaintiff in support of their claim against Wellpath, Wellpath contends their opinions should be excluded as described more fully in the *Daubert* motion.  As to Ms. Feachem, for the purposes of this motion, Wellpath contends her opinions all fail in their entirety because while she has stated the Wellpath-Alameda contract incentivizes Wellpath to withhold care, she never reviewed any of the individual plaintiffs' medical records, so she has stated she has no opinion as to whether this actually occurred in any of plaintiffs' cases or whether the financial provisions in the Wellpath-Alameda contract had any impact on any plaintiff's medical care at the jail.  See ECF No. 433, et seq. As to Dr. Waldman, Wellpath contends he is not qualified to offer opinions on the standard of care,

NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

he has utilized an inaccurate definition of the standard of care, and his opinions as to singular medical decisions are irrelevant to each plaintiff's *Monell* claim.  See ECF No. 433, et seq.

To be clear: this case is definitively *not* about whether Wellpath met the standard of care in the treatment of the individual plaintiffs.  This case is also not about whether the individual Wellpath providers met the standard of care or were deliberately indifferent to the medical needs of any plaintiff.  This case is about whether Wellpath committed a *Monell* violation against any plaintiff.  Based on all facts and evidence presented herein, as a matter of law, Wellpath cannot be liable for a *Monell* claim as to any of the individual plaintiffs.

## V.    CONCLUSION

For all the foregoing reasons, the undisputed facts establish no Plaintiff can establish either liability or causation pursuant to *Monell*, the sole claim against Wellpath in this case.  Under *Monell*, Plaintiffs must show a policy which amount to a constitutional deprivation, or a practice so pervasive that it amounts to a denial of constitutional rights.  Plaintiffs can do neither.  Plaintiffs much each also show a causal link between an alleged constitutional deprivation and their claimed injuries.  Again, no Plaintiff can do so.  Therefore, for all the reasons set forth herein, and in Wellpath's accompanying evidence, Defendant Wellpath respectfully request the Court grant its motion for summary judgment, or in the alternative, summary adjudication.

Respectfully submitted,

Dated: May 16, 2024              BERTLING LAW GROUP

*/s/ Peter G. Bertling*
Peter G. Bertling
Jemma Parker Saunders
Attorneys for Defendant
WELLPATH MANAGEMENT, INC.

3:19-cv-07423 JSC

- 31 -
NOTICE OF DEFENDANT WELLPATH MANAGEMENT, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF