UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GONZALEZ, et al., | Case No. 3:19-cv-07423-JSC |
| Plaintiffs, | |
| v. | **ORDER RE: FINAL APPROVAL OF SETTLEMENT** |
| COUNTY OF ALAMEDA, et al., | Re: Dkt. No. 605 |
| Defendants. | |

Plaintiffs, current and former detainees at Santa Rita Jail, filed this action bringing conditions of confinement claims under 42 U.S.C. § 1983. Plaintiffs named as defendants Alameda County, which oversees the Jail; Wellpath, the third-party contractor providing medical services at the Jail; and Aramark, the third-party contractor providing food services at the Jail. Plaintiffs' claims against Aramark and Wellpath have been resolved. Plaintiffs' motion for final approval of their Rule 23(b)(2) injunctive relief class action settlement with the County resolving their sanitation related claims is now pending before the Court. (Dkt. No. 605.[1]) After carefully considering the arguments and briefing submitted including the supplemental submission, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS the motion for final approval.

**BACKGROUND**

Plaintiffs filed this putative class action in November 2019 alleging they are subject to unlawful, inhumane, and unconstitutional treatment at the Santa Rita Jail. In May 2023, the Court denied in part and conditionally granted in part Plaintiffs' second motion for class certification.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

(Dkt. No. 264.) The motion was denied as to the inadequate medical care and inadequate food subclasses because Plaintiffs had not offered evidence of a systemic policy or practice as to either claim. (*Id*. at 11.) The Court conditionally granted the motion as to Plaintiffs' inadequate sanitation subclass on the condition Plaintiffs' counsel obtain qualified co-counsel. (*Id.* at 20.) Two months later, upon appearance of additional Plaintiffs' counsel, the Court granted certification of a Federal Rule of Civil Procedure 23(b)(2) class on Plaintiffs' inadequate sanitation claim. (Dkt. No. 312.)

On March 6, 2024, after the close of fact discovery and while expert discovery was underway, the parties attended a settlement conference with Magistrate Judge Beeler. (Dkt. No. 409.)  At a further settlement conference on May 21, 2024, Plaintiffs reached a settlement of their claims with the County and Aramark. (Dkt. No. 440.)  Pursuant to the settlement, Plaintiffs subsequently stipulated to dismiss their claims against Aramark.  (Dkt. No. 477.) On July 12, 2024, the Court granted Wellpath's motion for summary judgment and entered judgment in its favor.  (Dkt. No. 475.)  Plaintiffs' appeal to the Ninth Circuit Court of Appeals remains pending.

As to the remaining sanitation claims against the County, Plaintiffs filed a motion for preliminary approval on August 20, 2024.  (Dkt. No. 485.)  Because there were numerous issues with the motion and the settlement did not appear to be final, the Court denied the motion.  (Dkt. No. 511.)  Over the next year, the Court held several status conferences and eventually an evidentiary hearing on the County's motion to enforce the settlement agreement.  (Dkt. No. 554.) Following the evidentiary hearing, the parties met and conferred as to further revisions to the settlement agreement and Plaintiffs filed the now pending motion for approval of the class action settlement.  (Dkt. Nos. 558, 591, 602, 605.)  Upon review of the motion, the Court had concerns regarding the class definition and scope of the release of class member's injunctive relief claims and ordered the parties to meet and confer and file a supplemental statement.  (Dkt. No. 610.)  The supplemental statement is discussed below.  (Dkt. No. 612.)

## DISCUSSION

Approval of a class action settlement involves a two-step determination: (1) can the class be certified "for purposes of judgment on the proposal"; and (2) is the settlement "fair, reasonable,

and adequate." Fed. R. Civ. P. 23(e)(1)(B).

## I.    CLASS CERTIFICATION

The Court previously certified an injunctive relief only class under Rule 23(b)(2). (Dkt. Nos. 264, 312.) Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

### A.    Modification of Class Definition

The parties' Settlement Agreement uses the definition from the Court's class certification order: "all male detainees who are now, or will in the future be, subjected to the [identified] sanitation policies and practices." (Dkt. No. 606-1 at 3.)  Because the Court had concerns that notwithstanding the absence of language regarding the scope of class member's release of claims, a judgment of dismissal could have preclusive effect on future injunctive relief claims of settlement class members, *see Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 880 (1984), the Court ordered the parties to meet and confer regarding whether a narrower class definition was appropriate.  (Dkt. No. 610.)

The parties filed a response to the Court's Order agreeing to modification of the class definition, but disagreeing as to the language.  (Dkt. No. 612.)  Plaintiffs propose a definition which would include individuals who are detainees at the Jail in the 18 months following the Court's final approval order.  (*Id*. at 2.)  The County proposes a definition that encompasses detainees between "the date the class was certified by the Court on August 31, 2023 through December 17, 2026." (*Id*.)   The Court will adopt the County's proposed definition.  While the Court is mindful of Plaintiffs' concern that a longer term will better "enable class members with the participation of class counsel, to insure that the settlement agreement is implemented," Plaintiffs agreed to a 12-month monitoring term in the Settlement Agreement.  *See* Dkt. No. 606-1 at 7, ¶ 3.1.6.   Indeed, the Court raised the issue precisely to ensure class members are not indefinitely releasing claims regarding sanitation issues at the Jail. (Dkt. No. 610 at 2 ("the Court is concerned with a class definition which perpetually releases male detainees' sanitation claims

given how broadly these claims were pled" and "proposes the settlement class definition be modified to include a durational limit.").

Accordingly, the Court modifies the class definition to cover all male detainees who are or were detained at the Santa Rita Jail between August 31, 2023 through December 17, 2026, and who were or are subjected to the following sanitation policies and practices:

1. The Jail's policy requiring inmates to maintain the sanitation of their own cells and common areas, but failing to have a policy or practice which provides inmates with adequate sanitation supplies, or a policy for addressing inmates housed with those who cannot functionally maintain their own sanitation because of mental health issues, which impacts sanitation for all inmates within that congregate housing area.

2. The Jail's policy of not providing bathrooms in the common areas, and inmates' difficulties obtaining access to bathroom areas during POD or out-of-cell time.

**B.    Notice**

As the class was certified as an injunctive relief-only class under Rule 23(b)(2), notice is not required. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (stating notice is discretionary "[f]or any class certified under Rule 23(b)(1) or (b)(2)," Fed. R. Civ. P. 2(c)(2), as Rule 23(b) "does not ... oblige the District Court to afford [classes certified under (b)(1) and (b)(2)] notice of the action."). Given the nature of relief here and that settlement class members do not release any damages claims, the Court finds notice is unnecessary. *See, e.g., Jeanne and Nicolas Stathakos v. Columbia Sportswear Company et al.*, No. 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required.") (collecting cases).

**II.    FINAL SETTLEMENT APPROVAL**

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a

United States District Court
Northern District of California

4

class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up).

Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding that courts must apply the collusion factors set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011), to post-class action settlements as well as those settled before certification.).

### A.     The Fairness Factors

#### 1.     The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court first considers "the strength of [Plaintiffs'] case on the merits balanced against the amount offered in the settlement." *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). Although this action settled before the Court ruled on the merits of Plaintiff's claims, the Court need not reach an ultimate conclusion about the merits of the dispute "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's

United States District Court
Northern District of California

assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id*. (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id*.

This case has been pending for over five years.  Given the broad relief sought, the challenges of litigation against an institutional defendant, the transient nature of the class member detainee population, and the risks posed by continuing to litigate Plaintiffs' claims, the certainty of the injunctive relief and policy changes obtained under the Settlement Agreement weigh in favor of granting final approval.

### 2.    Settlement Amount

The Settlement Agreement provides for a variety of injunctive relief including (1) changes to the Jail's policies and procedures regarding detainee access to cleaning supplies, (2) ensuring detainees are not housed in cells with biohazards, (3) ensuring detainees' out of cell time is not reduced so they have time to clean,  and (4) requiring deputies to inspect housing units daily to identify any cleanliness concerns.  (Dkt. No. 606-1 at 30-60.)  Class counsel will be able to monitor compliance with these policy changes for a year by reviewing any detainee grievances regarding sanitation issues.  (Dkt. No. 606-1 at 7, ¶ 3.1.6.)  The broad policy relief addresses many of the sanitation issues raised, and thus, this factor likewise weighs in favor of final approval.

### 3.    Extent of Discovery Completed and Stage of Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  As discussed above, this settlement was reached after years of litigation and with the assistance of Magistrate Judge Beeler who presided over multiple settlement conferences with the parties.  This factor therefore also weighs in favor of settlement

### 4.    Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving the settlement.

Class Counsel has extensive experience in prisoner civil rights litigation and strongly supports approval of the settlement given the risks and challenges involved.

### 5.    Presence of a Government Participant

Alameda County is an administrative arm of the State of California and its participation and consent to the injunctive relief weighs in favor of approving the settlement. *See Moreno v. S. F. Bay Area Rapid Transit Dist.*, No. 3:17-cv-02911-JSC, 2019 WL 343472, at *5 (N.D. Cal. Jan. 28, 2019) ("BART is a governmental agency, and as such, its participation and consent to the injunctive relief weighs in favor of approving the settlement."); *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. 2:09-cv-8943-MMM-SHX, 2015 WL 13646906, at *11 (C.D. Cal. Sept. 14, 2015) (concluding because defendant county office of education was a government participant, consideration of this factor weighed in favor of settlement); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1031 (N.D. Cal. 1999) (concluding that the fact that "[t]he State and Local Defendants are all governmental participants" weighs in favor of granting approval).

### 6.    Reaction of the Class

Because notice was not necessary here, the reaction of the class is not considered in weighing the fairness factors. *See Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2015).

***

In sum, a balancing of the fairness factors leads the Court to conclude that this injunctive-relief only Settlement Agreement is fair, adequate, and reasonable.

### B.    The *Bluetooth* Factors

Finally, the Court must determine whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Id.*  The Ninth Circuit has identified three such signs:

1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Bluetooth*, 654 F.3d at 947 (internal quotation marks and citations omitted). It is unclear if *Bluetooth's* second and third warning signs are applicable to a post-certification Rule 23(b)(2) settlement for *solely* injunctive relief. *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 (9th Cir. 2021) (emphasis in original) (discussing C*ampbell v. Facebook, Inc.*, 951 F.3d 1106, 1127 (9th Cir. 2020), and its conclusion that "the district court did not abuse its discretion in finding that *Bluetooth*'s second and third warning signs—clear-sailing agreements and reverter provisions—were inapplicable" to an injunctive relief only settlement.) Regardless, as the Settlement Agreement here neither provides for a monetary settlement to the class nor attorneys' fees for class counsel, the *Bluetooth* factors are inapplicable.[2] (Dkt. No. 606-1 at 6, ¶ 2.2.2 ("No portion of the settlement funds will be paid to Represented Plaintiffs' counsel for their attorney's fees and costs incurred in litigating the class action claims asserted in the Subject Lawsuit.")

\*\*\*

In sum, the fairness factors support approval, and the *Bluetooth* factors do not indicate collusion. The Court is therefore satisfied the Settlement Agreement was not the result of collusion between the parties and instead is the product of arms-length negotiations between experienced and professional counsel. For each of these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for final approval of

---

[2] The $300,000 sum discussed in the Settlement Agreement will be divided between the 12 named Plaintiffs for release of their individual damages' claims. (Dkt. No. 606-1 at 6, ¶ 2.1.)

the parties' class action settlement.   The Settlement Agreement encompasses all male detainees who are or were detained at the Santa Rita Jail between August 31, 2023 through December 17, 2026, and who were or are subjected to the following sanitation policies and practices:

1. The Jail's policy requiring inmates to maintain the sanitation of their own cells and common areas, but failing to have a policy or practice which provides inmates with adequate sanitation supplies, or a policy for addressing inmates housed with those who cannot functionally maintain their own sanitation because of mental health issues, which impacts sanitation for all inmates within that congregate housing area.

2. The Jail's policy of not providing bathrooms in the common areas, and inmates' difficulties obtaining access to bathroom areas during POD or out-of-cell time.

These class members release their injunctive relief claims related to these policies and practices through December 17, 2026.  There is no release of any class member damages claims.

The Court is in receipt of Plaintiffs' administrative motion for a hearing regarding Plaintiffs' request to modify the class action settlement.  (Dkt. No. 613.[3])  Plaintiffs' motion is DENIED.   The Court has determined no notice is required as the class is certified under Rule 23(b)(2).  To the extent Plaintiffs have concerns regarding the County's compliance with the Settlement Agreement and any notice procedure they negotiated with the County, they shall meet and confer with the County in accordance with the procedures outlined in the Settlement Agreement.

This Order disposes of Docket Nos. 605, 613.

**IT IS SO ORDERED.**

Dated: February 10, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

---

[3] While the motion purports to attach several documents as exhibits, the exhibits are all blank.

9